## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **DEARREA KING, Individually and as Administrator of the Estate of Tyre King c/o Walton + Brown, LLP. 395 E. Broad St., Suite 200 Columbus, OH 43215** | **Case No.:** |
| **Plaintiff,** | **Judge:** |
| **vs.** | |
| **CITY OF COLUMBUS, OHIO; and DOES 1-100, UNKNOWN, City of Columbus 911 Operators and Other Employees c/o City Attorney 77 N. Front St. 4ᵗʰ Floor Columbus, Ohio 43215** | **Complaint** **JURY DEMAND ENDORSED** |
| **And** | |
| **BRYAN C. MASON, Officer Columbus Division of Police c/o Columbus Division of Police 120 Marconi Blvd. Columbus, Ohio 43215** | |
| **Individually and in His Official Capacity as Employee of the City of Columbus, Ohio** | |
| **And** | |
| **KIM JACOBS, Chief Columbus Division of Police c/o Columbus Division of Police 120 Marconi Blvd. Columbus, Ohio 43215** | |
| **Individually and in her official capacity as Employee of the City of Columbus, Ohio** | |

**Defendants.**

## I.    PRELIMINARY STATEMENT

1. This civil rights and wrongful death case challenges the fatal shooting of Tyre King (hereinafter, "Decedent", "Plaintiff" or "Tyre") by Columbus Division of Police Officer Bryan C. Mason on September 14, 2016.

2. Tyre King was a 13-year-old African-American child who attended Linden-McKinley STEM Academy and had just began the eighth grade. He was an energetic child, active in football, soccer, hockey and gymnastics. He was a loving son and brother. He was also an inquisitive and eager student. In the aftermath of the fatal shooting, Tyre's Spanish teacher stated that "he was a boy, just like any other boy," and pointed out that he had just completed a project that he got an "A" on.

3. Tyre was killed on September 14, 2016 after being stopped at gunpoint by Officer Mason.

4. At the time of this stop, it is alleged that Tyre was in possession of a toy gun.

5. Witnesses say the toy gun was not visible at the time that Tyre was stopped by Officer Mason at gunpoint.

6. Confronted with Officer Mason's firearm and fearing for his life, Tyre attempted to run away from the officer.

7. Officer Mason alleges that he saw the grip of a handgun tucked into Tyre's front waistband. He alleges that while he shouted, "Get down!" Tyre instead began to run away before stopping "with a quick stutter step."

8. Officer Mason alleges Tyre then looked directly at him before grabbing the grip of the handgun in his waistband and tugging on it. He alleges that he then shouted, "Get down!" while quickly taking one or two steps closer to the passenger side of a parked car.

9. Officer Mason alleges that while pointing his firearm at Tyre, Tyre "forcefully tugged on the grip of his gun at least one or two more times as if it were snagged on something." He contends that in that instance Tyre's alleged "refusal to comply with his commands" and "his continued attempts to pull the gun out" caused Officer Mason to believe that Tyre was going to "engage him in a gun fight."

10. Officer Mason alleges that Tyre then pulled the gun out of his waistband and raised it up in front of his torso, and that Officer Mason could see it had a laser sight or light attached to the bottom of the barrel.

11. Officer Mason alleges that he believed Tyre was going to shoot him, and Officer Mason fired his gun at him.

12. At least one eyewitness counters Officer Mason's account, instead stating that the toy gun was not visible in Tyre's waistband, that Tyre never reached for the toy gun, and that Tyre instead took 2-3 steps away from the officer before being shot in the head by Officer Mason initially, followed by two other shots. The eyewitness stated that Officer Mason then said "y'all are dumb!", "you're stupid!", "why would you fucking run!", "y'all are some dumb niggers!"

13. The Columbus Division of Police failed to acknowledge or investigate the allegation that Officer Mason fatally shot Tyre then called him a "dumb nigger."

14. At least one other eyewitness counters Officer Mason's account as well. The eyewitness states that Tyre was initially stopped by Officer Mason but attempted to run, and that there was no gun visible and Tyre never reached for anything. The eyewitness further states that Officer Mason shot three times very quickly, hitting Tyre in the side of the head and that the shots happened so quickly that Tyre never had time to reach for a weapon because he had just began to run.

15. At least one other eyewitness counters Officer Mason's account as well, instead stating that Tyre was running then stopped after Officer Mason yelled something at Tyre. The witness

states that Tyre didn't listen and began running, then Officer Mason started shooting. The witness stated that it happened very fast and they never saw Tyre holding a gun. The witness thought he was just a kid playing.

16. Shortly after the fatal shooting, the family of Tyre King commissioned an independent examination of his body. The forensic pathologist that performed that examination determined that "based on the location and direction of the wound paths, it is more likely than not that Tyre King was in the process of running away from the shooter or shooters when he suffered all three gunshot wounds."

17. The pathologist determined that Tyre suffered a gunshot wound to the left temple, amongst other gunshot wounds.

18. The only witness that corroborates Officer Mason's version of events is his partner at the time of the fatal shooting, Officer Robert Reffitt.

19. Officer Mason's first statement to the Columbus Division of Police investigators regarding the incident came via a written statement prepared with the assistance of his attorney on September 21, 2016 – seven days after the fatal shooting.

20. Officer Mason stated that it was not until he began placing Tyre in handcuffs that he noticed that Tyre appeared to be a young teenager.

21. Tyre was approximately 5'1" and 100 lbs. at the time of his death, described by the pathologist as a "small-framed, adolescent boy."

22. Officer Mason fatally shot Tyre while pursuing suspects in an armed robbery. The suspects listed on the police report related to the robbery were described as being between 5'8" and 5'9" tall.

23. The fatal shooting of Tyre King was Officer Mason's fourth police-involved shooting incident.

24. Officer Mason has been the subject of at least 47 reports involving force as a Columbus Division of Police Officer. Of those cases, Columbus Police have determined all but one of those cases to be "within policy" or "unfounded," with the other determination still pending.

25. Between 2001 and 2017, the Columbus Division of Police determined officers were justified in using force in 99% percent of use of force reports.

26. The Columbus Division of Police's chain of command, including Chief Kim Jacobs, endorsed the excessive, unreasonable and unjustifiable force that is connected to this fatal shooting and that placed Tyre and continues to place the public at unnecessary risk of death and/or injury from not only Officer Mason, but from others in the department who have a similar proclivity to use force unreasonably and inappropriately.

27. The failure to properly train, supervise and discipline Officer Mason is an authorization of his behavior and reflective of the unwritten policies, practices and customs of behavior within the Columbus Division of Police which lead to the unreasonable and excessive use of deadly force as well as racial discrimination against citizens.

28. On September 15, 2016, prior to Tyre's body being delivered to the Franklin County Coroner's Office and prior to any medical records being reviewed, Franklin County Coroner Dr. Anahi Ortiz improperly instructed the forensic pathologist she assigned to perform Tyre's autopsy, Dr. Emily Hansen, to rule everything in Tyre's case be listed as "undetermined, undetermined, undetermined."

29. When Dr. Hansen, who was fairly new to the Franklin County Coroner's Office, questioned this instruction, Dr. Ortiz informed her that "that is the way it is done here."

30. This instruction was based on a meeting that occurred between Dr. Ortiz and the Columbus Division of Police, as a result of the desire of the Columbus Division of Police to "release minimal information after a police-involved shooting." This death certificate was certified by Dr. Anahi M. Ortiz, MD.

31. Tyre's initial death certificate indeed listed no information for his cause of death, the date of injury, the time of injury, the place of injury, the location of injury, or how the injury occurred.

32. On September 15, 2016, City of Columbus Mayor Andrew Ginther and Columbus Division of Police Chief Kim Jacobs held a press conference regarding the fatal shooting, essentially blaming Tyre for his own death while failing to acknowledge the possibility of Officer Mason's actions being improper.

33. The City of Columbus and Columbus Division of Police failed to properly investigate the circumstances surrounding Tyre's death and purposely conspired to limit the information released surrounding Tyre's death, demonstrating a deliberate indifference to his right to be free from constitutional violations such as those committed by Officer Mason, and demonstrating a pattern and practice of failing to investigate and discipline officers for the use of force against citizens.

34. Plaintiff brings this federal civil rights and state law action to ensure constitutional policing practices are respected, to secure fair compensation in order to hold the City of Columbus and its liable employees accountable for their actions and to help end the civil rights violations carried out by Columbus Division of Police Officers against members of the community.

## II.     JURISDICTION AND VENUE

35. This action is brought pursuant to Ohio statutes, and United States Constitution Amendments IV and XIV, § 1983 and § 1988, respectively.

## III.     THE PARTIES

36. Plaintiff Dearrea King is the Administrator of the Estate of Tyre King and was a resident of Franklin County, Ohio, at all times material to the subject incident.

37. Defendant City of Columbus, Ohio, is a political subdivision of the state of Ohio, organized and existing under the laws of the state of Ohio, and operating and conducting business in

Franklin County, Ohio. Columbus Division of Police is a subdivision of Defendant City of Columbus, Ohio.

38. Upon information and belief, Defendant City of Columbus, Ohio Division of Police Officer Bryan C. Mason is being sued in his individual capacity; to wit, Officer Mason was a resident of Franklin County at the time of the incident. Officer Mason was at all times relevant to this action a law enforcement officer employed by the Columbus Division of Police. Officer Mason is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued individually and in his official capacity as an employee of the City of Columbus.

39. Upon information and belief, Defendant City of Columbus, Ohio Division of Police Chief Kim Jacobs is being sued in her individual capacity; to wit, Chief Jacobs was a resident of Franklin County at the time of the incident. Chief Jacobs is the current holder of the office of Chief of the Columbus Division of Police, and the Chief Law Enforcement Officer for Columbus, Ohio. Chief Jacobs is the final policymaker with respect to the policies of the Columbus Division of Police. Chief Jacobs is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. She is sued individually and in her official capacity as an employee of the City of Columbus.

40. All of the events or omissions giving rise to this action occurred in Franklin County, Ohio.

41. The actions of the Defendants, as well as their agents and employees, which were within the scope of their employment, were at all relevant times undertaken with malice and knowing disregard for the Plaintiff's rights.

42. This is an action seeking damages in excess of seventy-five thousand dollars ($75,000.00), exclusive of costs, interest, and attorney's fees.

### IV. FACTUAL ALLEGATIONS

43. Plaintiff hereby incorporates paragraphs 1 through 42 as though fully set forth herein.

44. Prior to being hired by the Columbus Division of Police in 2006, Officer Mason failed his test when attempting to join the Franklin County Sherriff's Office in 2004.

45. During the background portion of Officer Mason's hiring process with the City of Columbus/Columbus Division of Police, Officer Mason was found to be less than forthcoming during his polygraph examination.

46. While reading his responses to questions that would be asked on the polygraph examination, Officer Mason admitted he lied to the examiner during the pre-test interview.

47. Officer Mason then admitted that he had masturbated in his car while driving to Lake Erie on one occasion, two or three years prior.

48. Officer Mason also admitted to masturbating at work in the restroom on one occasion in 1999 or 2000.

49. Officer Mason was also found to have a pattern of theft and/or criminal activity during this background investigation.

50. On March 21, 2006, Officer Mason was removed by the Civil Service Commission from the Police Officer eligible list "based upon the information revealed during the background investigation, which violated the provisions of the Background Removal Standards for Police Officers."

51. In spite the concerns raised and his removal, Officer Mason was reinstated to the Police Officer eligible list on April 25, 2006.

52. Officer Mason was hired by the Columbus Division of Police on December 17, 2006.

53. The Critical Incident Response Team (CIRT) investigates all shootings involving Columbus Division of Police Officers and other cases at the direction of the commander of the Crimes Against Persons Bureau, and all facets of those investigations.

54. Sergeant Eric Pilya was appointed as the CIRT Team Leader in 2011 and has held the position since.

55. The CIRT consists of 12 homicide detectives that come from various shifts of homicide investigators, as well as the shift supervisors and the lieutenant over the homicide section.

56. The CIRT conducts the investigation into all police-involved shootings, forwarding the results of that investigation to the Franklin County Prosecutor's Office to be presented to a grand jury.

57. After the grand jury proceeds with a no-bill, the investigative packet is forwarded to the Columbus Division of Police Firearms Review Board to determine if the shooting shall be considered within policy.

58. The Columbus Division of Police Chief is the final decision-maker with regard to whether a shooting is within policy or not.

59. The Columbus Division of Police has an Officer Support Team, made up of officers who have been involved in a "critical incident" in the past.

60. These officers respond to the scene of a police-involved shooting and provide support and advice to the officers involved.

61. Sergeant Pilya has stated that the Officer Support Team is trained to "steer them away from talking about the incident."

62. Sergeant Pilya, the CIRT Team Leader, provides an initial training for Officer Support Team members.

63. In that training, he instructs Officer Support Team members to tell the officer involved in a shooting to not make a statement.

64. In addition to training the Officer Support Team, Sergeant Pilya teaches a class on CIRT Team "best practices" at the academy that any officer can sign up to take.

65. In this class, he instructs officers on CIRT Team best practices.

66. In this class, he also informs officers that they do not have to give a statement to the CIRT Team following a police-involved shooting.

67. The CIRT Team does not attempt to question an officer involved in a shooting immediately, instead establishing a policy of giving an officer at least seven to fourteen days before attempting to question them.

68. After a police officer is involved in a shooting, the CIRT Team allows the officer to walk back through the scene.

69. During the walk through, the CIRT Team has a standing agreement with the Fraternal Order of Police (FOP) that the CIRT Team will be allowed to ask three pre-determined questions of the officers with their FOP attorney present.

70. In the CIRT Team's investigative packet, they include information about a victim's criminal history, gang affiliation and known associates, amongst other information.

71. No background information related to prior uses of force is provided in the CIRT investigative packet regarding the officers involved in a shooting.

72. In the CIRT Team's investigative packet, they include information about a victim's drug and alcohol use.

73. No drug or alcohol tests are performed or requested by the Columbus Division of Police on an officer involved in a shooting, including after the fatal shooting of Tyre King.

74. Sergeant Pilya has stated that he believes that 99.9% of the time officers are just doing their job when involved in a shooting.

*Policy and Practice Allegations*

75. Plaintiff is informed and believes, and on the basis of such information and belief alleges that the governmental entity defendants and their decision makers, with deliberate indifference, gross negligence, and reckless disregard to the safety, security, and constitutional and statutory rights of the Decedent, maintained, enforced, tolerated, permitted, acquiesced in, and applied policies, practices, or customs and usages of, among other things:

(a) Training and authorizing Columbus Division of Police Officers to act recklessly and aggressively with regard to the use of force on citizens;

(b) Hiring, retaining and assigning officers with honesty and integrity issues, behavioral issues and patterns of misconduct;

(c) Subjecting citizens to the unreasonable use of force and unreasonable seizure;

(d) Allowing officers to violate the constitutional rights of citizens and take other unlawful action against citizens;

(e) Failing to adequately train, supervise and/or discipline officers regarding the use of force and the use of lethal force;

(f) Failing to adequately train, supervise and/or discipline officers, permitting unlawful conduct to occur;

(g) Failing to adequately train, supervise and/or discipline officers regarding their unlawful conduct;

(h) Failing to perform drug and alcohol tests on officers after their involvement in police shootings;

(i) Failing to perform drug and alcohol testing consistent with constitutional and nationally-recognized policing practices;

(j) Failing to adequately investigate police-involved shootings, both ratifying and authorizing future behavior;

(k) Condoning and encouraging officers in the belief that they can violate the constitutional rights of individuals, such as Tyre King, and that such conduct will not adversely affect their opportunities for promotion and other employment benefits.

76. Plaintiff is informed and believes, and on the basis of such information and belief alleges, that the entity defendants and their decision makers ordered, authorized, acquiesced in, tolerated,

permitted or maintained custom and usages permitting Columbus Division of Police Officers to engage in the unlawful and unconstitutional actions, policies, practices and customs or usages set forth in the foregoing paragraph. Defendants' conduct as alleged herein constitutes a pattern of constitutional violations based either on a deliberate plan by defendants or on defendants' deliberate indifference, gross negligence, or reckless disregard to safety, security, and rights of plaintiff and the Decedent.

    (a) Defendant City of Columbus and Columbus Division of Police have a policy, practice and custom of allowing officers to violate the constitutional rights of citizens, and failing to adequately train, supervise and discipline officers who participate in such unlawful conduct;

    (b) Sergeant Eric Pilya, as Team Leader for the Critical Incident Response Team, as well as his chain of command, had both actual and constructive knowledge of the actions of Officer Mason, as well as actual and constructive knowledge of the actions of the detectives responsible for investigating police-involved shootings, and he along with his chain of command authorized and encouraged the pattern and practice of failing to adequately investigate officer-involved shootings.

    (c) Chief Kim Jacobs, as chief law enforcement officer for the City of Columbus, Ohio, serves as the ultimate policymaker for the Columbus Division of Police, and had both actual and constructive knowledge of the actions of Officer Mason, as well as actual and constructive knowledge of the actions of the chain of command in failing to train, supervise and discipline Officer Mason and others like them.

*Damages*

77.     Plaintiff and family members have lost Decedent's love, comfort, society, and consortium, and have sustained emotional distress, all in amounts in accordance with proof. The estate has incurred medical, burial and other related expenses. The Decedent sustained general damages, including pre-death pain and suffering and post-death loss of enjoyment of his life, in an amount in accordance with proof.

78.     The conduct of the individual defendants was willful, malicious, oppressive and in reckless disregard for the constitutional rights of plaintiffs and the Decedent himself, thus justifying punitive damages against the defendants in an amount in accordance with proof.

## V. CLAIMS FOR RELIEF

## COUNT ONE

### 42  U.S.C. § 1983 AND ORC § 2125.01 - WRONGFUL DEATH AND SURVIVAL ACTION

79.     Plaintiff hereby incorporates paragraphs 1-78 as though fully set forth herein.

80.     This is an action brought against defendants in their individual and official capacities, pursuant to Ohio Revised Code § 2125.01 and the United States Constitution Amendments IV and XIV, in violation of 42 U.S.C. § 1983 and § 1988.

81.     At all times material hereto, Defendants were employees and/or agents of Defendant City of Columbus and acting within the course and scope of their employment with same, and acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs, and usages of Defendant City of Columbus.

82.     Defendants Officer Bryan C. Mason and Chief Kim Jacobs have, under color of law, deprived Tyre King of rights, privileges, and immunities secured to him by the Fourth and Fourteenth Amendments to the United States Constitution, by, among other things, subjecting Decedent to a seizure without a warrant or any other legal justification or fabricating a legal justification for doing so and Officer Mason unreasonably using lethal force, subjecting Decedent to excessive force and acting with deliberate indifference to his right to life and liberty.

83.     The foregoing wrongful acts of defendants killed Decedent.

84.     The actions of defendants acting in concert and under color of law, were undertaken intentionally, willfully, maliciously, with a deliberate indifference and/or with a reckless disregard for the natural and probable cause of their acts, was done without lawful justification or reason, and was designed to and did cause specific and serious physical and emotional pain and suffering in violation of Plaintiff's civil rights.

85.     As a proximate result Plaintiff and family members lost companionship, society, comfort and consortium with the Decedent, and are entitled to damages for the pain, suffering and disfigurement of the Decedent.

86.     Plaintiff has ongoing and continuous mental and physical damages, and as such is entitled to recovery, including but not limited to the following:

        (a)     Compensation for physical and emotional harm;

        (b)     Loss of earnings and net accumulations;

        (c)     Past medical bills and expenses;

        (d)     Conscious pain and suffering;

        (e)     Punitive damages;

        (f)     Award reasonable attorneys' fees and costs to Plaintiff on Federal 1983 Counts;

        (g)     Any and all other and further relief as this Court may deem appropriate.

WHEREFORE, Plaintiff demands damages in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), together with post judgment interest and costs.

## COUNT TWO

### EXCESSIVE FORCE AND UNREASONABLE SEIZURE IN VIOLATION OF 42 U.S.C. § 1983 AND THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

87.     Plaintiff hereby incorporates paragraphs 1-86 as though fully set forth herein.

88.     This is an action brought against defendants in their individual and official capacities, pursuant to the United States Constitution Amendments IV and XIV, in violation of 42 U.S.C. § 1983 and § 1988.

89.     At all times material hereto, Defendants were employees and/or agents of Defendant City of Columbus and acting within the course and scope of their employment with same, and acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs, and usages of Defendant City of Columbus.

90.     Defendants subjected Decedent to unreasonable seizure and excessive force, depriving him of bodily integrity, liberty, and due process of law.

91.     The actions of defendants, acting in concert and under color of law, were undertaken intentionally, willfully, maliciously, with a deliberate indifference and/or with a reckless disregard for the natural and probable cause of their acts, was done without lawful justification or reason, and was designed to and did cause specific and serious physical and emotional pain and suffering in violation of Plaintiff's civil rights.

92.     As a direct and proximate result of defendants' acts, omissions, and clearly unreasonable seizure and use of excessive force, Defendant deprived Plaintiff of the rights to be free from unreasonable seizure, the right to be free from excessive force and the right to due process of law guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

93.     Plaintiff has ongoing and continuous mental and physical damages, and as such is entitled to recovery, including but not limited to the following:

      (a)     Compensation for physical and emotional harm;

      (b)     Loss of earnings and net accumulations;

      (c)     Past medical bills and expenses;

      (d)     Conscious pain and suffering;

(e)     Punitive damages;

(f)     Award reasonable attorneys' fees and costs to Plaintiff on Federal 1983

Counts;

(g)     Any and all other and further relief as this Court may deem appropriate.

WHEREFORE, Plaintiff demands damages in an amount in excess of SEVENTY-FIVE

THOUSAND DOLLARS ($75,000.00), together with post judgment interest and costs.

## COUNT THREE

### RACIAL DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1983 THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT

94.     Plaintiff hereby incorporate paragraphs 1-93 as though fully set forth herein.

95.     This is an action brought against defendants in their individual and official

capacities, pursuant to the United States Constitution Amendments IV and XIV, based upon

racial discrimination in law enforcement and failure to provide equal protection under the law in

violation of 42 U.S.C. § 1983 and § 1988.

96.     At all times material hereto, defendants were employees and/or agents of

Defendant City of Columbus, acting within the course and scope of their employment with same,

and in furtherance of the interest of Defendant City of Columbus, and with Defendant City of

Columbus' consent.

97.     Plaintiff, as an African-American is a member of a protected class, and thus also

had the clearly established statutory right to be free from racially motivated arrests, detentions,

searches and seizures.

98.     Any reasonable officer knew or should have known that these rights at the time of

the complained conduct as they were clearly established at that time.

99.     Plaintiff's race was a motivating factor in the decision to detain him and use

excessive force. Defendants' conduct was undertaken with the purpose of depriving Plaintiff of

the equal protection and benefits of the law, equal privileges and immunities under the law, and due process in violation of the Fourteenth Amendment and 42 U.S.C. § 1983.

100.    Defendant engaged in the conduct described in the complaint willfully, maliciously, in bad faith, and in reckless disregard for Plaintiff's federally protected rights.

101.    The acts or omissions of the Defendants were moving forces behind Plaintiff's injuries.

102.    Plaintiff has permanent and ongoing damages as a result of said incident and as such is entitled to recovery, including but not limited to the following:

      (a)    Compensation for physical and emotional harm;

      (b)    Loss of earnings and net accumulations;

      (c)    Past medical bills and expenses;

      (d)    Conscious pain and suffering;

      (e)    Punitive damages;

      (f)    Award reasonable attorneys' fees and costs to Plaintiff on Federal 1983 Counts;

(g)    Any and all other and further relief as this Court may deem appropriate.

WHEREFORE, Plaintiff demands damages in an amount in excess of SEVENTY- FIVE THOUSAND DOLLARS ($75,000.00), together with post judgment interest and costs.

## **<u>COUNT FOUR</u>**

### **DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED**

103.    Plaintiff hereby incorporate paragraphs 1-102 as though fully set forth herein.

104.    This is an action brought against defendants in their individual and official capacities, pursuant to the United States Constitution Amendments IV and XIV, in violation of 42 U.S.C. § 1983 and § 1988.

105. At all times material hereto, defendants were employees and/or agents of Defendant City of Columbus, acting within the course and scope of their employment with same, and in furtherance of the interest of Defendant City of Columbus, and with Defendant City of Columbus' consent.

106. Defendants recognized that Plaintiff suffered an objectively serious harm that presented a substantial risk to his or her safety.

107. Defendants were deliberately indifferent to that risk in violation of Plaintiff's federally protected rights.

108. The acts or omissions of the Defendant were moving forces behind Plaintiff's injuries.

109. Plaintiff has permanent and ongoing damages as a result of said incident and as such is entitled to recovery, including but not limited to the following:

    (a)    Compensation for physical and emotional harm;

    (b)    Loss of earnings and net accumulations;

    (c)    Past medical bills and expenses;

    (d)    Conscious pain and suffering;

    (e)    Punitive damages;

    (f)    Award reasonable attorneys' fees and costs to Plaintiff on Federal 1983 Counts;

(g)    Any and all other and further relief as this Court may deem appropriate.

WHEREFORE, Plaintiff demands damages in an amount in excess of SEVENTY- FIVE THOUSAND DOLLARS ($75,000.00), together with post judgment interest and costs.

## COUNT FIVE

### *MONELL* CLAIM AGAINST THE CITY OF COLUMBUS, OHIO – 42 U.S.C. § 1983

110. Plaintiff hereby incorporate paragraphs 1-109 as though fully set forth herein.

111. At all times material hereto, Defendants were employees and/or agents of Defendant City of Columbus, acting within the course and scope of their employment with same, and in furtherance of the interest of Defendant City of Columbus, and with Defendant City of Columbus' consent.

112. The City of Columbus directly caused the constitutional violations suffered by Plaintiff and is liable for the damages suffered by Plaintiff as a result of the conduct of the defendant officers. The conduct of the defendant officers was a direct consequence of policies and practices of Defendant City of Columbus.

113. Defendant Columbus Division of Police Chief Kim Jacobs had actual knowledge and/or had constructive knowledge and/or failed to conduct a proper investigation into the actions of Defendant Officer Mason. A proper investigation would have included that Defendant Officer Mason participated in a pattern of conduct that was racially discriminatory and/or unconstitutional.

114. Defendant City of Columbus had actual knowledge and/or had constructive knowledge and/or failed to conduct a proper investigation into the actions of Defendant Officer Mason. A proper investigation would have included that Defendant Officer Mason participated in a pattern of conduct that was racially discriminatory and/or unconstitutional.

115. At the time of the incidents described in this Complaint, the pattern of racially discriminatory and/or unlawful conduct was established through policy, practice and custom of the City of Columbus and the Columbus Division of Police.

116. By tacitly authorizing the behavior of Defendants, the policymakers and those responsible for hiring, training and supervision of police officers within the City of Columbus acted negligently, recklessly, intentionally, willfully, wantonly, knowingly and with deliberate indifference to the serious safety needs of the citizens of Columbus, including Tyre King.

117. Defendant City of Columbus has a policy, practice and custom of failing to adequately investigate and discipline police officers who exhibit racially motivated and/or

unconstitutional conduct. This policy, practice and custom was the moving force behind the racially motivated and unconstitutional actions against Tyre King.

118. Defendant City of Columbus has a policy, practice and custom of allowing officers to exhibit racially motivated and/or unconstitutional conduct. This policy, practice and custom was the moving force behind the racially motivated and unconstitutional actions against Tyre King.

119. Defendant City of Columbus has a policy, practice and custom of exhibiting racially motivated and/or unconstitutional conduct. This policy, practice and custom was the moving force behind the racially motivated and unconstitutional actions against Tyre King.

120. Defendant City of Columbus has a policy, practice and custom of failing to investigate civilian complaints against officers consisting of racially motivated and/or unconstitutional conduct. This policy, practice and custom was the moving force behind the racially motivated and unconstitutional actions against Tyre King.

121. Defendant City of Columbus negligently retained Defendant Officer Mason.

122. Defendant City of Columbus has a policy, practice and custom of negligently retaining police officers who exhibit racially motivated and/or unconstitutional conduct. This policy, practice and custom was the moving force behind the racially motivated and unconstitutional actions against Tyre King.

123. Defendant City of Columbus failed to adequately train Defendant Officer Mason.

124. Defendant City of Columbus has a policy, practice and custom of failing to adequately train police officers who exhibit racially motivated and/or unconstitutional conduct. This policy, practice and custom was the moving force behind the racially motivated and unconstitutional actions against Tyre King.

125. Defendant City of Columbus has a policy, practice and custom of conspiring to interfere with and to deprive Plaintiffs of their causes of action by allowing suspect officers unreasonable and harmful concessions during investigations of police-involved shootings.

126. The policies, practices and customs described above have been the subject of civil rights investigations, previous lawsuits and have been well known within the Columbus community for many years. These policies, practices and customs have been perpetuated by the line officers including Defendants Mason, Chief Kim Jacobs, policymakers and those responsible for hiring, training and supervision of police officers within the City of Columbus who have all acted negligently, recklessly, intentionally, knowingly and with deliberate indifference to the serious safety needs of the citizens of Columbus, including Tyre King.

127. The wrongful policies, practices, customs and/or usages complained of herein, demonstrated a deliberate indifference on the part of policymakers of the City of Columbus to the constitutional rights of persons within the city, and were the direct and proximate cause of the violations of Plaintiff's rights alleged herein.

## VI. JURY DEMAND

Plaintiffs request a jury trial on all claims triable to a jury.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court award:

A. Compensatory damages in an amount to be shown at trial;
B. Punitive damages against the individual Defendants (not the City of Columbus) in an amount to be shown at trial;
C. Loss of earnings and net accumulations;
D. Costs incurred in this action and reasonable attorney fees under 42 U.S.C. § 1988;
E. Prejudgment interest; and
F. Such other and further relief as this Court may deem just and proper.

Respectfully submitted,

*/s/ Sean L. Walton*

Sean L. Walton (0088401)

Chanda L. Brown (0081076)
WALTON + BROWN, LLP
395 E. Broad Street, Suite 200
Columbus, Ohio 43215
T: (614) 636-3476
F: (614) 636-3453
swalton@waltonbrownlaw.com
cbrown@waltonbrownlaw.com
*Attorneys for all Plaintiffs*