**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

DEARREA KING,

        Plaintiff,

    v.

CITY OF COLUMBUS, OHIO et al.,

        Defendants/Third-Party Plaintiffs

    v.

DEMETRIUS BRAXTON
Inmate #A731130
Lebanon Correctional Institution
3791 OH-63
Lebanon, Ohio 45036,

        and

JARONN COLLINS,
Inmate #0399895
Franklin County Corrections Center II
2460 Jackson Pike
Columbus, Ohio 43223,

        and

AB
639 Erickson Avenue
Columbus, Ohio 43213,

        and

PR
4635 Glengrove Lane
Columbus, Ohio 43213,

        Third-Party Defendants.

Case No. 2:18-cv-1060

Judge Edmund A. Sargus

Magistrate Judge Elizabeth P. Deavers

**DEFENDANTS'
ANSWER & THIRD-
PARTY COMPLAINT**

(Jury Demand Endorsed Herein)

# ANSWER

For their answer to the complaint filed Plaintiff Dearrea King (Plaintiff) on September 14, 2018, Defendants City of Columbus, Bryan Mason, and Kim Jacobs admit, deny, and state the following:

## SPECIFIC ADMISSIONS, DENIALS & ASSERTIONS

*Defendants' Response to Plaintiff's*
*"Preliminary Statement"*

1.      In response to Paragraph 1, Defendants state that Columbus Police Officer Bryan Mason (Mason) shot and killed Tyre King (King) on September 14, 2016. Defendants deny the remaining allegation in Paragraph 1.

2.      In response to Paragraph 2, Defendants state that, on September 14, 2016, Tyre King was a 13-year-old, African-American male who attended Lind-McKinley STEM Academy and had just begun the eighth grade. Because they are without knowledge, information, or belief sufficient to admit or deny the remaining allegations in Paragraph 2, Defendant deny those remaining allegations.

3.      Defendants admit the allegations in Paragraph 3.

4.      In response to Paragraph 4, Defendants state that, at the time Mason stopped King on September 14, 2016, King was in possession of a black, Umarex 40XP air-powered replica handgun. Defendants deny King's replica firearm was a "toy." Defendants deny the remaining allegations in Paragraph 4.

5.      In response to Paragraph 5, Defendants state that, at the time Mason stopped King on September 14, 2016, King was in possession of a black, Umarex 40XP air-powered replica handgun. Defendants deny King's replica firearm was a "toy." Answering further, Defendants state that one or more individuals interviewed during the Columbus Division of Police's investigation into the incident have stated that King's replica firearm was not visible at the time of the shooting. Because Plaintiff

does not actually identify the specific individuals to whom she refers, Defendants lack knowledge, information, or belief sufficient to admit or deny whether such individuals were witnesses or whether such individuals said what Plaintiff claims. As such, Defendants deny those allegations in Paragraph 5. Defendants deny the remaining allegations in Paragraph 5.

6.     Defendants deny the allegations in Paragraph 6.

7.     In response to Paragraph 7, Defendants state that Mason provided a written statement about the incident to investigators on September 21, 2016. Within that written statement, Mason made the following statements about the September 14, 2016 incident at issue:

> [King] was running to the right and slightly behind (southeast of) the first male [robbery suspect]. [King] was wearing a light color shirt, and when I started to shift my focus to him, I could immediately see what I believed was the grip of a handgun that was tucked into his front waistband. As I repeatedly shouted "Get down!" [King] continued running, veering northeast toward a car that was parked, facing south, in a small parking area located on the southeast corner of two alleys … I thought he was going to run past the driver's side of the parked car, but he came to a stop with a quick stutter step—facing north—approximately 3 feet in front of the car on the driver's side.

Defendants deny the remaining allegations in Paragraph 7.

8.     In response to Paragraph 8, Defendants state that Mason provided a written statement about the incident to investigators on September 21, 2016. Within that written statement, Mason made the following statements about the September 14, 2016 incident at issue:

> [King] looked directly at me before he grabbed the grip of the handgun in his waistband and tugged on it. I was intently focused on [King's] hands and the potential threat of a gun in his waistband. While still shouting "Get down!" I quickly took one or two steps closer to the passenger side of the parked car, hoping it would provide me with some cover. My gun was raised and pointed at the suspect at that time, and he forcefully tugged on the grip of his gun at least one or two more times as if it were snagged on something. In that instant, his refusal to comply with my commands and his continuing attempts to pull the gun out, caused me to believe that he was going to engage me in a gun fight. He then pulled the gun out

> of his waistband and, as he raised it up in front of his torso, I could
> see it had a laser sight or light attached to the bottom of the barrel. I
> believed he was going to shoot me, and I fired my gun at him.
> Immediately after my first shot, the suspect began to spin clockwise
> (to his right), and, immediately following my last shot, he dropped
> to the ground in front of the parked car. I moved a few steps forward
> so that I could see him, and I saw that [Columbus Police] Officer
> [Robert] Reffitt was approaching from the north, with his gun
> drawn, along the driver's side of the parked car. At some point, I
> heard Officer Reffitt airing shots fired.

Defendants deny the remaining allegations in Paragraph 8.

9.      In response to Paragraph 9, Defendants state that Mason provided a written statement

about the incident to investigators on September 21, 2016. Within that written statement, Mason made

the following statements about the September 14, 2016 incident at issue:

> [King] looked directly at me before he grabbed the grip of the
> handgun in his waistband and tugged on it. I was intently focused
> on [King's] hands and the potential threat of a gun in his waistband.
> While still shouting "Get down!" I quickly took one or two steps
> closer to the passenger side of the parked car, hoping it would
> provide me with some cover. My gun was raised and pointed at the
> suspect at that time, and he forcefully tugged on the grip of his gun
> at least one or two more times as if it were snagged on something.
> In that instant, his refusal to comply with my commands and his
> continuing attempts to pull the gun out, caused me to believe that he
> was going to engage me in a gun fight. He then pulled the gun out
> of his waistband and, as he raised it up in front of his torso, I could
> see it had a laser sight or light attached to the bottom of the barrel. I
> believed he was going to shoot me, and I fired my gun at him.
> Immediately after my first shot, the suspect began to spin clockwise
> (to his right), and, immediately following my last shot, he dropped
> to the ground in front of the parked car. I moved a few steps forward
> so that I could see him, and I saw that [Columbus Police] Officer
> [Robert] Reffitt was approaching from the north, with his gun
> drawn, along the driver's side of the parked car. At some point, I
> heard Officer Reffitt airing shots fired.

Defendants deny the remaining allegations in Paragraph 9.

10.     In response to Paragraph 10, Defendants state that Mason provided a written statement about the incident to investigators on September 21, 2016. Within that written statement, Mason made the following statements about the September 14, 2016 incident at issue:

> [King] looked directly at me before he grabbed the grip of the handgun in his waistband and tugged on it. I was intently focused on [King's] hands and the potential threat of a gun in his waistband. While still shouting "Get down!" I quickly took one or two steps closer to the passenger side of the parked car, hoping it would provide me with some cover. My gun was raised and pointed at the suspect at that time, and he forcefully tugged on the grip of his gun at least one or two more times as if it were snagged on something. In that instant, his refusal to comply with my commands and his continuing attempts to pull the gun out, caused me to believe that he was going to engage me in a gun fight. He then pulled the gun out of his waistband and, as he raised it up in front of his torso, I could see it had a laser sight or light attached to the bottom of the barrel. I believed he was going to shoot me, and I fired my gun at him. Immediately after my first shot, the suspect began to spin clockwise (to his right), and, immediately following my last shot, he dropped to the ground in front of the parked car. I moved a few steps forward so that I could see him, and I saw that [Columbus Police] Officer [Robert] Reffitt was approaching from the north, with his gun drawn, along the driver's side of the parked car. At some point, I heard Officer Reffitt airing shots fired.

Defendants deny the remaining allegations in Paragraph 10.

11.     In response to Paragraph 11, Defendants state that Mason provided a written statement about the incident to investigators on September 21, 2016. Within that written statement, Mason made the following statements about the September 14, 2016 incident at issue:

> [King] looked directly at me before he grabbed the grip of the handgun in his waistband and tugged on it. I was intently focused on [King's] hands and the potential threat of a gun in his waistband. While still shouting "Get down!" I quickly took one or two steps closer to the passenger side of the parked car, hoping it would provide me with some cover. My gun was raised and pointed at the suspect at that time, and he forcefully tugged on the grip of his gun at least one or two more times as if it were snagged on something. In that instant, his refusal to comply with my commands and his continuing attempts to pull the gun out, caused me to believe that he was going to engage me in a gun fight. He then pulled the gun out

of his waistband and, as he raised it up in front of his torso, I could see it had a laser sight or light attached to the bottom of the barrel. I believed he was going to shoot me, and I fired my gun at him. Immediately after my first shot, the suspect began to spin clockwise (to his right), and, immediately following my last shot, he dropped to the ground in front of the parked car. I moved a few steps forward so that I could see him, and I saw that [Columbus Police] Officer [Robert] Reffitt was approaching from the north, with his gun drawn, along the driver's side of the parked car. At some point, I heard Officer Reffitt airing shots fired.

Defendants deny the remaining allegations in Paragraph 11.

12. In response to Paragraph 12, Defendants state that, at the time of the relevant incident, King was in possession of a black, Umarex 40XP air-powered replica handgun. Defendants deny that this replica firearm was a "toy." Answering further, Defendants state that one or more individuals interviewed as part of the Columbus Division of Police's investigation into the incident have made statements that contradict statements made by Mason. Because Plaintiff does not actually identify the specific individual to whom she refers, Defendants lack knowledge, information, or belief sufficient to either admit or deny whether that individual was a witness to the incident or whether that individual actually said what Plaintiff claims. As such, Defendants deny those allegations in Paragraph 12. Defendants deny the remaining allegations in Paragraph 12.

13. Defendants deny the allegations in Paragraph 13.

14. In response to Paragraph 14, Defendants state one or more individuals interviewed as part of the Columbus Division of Police's investigation into the incident have made statements that contradict statements made by Mason. Because Plaintiff does not identify the specific individual to whom she refers, Defendants lack knowledge, information, or belief sufficient to either admit or deny whether that individual was a witness to the incident or whether that individual actually said what Plaintiff claims. As such, Defendants deny those allegations in Paragraph 14. Defendants deny the remaining allegations in Paragraph 14.

15. In response to Paragraph 15, Defendants state one or more individuals interviewed as part of the Columbus Division of Police's investigation into the incident have made statements that contradict statements made by Mason. Because Plaintiff does not identify the specific individual to whom she refers, Defendants lack knowledge, information, or belief sufficient to either admit or deny whether that individual was a witness to the incident or whether that individual actually said what Plaintiff claims. As such, Defendants deny those allegations in Paragraph 15. Defendants deny the remaining allegations in Paragraph 15.

16. Defendants lack knowledge, information, or belief sufficient to either admit or deny the allegations in Paragraph 16 and therefore deny those allegations.

17. Defendants lack knowledge, information, or belief sufficient to either admit or deny the allegations in Paragraph 17 and therefore deny those allegations.

18. In response to Paragraph 18, Defendants admit that the statement of Columbus Police Officer Robert Reffitt corroborates the statements made by Mason but deny that Officer Reffitt is the only witness to corroborate Mason's version of events. Defendants deny the remaining allegations in Paragraph 18.

19. Defendants deny the allegations in Paragraph 19.

20. In response to Paragraph 7, Defendants state that Mason provided a written statement about the incident to investigators on September 21, 2016. Within that written statement, Mason made the following statements about the September 14, 2016 incident at issue: "It was not until I began placing [King] in handcuffs that I noticed he appeared to be a young teenager." Defendants deny the remaining allegations in Paragraph 20.

21. In response to Paragraph 21, Defendants state that King was 5-feet, 2-inches tall and weighed 120 pounds at the time of his death. Answering further, Defendants lack knowledge,

information, or belief sufficient to either admit or deny that any pathologist described King as a "small-framed adolescent boy." Defendants deny the remaining allegations in Paragraph 21.

22.     Defendants admit the allegations in Paragraph 22.

23.     Defendants deny the allegations in Paragraph 23.

24.     Defendants deny the allegations in Paragraph 24.

25.     Defendants deny the allegations in Paragraph 25.

26.     Defendants deny the allegations in Paragraph 26.

27.     Defendants deny the allegations in Paragraph 27.

28.     Defendants deny the allegations in Paragraph 28.

29.     In response to Paragraph 29, Defendants state that Dr. Emily Hansen was fairly new to the Franklin County Coroner's Office on September 15, 2016. Defendants deny the remaining allegations in Paragraph 29.

30.     In response to Paragraph 30, Defendants state that a Certificate of Death for King was certified by Anahi M. Ortiz on September 22, 2016. Defendants deny the remaining allegations in Paragraph 30.

31.     In response to Paragraph 31, Defendants state that the September 22, 2016 Certificate of Death for King does not provide a cause of death, a date of injury, a time of injury, a place of injury, a location of injury, or a description of how an injury occurred. Defendants deny any remaining allegations in Paragraph 31.

32.     On September 15, 2016, Columbus Mayor Andrew Ginther and Columbus Police Chief Kim Jacobs spoke at a press conference regarding the September 14, 2016 police-involved shooting death of Tyre King. Defendants deny the remaining allegations in Paragraph 32.

33.     Defendants deny the allegations in Paragraph 33.

34.     Defendants deny the allegations in Paragraph 34.

*Defendants' Response to Plaintiff's*
*Statement of "Jurisdiction and Venue"*

35.     In response to Paragraph 35, Defendants state that Plaintiff brings this civil action under 42 U.S.C. § 1983 and O.R.C. Chapter 2125. Defendants deny the remaining allegations in Paragraph 35.

*Defendants' Response to Plaintiff's*
*Statement of the "Parties"*

36.     Defendants admit the allegations in Paragraph 36.

37.     Defendants admit the allegations in Paragraph 37.

38.     In response to Paragraph 38, Defendants deny that Mason was a resident of Franklin County at the time of the incident. Defendants admit the remaining allegations in Paragraph 38.

39.     In response to Paragraph 39, Defendants deny that the Chief of Policy is the final policymaker with respect to all of the policies of the Columbus Division of Police. Defendants admit the remaining allegations in Paragraph 39.

40.     Defendants admit the allegations in Paragraph 40.

41.     In response to Paragraph 41, Defendants deny that any action by any one of them— or by any one of their agents and or employees—was undertaken with malice or a knowing disregard for Plaintiff's rights. Defendants admit the remaining allegations in Paragraph 41.

42.     Defendants lack knowledge, information, or belief sufficient to either admit or deny the allegations in Paragraph 42 and therefore deny those allegations.

*Defendants' Response to Plaintiff's*
*Statement of the "Factual Allegations"*

43.     In response to Paragraph 43, Defendants hereby incorporate Paragraphs 1 through 42 above as if they were fully re-written here.

44.    In response to Paragraph 44, Defendants state that Mason applied to be a corrections officer with the Franklin County Sheriff's Office in March 2004 and that he filed the report writing portion of the initial written test for that application. Defendants stated that Mason was hired by the Columbus Division of Police in 2006. Defendants deny any remaining allegations in Paragraph 44.

45.    Defendants admit the allegations in Paragraph 45.

46.    Defendants admit the allegations in Paragraph 46.

47.    Defendants admit the allegations in Paragraph 47.

48.    Defendants admit the allegations in Paragraph 48.

49.    Defendants deny the allegations in Paragraph 49.

50.    In response to Paragraph 50, Defendants state that Mason received notice on March 21, 2006, that the Civil Service Commission had removed his name from the then-current police officer eligible list because of information revealed in his background investigation. Mason was informed that this removal was made pursuant to Civil Service Commission Rule VI(E)(1)(p), which states:

> Applicants may be rejected from consideration or refused admittance to an examination, and eligibles may be disqualified or removed from an eligible or certification list, for, but not limited to, the following causes:
>
> The individual, based upon information revealed during the background investigation, violates the provisions of the Background Removal Standards for Police Officer and Police Communication Technician applicants ….

Defendants deny any remaining allegations in Paragraph 50.

51.    In response to Paragraph 51, Defendants state that Mason requested a background administrative review of his file, and as a result of that additional review, the Civil Service Commission restored Mason's name to the then-current police officer eligible list. Mason received

notice of the Commission's decision on April 25, 2006. Defendants deny any remaining allegations in Paragraph 51.

52.     In response to Paragraph 52, Defendants stated that Mason was hired by the Columbus Division of Police on December 18, 2006. Defendants deny any remaining allegations in Paragraph 52.

53.     In response to Paragraph 53, Defendants state the Columbus Police Department's Critical Incident Response Team (CIRT) investigates *inter alia*: (a) any discharge of a firearm by a Columbus police officer that results in a human injury or death; and (b) any other incident for which an investigation is specifically ordered by the Commander of the Department's Crimes Against Person Bureau Commander, the Department's Investigative Subdivision Deputy Chief, or the Chief of Police. Defendants deny any remaining allegations in Paragraph 53.

54.     Defendants admit the allegations in Paragraph 54.

55.     In response to Paragraph 55, Defendants state CIRT is a team within the Columbus Police Department's Homicide Section that is comprised of twelve homicide detectives from various shifts, all three shift homicide sergeants, the team leader, and the Homicide Lieutenant (or an administrative lieutenant if the Homicide Lieutenant is unavailable). Defendants deny any remaining allegations in Paragraph 55.

56.     In response to Paragraph 56, Defendants state: (a) CIRT investigates all police-involved shootings that result in a human injury or death; (b) CIRT forwards its investigations of all police-involved shooting deaths to the relevant county's prosecutor; and (c) the Franklin County Prosecutor's Office has a policy of presenting all homicides (including police-involved shooting deaths) to a grand jury. Defendants deny any remaining allegations in Paragraph 56.

57.     In response to Paragraph 57, Defendants state: (a) the investigation packet for all police-involved shooting deaths is forwarded to the Columbus Police Department's Firearms/Police-Involved Death Review Board (FRB) for its review and recommendation; (b) upon receiving a recommendation from the FRB, the investigation package is forwarded to each involved officer's chain of command for their review and recommendation; (c) if a chain of command does not concur with FRB's recommendations, the investigation package is forwarded to the Chief of Police for a final determination; and (d) the foregoing procedure is followed whether or not a grand jury chooses to indict an involved officer. Defendants deny any remaining allegations in Paragraph 57.

58.     In response to Paragraph 58, Defendants state that the Chief of Police makes a final determination as to whether a particular police-involved shooting is within policy if there is a lack of agreement between or among the FRB and the relevant chains of command. Defendants deny any remaining allegations in Paragraph 57.

59.     Defendants admit the allegations in Paragraph 59.

60.     Defendants admit the allegations in Paragraph 60.

61.     Defendants admit the allegations in Paragraph 61.

62.     Defendants admit the allegations in Paragraph 62.

63.     In response to Paragraph 63, Defendants state Officers Support Teams members are trained to not talk about the incident with the involved officers. Defendants deny the remaining allegations in Paragraph 63.

64.     Defendants admit the allegations in Paragraph 64.

65.     Defendants admit the allegations in Paragraph 65.

66.     Defendants admit the allegations in Paragraph 66.

67.     Defendants deny the allegations in Paragraph 67.

68.     In response to Paragraph 68, Defendants: (a) state that involved-officers participate in the CIRT investigation of a police-involved shooting by agreeing to conduct a "walkthrough" to assist investigators in their processing of the scene and in their discovery of evidence; and (b) deny that involved officers are allowed to "wall back through the scene." Defendants deny any remaining allegations in Paragraph 68.

69.     Defendants admit the allegations in Paragraph 69.

70.     In response to Paragraph 70, Defendants: (a) state that information about the involved citizen's criminal history and gang affiliation can be included in a CIRT investigation packet: (b) lack an understanding of what is meant by "other information" sufficient to form a belief about the truth of that particular allegation; and (c) admit that information about the involved citizen "other" than his or her criminal history and/or gang affiliation is included in a CIRT investigation packet. Defendants deny any remaining allegations in Paragraph 70.

71.     In response to Paragraph 71, Defendants state that information about an involved officer's prior uses of force are not normally included in a CIRT investigation packet for a police-involved officer. Defendants deny any remaining allegations in Paragraph 71.

72.     In response to Paragraph 72, Defendants state that information about the involved citizen's drug or alcohol use can be included in a CIRT investigation packet. Defendants deny any remaining allegations in this paragraph.

73.     In response to Paragraph 73, Defendants state: (a) CIRT will seek drug and alcohol testing of an involved officer after a police-involved shooting if there is reason to believe the involved officer is under the influence of drugs or alcohol; (b) CIRT would first try to obtain the involved officer's consent to such testing; and (c) absent consent, CIRT would attempt to obtain such testing legally and through a warrant. Defendants deny any remaining allegations in Paragraph 73.

74.     In response to Paragraph 74, Defendants state that Columbus Police Sergeant Eric Pilya testified at a deposition in the matter of Adrienne Hood v. City of Columbus, Case No. 2:17-cv-471, on March 30, 2018, and made the following statement in response to the following question during that deposition:

> Q.     What makes you think the system that you have in place works?
>
> A.     I think it's—you know, the officers don't have to talk to us; but the way the FOP attorneys handle it, at least we get some information that night from them, which normally we wouldn't get. I think that's a good thing.
>
> I think that, you know, treating the officers with respect is important because, as I said, 99.9 percent of the time, they were just doing their job. So I think, you know, you don't want to treat them poorly when they were just doing their job. I think the division does a good job with that. And I think it enables us to do a very thorough investigation.

Defendants deny any other allegations in this paragraph.

*Defendants' Response to Plaintiff's*
*Statement of "Policy and Practice Allegations"*

75.     Defendants deny the allegations in Paragraph 75.

76.     Defendants deny the allegations in Paragraph 76.

*Defendants' Response to Plaintiff's*
*Statement of "Damages"*

77.     Defendants lack knowledge, information, or belief sufficient to admit or deny the allegations in Paragraph 77 and therefore deny those allegations.

78.     Defendants deny the allegations in Paragraph 78.

*Defendants' Response to Plaintiff's **Count One**:*
*"42 U.S.C. § 1983 and O.R.C. 2125.01 –*
*Wrongful Death and Survival Action"*

79.  In response to Paragraph 79, Defendants hereby incorporate the foregoing paragraphs as though they had been fully re-written here.

80.  In response to Paragraph 80, Defendants state that Plaintiff brings this civil action under 42 U.S.C. § 1983 and O.R.C. Chapter 2125. Defendants deny the remaining allegations in Paragraph 80.

81.  In response to Paragraph 81, Defendants stated that Defendant Bryan Mason and Defendant Kim Jacobs were, at all times relevant to this civil action: (a) employees of Defendant City of Columbus; (b) acting within the courses and scope their City employment; and (c) acting under color of state law. Defendants deny any remaining allegations in Paragraph 81.

82.  Defendants deny the allegations in Paragraph 82.

83.  Defendants deny the allegations in Paragraph 83.

84.  Defendants deny the allegations in Paragraph 84.

85.  Defendants deny the allegations in Paragraph 85.

86.  Defendants deny the allegations in Paragraph 86.

*Defendants' Response to Plaintiff's **Count Two**:*
*"Excessive Force and Unreasonable Seizure in Violation of 42*
*U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the*
*United States Constitution"*

87.  In response to Paragraph 87, Defendants hereby incorporate the foregoing paragraphs as though they had been fully re-written here.

88.  In response to Paragraph 88, Defendants state that Plaintiff brings this civil action under 42 U.S.C. § 1983 and O.R.C. Chapter 2125. Defendants deny the remaining allegations in Paragraph 88.

89.     In response to Paragraph 89, Defendants stated that Defendant Bryan Mason and Defendant Kim Jacobs were, at all times relevant to this civil action: (a) employees of Defendant City of Columbus; (b) acting within the courses and scope their City employment; and (c) acting under color of state law. Defendants deny any remaining allegations in Paragraph 89.

90.     Defendants deny the allegations in Paragraph 90.

91.     Defendants deny the allegations in Paragraph 91.

92.     Defendants deny the allegations in Paragraph 91.

93.     Defendants deny the allegations in Paragraph 91.

*Defendants' Response to Plaintiff's **Count Three**:*
*"Racial Discrimination in Violation of 42 U.S.C. § 1983 the Equal*
*Protection Clause of the Fourteenth Amendment"*

94.     In response to Paragraph 94, Defendants hereby incorporate the foregoing paragraphs as though they had been fully re-written here.

95.     In response to Paragraph 95, Defendants state that Plaintiff brings this civil action under 42 U.S.C. § 1983 and O.R.C. Chapter 2125. Defendants deny the remaining allegations in Paragraph 95.

96.     In response to Paragraph 96, Defendants stated that Defendant Bryan Mason and Defendant Kim Jacobs were, at all times relevant to this civil action: (a) employees of Defendant City of Columbus; (b) acting within the courses and scope their City employment; and (c) acting under color of state law. Defendants deny any remaining allegations in Paragraph 96.

97.     In response to Paragraph 97, Defendants state (a) Plaintiff is not King; (b) King is not Plaintiff; (c) Plaintiff is African-American; (d) Plaintiff is member of a protected class for purposes of equal protection analysis under the Fourteenth Amendment to the U.S. Constitution; (e) Plaintiff has a clearly established constitutional right to be free from racially motivated arrests, detentions, searches, and seizures; (f) Plaintiff's constitutional right to be free from racially motivated arrests,

detentions, searches, and seizures does not arise from her membership in a protected class; (g) Plaintiff has not alleged any violation of her constitutional right to be free from racially motivated arrests, detentions, searches, and seizures; (h) King was African-American; (i) King was member of a protected class for purposes of equal protection analysis under the Fourteenth Amendment to the U.S. Constitution; and (j) King's constitutional right to be free from racially motivated arrests, detentions, searches, and seizures did not arise from his membership in a protected class. Defendants deny any remaining allegations in Paragraph 97.

98.     In response to Paragraph 98, Defendants state that any reasonable office would have known that: (a) any individual within the United States had a constitutional right to be free from racially motivated or otherwise unreasonable arrests, detentions, searches, and seizures; (b) such constitutional rights were clearly established on September 14, 2016. Defendants deny any remaining allegations in Paragraph 98.

99.     Defendants deny the allegations in Paragraph 99.

100.    Defendants deny the allegations in Paragraph 100.

101.    Defendants deny the allegations in Paragraph 101.

102.    Defendants deny the allegations in Paragraph 102.

*Defendants' Response to Plaintiff's* **Count Four***:*
*"Deliberate Indifference to a Serious Medical Need"*

103.    In response to Paragraph 103, Defendants hereby incorporate the foregoing paragraphs as though they had been fully re-written here.

104.    In response to Paragraph 104, Defendants state that Plaintiff brings this civil action under 42 U.S.C. § 1983 and O.R.C. Chapter 2125. Defendants deny the remaining allegations in Paragraph 104.

105.     In response to Paragraph 105, Defendants stated that Defendant Bryan Mason and Defendant Kim Jacobs were, at all times relevant to this civil action: (a) employees of Defendant City of Columbus; (b) acting within the courses and scope their City employment; and (c) acting under color of state law. Defendants deny any remaining allegations in Paragraph 105.

106.     Defendants deny the allegations in Paragraph 106.

107.     Defendants deny the allegations in Paragraph 107.

108.     Defendants deny the allegations in Paragraph 108.

109.     Defendants deny the allegations in Paragraph 109.

*Defendants' Response to Plaintiff's **Count Five**:*
*"Monell Claim Against the City of Columbus, Ohio —*
*42 U.S.C. § 1983"*

110.     In response to Paragraph 110, Defendants hereby incorporate the foregoing paragraphs as though they had been fully re-written here.

111.     In response to Paragraph 111, Defendants stated that Defendant Bryan Mason and Defendant Kim Jacobs were, at all times relevant to this civil action: (a) employees of Defendant City of Columbus; (b) acting within the courses and scope their City employment; and (c) acting under color of state law. Defendants deny any remaining allegations in Paragraph 111.

112.     Defendants deny the allegations in Paragraph 112.

113.     Defendants deny the allegations in Paragraph 113.

114.     Defendants deny the allegations in Paragraph 114.

115.     Defendants deny the allegations in Paragraph 115.

116.     Defendants deny the allegations in Paragraph 116.

117.     Defendants deny the allegations in Paragraph 117.

118.     Defendants deny the allegations in Paragraph 118.

119.     Defendants deny the allegations in Paragraph 119.

120.    Defendants deny the allegations in Paragraph 120.

121.    Defendants deny the allegations in Paragraph 121.

122.    Defendants deny the allegations in Paragraph 122.

123.    Defendants deny the allegations in Paragraph 123.

124.    Defendants deny the allegations in Paragraph 124.

125.    Defendants deny the allegations in Paragraph 125.

126.    Defendants deny the allegations in Paragraph 126.

127.    Defendants deny the allegations in Paragraph 127.

## GENERAL ADMISSIONS, DENIALS & ASSERTIONS

128.    Defendants deny each and every allegation made in Plaintiff's complaint that has not been specifically and unequivocally admitted in one or more of the foregoing paragraphs.

## AFFIRMATIVE DEFENSES

129.    With respect to Plaintiff's state-law claims, Defendants are entitled to all applicable immunities, defenses, set-offs, and limitations set forth in Ohio's Political Subdivision Tort Liability Act, O.R.C §§ 2744.01–2744.11.

130.    With respect to Plaintiff's federal claims, Defendant Bryan Mason and Defendant Kim Jacobs are entitled to qualified immunity.

131.    Plaintiff's official-capacity claims against Defendant Bryan Mason and Defendant Kim Jacobs are duplicative of her claims against Defendant City of Columbus and are therefore unnecessary.

132.    Plaintiff's claims are barred (either in whole or in part) by King's own comparative fault, contributory negligence, assumption of the risk, and/or wrongful conduct.

133.     Plaintiff's claims are barred (either in whole or in part) by the comparative fault, contributory negligence, assumption of the risk, and/or wrongful conduct of other over whom Defendant had no control or authority.

134.     Plaintiff's claims are barred (either in whole or in part) by a failure to mitigate or to reasonably minimize the damages for which recovery is now sought.

135.     Plaintiff's claims are barred (either in whole or in part) by the applicable statutes of limitations.

136.     Plaintiff's claims are barred (in whole or in part) by the doctrines of estoppel, waiver, or laches.

137.     Plaintiff fails to state claims upon which relief can be granted.

138.     Defendants reserve the right to assert such additional defenses that may become apparent as this civil action proceeds through discovery.

## PRAYER FOR RELIEF

139.     Having fully answered Plaintiff's complaint, Defendants respectfully request: (a) an order from this Court dismissing Plaintiff's claims with prejudice; (b) an order from this Court assessing costs (including reasonable attorneys' fees incurred in defending the claims asserted herein) to Defendants; (c) and order from this Court awarding Defendants any and all such other relief the Court deems just, necessary, or appropriate; and (d) and a final judgment entry in Defendants' favor.

140.     Defendants specifically seek any and all reasonable attorneys' fees incurred in defending the frivolous claims that Plaintiff has asserted in bad faith against Defendant Kim Jacobs.

Respectfully submitted,

*/s/ Andrew D.M. Miller*

Andrew D.M. Miller (0074515) – LEAD
Timothy J. Mangan (0025430)
Westley M. Phillips (0077728)
CITY OF COLUMBUS, DEPARTMENT OF LAW
ZACH KLEIN, CITY ATTORNEY
77 North Front Street, Columbus, Ohio 43215
(614) 645-7385 / (614) 645-6949 (fax)
andrewdmmiller@columbus.gov
tjmangan@columbus.gov
wmphillips@columbus.gov

Attorneys for Defendants

## JURY DEMAND

Defendants hereby demand a jury trial of all issues so triable.

*/s/ Andrew D.M. Miller*

Andrew D.M. Miller (0074515)
admmiller@columbus.gov

Attorney for Defendants

## THIRD-PARTY COMPLAINT

For their third-party complaint against Third-Party Defendants Demetrius Braxton, Jaronn Collins, AB , and PR , Defendants/Third-Party Plaintiffs City of Columbus, Bryan Mason, and Kim Jacobs (collectively "Defendants") state as follows:

### INTRODUCTION

1.     Defendants hereby incorporate all of paragraphs contained in their answer above as if each of those paragraphs had been fully re-written here.

2.     Defendants reassert that Plaintiff has no claims or causes of actions against them. If the Court finds otherwise, Defendants deny liability.

### THIRD-PARTY DEFENDANTS

3.     Third-Party Defendant Demetrius Braxton is an Ohio resident currently incarcerated at the Lebanon Correctional Institution in Lebanon, Ohio. On September 14, 2016, Braxton resided in Columbus, Ohio. On September 14, 2016, Braxton was sixteen years old. At present, Braxton is twenty-one years old.

4.     Third-Party Defendant Jaronn Collins is a resident of Ohio who is currently incarcerated at the Franklin County Corrections Center II. On September 14, 2016, Collins resided in Columbus, Ohio. On September 14, 2016, Collins was sixteen years old. At present, Collins is eighteen years old.

5.     Third-Party Defendant AB is a resident of Columbus, Ohio. On September 14, 2016, AB resided in Columbus, Ohio. On September 14, 2016, AB was also fourteen years old. At present, AB is sixteen years old.

6. Defendant PR is a resident of Columbus, Ohio. On September 14, 2016, PR resided in Columbus, Ohio. On September 14, 2016, PR was twelve years old. At present, PR is fifteen years old.

**FACTUAL ALLEGATIONS**

7. On September 14, 2016, Braxton, Collins, AB , PR , and King were driving around Columbus, Ohio, in a car that PR had stolen from her mother earlier in the day. At that time, King was in possession of a black, Umarex 40XP air-powered replica handgun. At that time, King was thirteen years old.

8. While PR was driving King, Braxton, Collins, and AB around Columbus, Ohio, in the stolen vehicle, King, Braxton, and Collins were touching and looking at King's replica firearm. They, along with AB , and PR , even discussed how much King's replica firearm looked like an actual firearm.

9. When the group realized the stolen vehicle was running low on fuel, they hatched a plan to use King's replica firearm to commit an armed robbery to get money for more fuel.

10. The group parked the stolen vehicle in the area of South 18th Street and East Capital Street on Columbus' near east side. After they exited the car, King took his replica firearm from his waistband and gave it to Collins for the robbery. Braxton then took King's replica firearm from Collins for the robbery.

11. The group followed through with their plan to commit a robbery on South 18th Street. Collins asked an individual victim for the time in an effort to that individual to come closer to group for the robbery. Braxton then pointed King's replica firearm at the victim, robbed him $10 in cash, and then threatened to shoot him. King, Collins, AB , and PR had stationed themselves nearby while the robbery was being committed.

12.     The group then fled the immediate area of the robbery. Braxton hid some of his outer clothing under a parked vehicle but did not discard King's replica firearm.

13.     Instead, Braxton returned King's replica firearm to King. Collins told King to keep the replica firearm. King put the replica firearm into his waistband.

14.     Bystanders who had witnessed the robbery called 911. Columbus police officers responded to the location.

15.     Collins handed  PR  and  AB  the money that had been taken during the robbery. PR  then drove herself and  AB  away in the stolen car and used the stolen money to buy fuel. Collins escaped on foot.

16.     Braxton and King were chased on foot by police officers. Mason was running parallel to that foot chase, one street over from Braxton and King. When Braxton and Mason ran into Mason's path, Mason ordered Braxton and King to get on the ground. Braxton complied. King did not.

17.     Instead, King looked directly at Mason while pulling the replica firearm from his waistband. Mason believed King was going to shoot him, and Mason fired his service weapon at King. King's replica firearm was later recovered lying near him.

18.     The stolen vehicle was recovered from  PR  the next day after she led Columbus police officers on a dangerous high-speed chase.

19.     Braxton was arrested and charged for his criminal actions. He ultimately entered a plea of guilty to a charge of robbery in violation of Section 2911.02 of the Ohio Revised Code, which was third-degree felony. Braxton was sentenced to three years in prison for his crimes and is currently serving that sentence.

## COUNT ONE:
## INDEMNITY AND/OR CONTRIBUTION RE BRAXTON

20.     Defendants hereby incorporate all of the foregoing paragraphs as though they had been fully re-written here.

21.     The intentional, reckless, and/or negligent actions of Braxton were the direct and proximate cause of any damages, injuries, or losses from which Plaintiff seeks compensation from Defendants in this action.

22.     King's death was a direct and foreseeable consequence of the armed robbery in which Braxton knowingly and willingly participated.

23.     If it should ultimately be determined that Defendants have any liability whatsoever in connection with the claims alleged in Plaintiff's complaint, Defendants will then have sustained damages in the amount adjudged against them, together with any and all incidental and consequential damages resulting therefrom. Defendants would then be entitled to contribution and/or indemnification from Braxton for some of all of those damages.

## COUNT TWO:
## INDEMNITY AND/OR CONTRIBUTION RE COLLINS

24.     Defendants hereby incorporate all of the foregoing paragraphs as though they had been fully re-written here.

25.     The intentional, reckless, and/or negligent actions of Collins were the direct and proximate cause of any damages, injuries, or losses from which Plaintiff seeks compensation from Defendants in this action.

26.     King's death was a direct and foreseeable consequence of the armed robbery in which Collins knowingly and willingly participated.

27.     If it should ultimately be determined that Defendants have any liability whatsoever in connection with the claims alleged in Plaintiff's complaint, Defendants will then have sustained

damages in the amount adjudged against them, together with any and all incidental and consequential damages resulting therefrom. Defendants would then be entitled to contribution and/or indemnification from Collins for some of all of those damages.

**COUNT THREE:**
**INDEMNITY AND/OR CONTRIBUTION RE** AB

28. Defendants hereby incorporate all of the foregoing paragraphs as though they had been fully re-written here.

29. The intentional, reckless, and/or negligent actions of AB were the direct and proximate cause of any damages, injuries, or losses from which Plaintiff seeks compensation from Defendants in this action.

30. King's death was a direct and foreseeable consequence of the armed robbery in which AB knowingly and willingly participated.

31. If it should ultimately be determined that Defendants have any liability whatsoever in connection with the claims alleged in Plaintiff's complaint, Defendants will then have sustained damages in the amount adjudged against them, together with any and all incidental and consequential damages resulting therefrom. Defendants would then be entitled to contribution and/or indemnification from AB for some of all of those damages.

**COUNT FOUR:**
**INDEMNITY AND/OR CONTRIBUTION RE** PR

32. Defendants hereby incorporate all of the foregoing paragraphs as though they had been fully re-written here.

33. The intentional, reckless, and/or negligent actions of PR were the direct and proximate cause of any damages, injuries, or losses from which Plaintiff seeks compensation from Defendants in this action.

34.     King's death was a direct and foreseeable consequence of the armed robbery in which PR knowingly and willingly participated.

35.     If it should ultimately be determined that Defendants have any liability whatsoever in connection with the claims alleged in Plaintiff's complaint, Defendants will then have sustained damages in the amount adjudged against them, together with any and all incidental and consequential damages resulting therefrom. Defendants would then be entitled to contribution and/or indemnification from PR for some of all of those damages

## PRAYER FOR RELIEF

36.     Under the first cause of action and for the foregoing reasons, Defendants pray that the Court enter judgment in Defendants' favor and against Braxton as follows:

    a.    Requiring Braxton, if Defendants are found liable in any way, to pay Defendants the sum of any judgment issued against them in favor of any party;

    b.    Awarding Defendants their costs and disbursements, including reasonable attorney fees, with interest; and

    c.    Granting Defendants such additional relief as the law, equity and justice require.

37.     Under the second cause of action and for the foregoing reasons, Defendants pray that the Court enter judgment in Defendants' favor and against Collins as follows:

    a.    Requiring Collins, if Defendants are found liable in any way, to pay Defendants the sum of any judgment issued against them in favor of any party;

    b.    Awarding Defendants their costs and disbursements, including reasonable attorney fees, with interest; and

    c.    Granting Defendants such additional relief as the law, equity and justice require.

38. Under the third cause of action and for the foregoing reasons, Defendants pray that the Court enter judgment in Defendants' favor and against AB as follows:

    a. Requiring AB , if Defendants are found liable in any way, to pay Defendants the sum of any judgment issued against them in favor of any party;

    b. Awarding Defendants their costs and disbursements, including reasonable attorney fees, with interest; and

    c. Granting Defendants such additional relief as the law, equity and justice require.

39. Under the fourth cause of action and for the foregoing reasons, Defendants pray that the Court enter judgment in Defendants' favor and against PR as follows:

    a. Requiring PR , if Defendants are found liable in any way, to pay Defendants the sum of any judgment issued against them in favor of any party;

    b. Awarding Defendants their costs and disbursements, including reasonable attorney fees, with interest; and

    c. Granting Defendants such additional relief as the law, equity and justice require.

Respectfully submitted,

*/s/ Andrew D.M. Miller*

Andrew D.M. Miller (0074515) – LEAD
Timothy J. Mangan (0025430)
Westley M. Phillips (0077728)
CITY OF COLUMBUS, DEPARTMENT OF LAW
ZACH KLEIN, CITY ATTORNEY
77 North Front Street, Columbus, Ohio 43215
(614) 645-7385 / (614) 645-6949 (fax)
andrewdmmiller@columbus.gov
tjmangan@columbus.gov
wmphillips@columbus.gov

Attorneys for Defendants

**JURY DEMAND**

40.     Defendants hereby demand a jury trial of all issues so triable.

*/s/ Andrew D.M. Miller*

Andrew D.M. Miller (0074515)
admmiller@columbus.gov

Attorney for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that, on **November 13, 2018**, I electronically filed the foregoing with the Clerk of this Court by using the Court's CM/ECF System. Copies will be served upon counsel of record by, and may be obtained through, the Court's CM/ECF System. Copies of the foregoing will also be served upon Third-Party Defendants via summons and at the addresses identified in the captioned of this pleading.

*/s/ Andrew D.M. Miller*

Andrew D.M. Miller (0074515)
admmiller@columbus.gov