| Columbus Police Division Directive | EFFECTIVE Aug. 01, 1987 | NUMBER 2.01 |
|---|---|---|
| | REVISED Jun. 30, 2014 | TOTAL PAGES 10 |
| **Use of Force** | | |



## I. Definitions

A. ***Use of Force***

The exertion of energy or the use of force by personnel in the performance of their duties used to direct or control another's movements or actions. A ***use of force*** is used to control resistive or aggressive behavior toward the involved personnel, other personnel, third parties, or property, and results in the following Levels of Control.

B. ***Use of Force*** Levels of Control

1. A progression of techniques used to control a suspect's actions. Levels of Control used by the Division of Police are:

Level 0: Officer presence, verbal and non-verbal commands, searching, handcuffing, sparking a taser for compliance, use of flashbangs and multiple baton rounds as diversions

Level 1: Empty hand control, pressure points, grounding techniques, and joint manipulations

Level 2: Use of chemical spray

Level 3: Use of electronic device (electronic custody belt or taser)

Level 4: Hard empty hand control (strike/punch/kick)

Level 5: Use of impact weapon (baton/flashlight)

Level 6: Police K-9 bite

Level 7: Less lethal weapons (beanbag/multiple baton rounds/stinger cartridges)

Level 8: Deadly force

C. Deadly Force

Any force which carries a substantial risk that it will proximately result in the death of any person.

D. Injury

1. For the purposes of this directive, injuries are classified as:

a. Minor Injury

An injury that does not require transport to a medical facility.

b. Serious Injury

An injury that requires transport to a medical facility for treatment.

Note: If a Division supervisor classifies an injury as minor, refusal at the county jail does not require a response to resistance-injury to prisoner administrative investigation.

E. Taser Application

One full or partial five-second cycle of the taser.

## II. Policy Statements

A. General

1. It is well established that police officers may use force to effect an arrest, to defend themselves, or to defend others. An officer should not desist from any official duty merely because resistance is offered. Police officers shall not use more force than is reasonable in a particular incident.
2. Factors to be considered when determining the reasonableness of a use of force are:
   a. The severity of the crime at issue.
   b. Whether the suspect poses an immediate threat to the safety of the officer or others.
   c. Whether the suspect is actively resisting arrest.
   d. Whether the suspect is attempting to evade arrest by flight.
3. Officers shall use their training to guide them through a *use of force* incident. The preferred response to resistance and aggression is a trained technique. However, during a situation involving the infliction or threatened infliction of serious physical harm, the use of an untrained response (e.g., neck restraints), while not normally authorized, may be reasonable to end the threat and survive the encounter. The proper exertion of physical force used to control persons shall be consistent with Division policy.
4. All *uses of force* shall be reported consistent with Division policies. Involved personnel shall notify an available on-duty Division supervisor in the following descending order:
   a. The immediate supervisor
   b. Another sworn supervisor within their chain of command
   c. Any other sworn Division supervisor, who may personally conduct the investigation or may notify a supervisor in the involved officer's chain of command to conduct the investigation
5. The Internal Affairs Bureau (IAB) shall forward a monthly report to the Training Bureau that summarizes all Level 2 through Level 8 *Use of Force* Reports, form U-10.128, received.
6. The Training Bureau shall review the monthly summary of *Use of Force* Reports received from IAB along with the original Levels 0 and 1 *Use of Force* Reports to monitor techniques for their effectiveness and to make approved changes in trained techniques and lesson plans.

7. All sworn Division personnel shall receive annual in-service training in the Division's *use of force* policy.
8. Division supervisors conducting *use of force* investigations shall photograph involved persons as detailed in the Supervisor's Manual.
9. Restrictions on Supervisors Conducting Investigations
   a. Division supervisors who actively participate in or order a *use of force* shall not conduct any subsequent investigation. This restriction does not apply to tactical situations, i.e., SWAT, In/Tac, or field forces.
   b. When a Division supervisor is prohibited from conducting the investigation, the involved supervisor's immediate supervisor, or if unavailable, another Division supervisor of a higher rank than the involved supervisor shall be contacted. The contacted supervisor may conduct the investigation or may assign it to an alternate supervisor.
10. If requested, IAB shall conduct an administrative investigation.
    Note: Personnel who are the focus of a criminal investigation may invoke their constitutional rights. This does not apply if the investigation is strictly administrative in nature. Information compelled from the focus employee in an administrative investigation shall not be shared with, or in any manner released to, any unit conducting a criminal investigation, except as pursuant to the Ohio Public Records Act.

B. Deadly Force
1. Sworn personnel may use deadly force when the involved personnel have reason to believe the response is objectively reasonable to protect themselves or others from the imminent threat of death or serious physical harm.
2. Sworn personnel may use deadly force upon a human being to prevent escape when there is probable cause to believe that the suspect poses a*n immediate* threat of serious physical harm to himself, herself, or others.
3. Sworn personnel should avoid positioning themselves in the direct path of a moving vehicle.
   a. Sworn personnel in the direct path of a moving vehicle should attempt to take evasive action to avoid being struck by the vehicle.
   b. Sworn personnel may only fire a weapon at the driver or occupant of a moving vehicle when there is an articulable, reasonable belief that the subject poses an immediate threat of death or serious physical harm to himself, herself, or others.
4. If reasonable, sworn personnel should give a verbal warning of the intention to use deadly force.
5. While sworn personnel have an affirmative duty to use that degree of force reasonable to protect human life, the use of deadly force is not reasonable merely to protect property interests. Only under circumstances

| Directive 2.01 | Revised 06/30/14 | Page 3 of 10 |

where it is reasonable to believe an infliction or threatened infliction of serious physical harm to human life exists is the use of deadly force justified.
6. The use of deadly force by sworn personnel should not create a danger to the public that outweighs the benefits of its use.
7. Sworn personnel shall not fire a warning shot unless there is justification to use deadly force.
8. Facts unknown to sworn personnel at the time deadly force is used cannot be considered in determining whether the involved personnel acted in conformity with this policy.
9. Investigations of *uses of force* resulting in death shall be forwarded to the county prosecutor in the county in which the incident occurred. That prosecutor will determine if the case will be presented to a Grand Jury.

### III. Procedures

A. Level of Control 0 (Sparking a Taser for Compliance) or Level of Control 1 with No Injury
  1. Involved Personnel

     Complete a *Use of Force* Report and forward it to your immediate supervisor by the end of your shift, or by the beginning of your next shift if the incident occurred outside of assigned duty hours. If your immediate supervisor is unavailable, forward the report to any on-duty supervisor within your chain of command.
  2. Investigating Supervisor
     a. Review and sign the *Use of Force* Report.
     b. Forward the report directly to IAB.
     c. Forward a copy of the report to the immediate supervisor of the involved personnel.
  3. Internal Affairs Bureau

     Forward the original *Use of Force* Report to the Training Bureau.
B. Level of Control 0 or 1 with a Complaint of an Injury Caused by the Response - No Serious Physical Harm to a Human
  1. Involved Personnel
     a. Cause any needed medical aid to be rendered.
     b. Immediately notify, or cause notification of an on-duty Division supervisor.
     c. Complete a *Use of Force* Report and give it to the investigating supervisor.
  2. Investigating Supervisor
     a. Review and sign the *Use of Force* Report.
     b. Minor Injury

   (1) Complete a Data Processing Worksheet, form U-10.164, attach the ***Use of Force*** Report, a copy of the Arrest Information, form U-10.100, and any photographs taken.
   (2) Forward the packet directly to IAB.
   (3) Forward a copy of the report to the immediate supervisor of the involved personnel.
  c. Serious Injury
   (1) Complete an Injury to Prisoner administrative investigation and a Data Processing Worksheet. Attach the ***Use of Force*** Report and a copy of the Arrest Information form.
   (2) Forward the packet through the chain of command to IAB.
 3. Internal Affairs Bureau
  a. If applicable, record the incident in the involved personnel's IAB database.
  b. Maintain a file copy of the ***Use of Force*** Report.
  c. Forward the original ***Use of Force*** Report to the Training Bureau.
C. Level of Control 2
 1. Involved Personnel
  a. Cause any needed medical aid to be rendered.
  b. Immediately notify, or cause notification of an on-duty supervisor.
  c. Complete a ***Use of Force*** Report and give it to the investigating supervisor.
 2. Investigating Supervisor
  a. Review and sign the ***Use of Force*** Report.
  b. Forward a copy of the report to the immediate supervisor of the involved personnel.
  c. If the suspect is being arrested or issued a summons:
   (1) Ensure that the arresting personnel include the facts necessitating the use of chemical spray and details of the decontamination/treatment rendered in the narrative section of the Arrest Information form.
   (2) Include a brief statement indicating justification for the use of chemical spray, the effectiveness of the chemical spray, and details of the decontamination process and treatment rendered on the ***Use of Force*** Report.
   (3) Ensure that an "X" is placed in both the Chemical Spray box on the top left corner and the ***Use of Force*** box on the top right corner on the front of the Arrest Information form.
   (4) Complete a Data Processing Worksheet, attach the ***Use of Force*** Report and a copy of the Arrest Information form, and forward the packet through the involved personnel's chain of command to IAB.

   d. If no arrest is made, add comments to the back of the *Use of Force* Report, and forward it along with a Data Processing Worksheet through the involved personnel's chain of command to IAB.
   e. If circumstances indicate that the use of chemical spray was not within Division policy, complete an investigation as indicated on the *Use of Force* Report, and forward it along with a Data Processing Worksheet through the involved personnel's chain of command to IAB.
   f. For a Level of Control 2 against a handcuffed subject:
     (1) Identify and interview the following:
       (a) Involved Division personnel
       (b) All available witnesses
       (c) The subject upon whom chemical spray was used
     (2) Review and sign the *Use of Force* Report.
     (3) Complete an administrative investigation.
     (4) Complete a Data Processing Worksheet, attach the *Use of Force* Report, a copy of the Arrest Information form, and the administrative investigation, and forward the packet through the involved personnel's chain of command to IAB.
 3. Commander
    Make a final determination for Level of Control 2 not against a handcuffed prisoner unless deviation from progressive discipline and/or departmental charges are recommended. Forward the investigative packet to IAB.
 4. Deputy Chief
   a. Make a final determination for Level of Control 2 against a handcuffed subject unless deviation from progressive discipline and/or departmental charges are recommended.
   b. Forward the investigative packet to IAB.
   c. Cause the involved personnel to be notified of the final determination when no discipline or progressive discipline not resulting in departmental charges is the result.
 5. Internal Affairs Bureau
   a. Record the incident in the involved personnel's IAB database.
   b. Maintain the original *Use of Force* Report.
D. Level of Control 3
 1. Involved Personnel
   a. Cause any needed medical aid to be rendered.
   b. Immediately notify, or cause notification of an on-duty supervisor.
   c. Complete a *Use of Force* Report and a Use of Taser Report, form U-10.128T, and give them to the investigating supervisor.

2. Investigating Supervisor
   a. Identify and interview the following:
      (1) Involved Division personnel
      (2) All available witnesses
      (3) The subject upon whom the taser was used
   b. Review and sign the *Use of Force* Report and the Use of Taser Report.
   c. Complete the Data Processing Worksheet, attach the *Use of Force* Report, Use of Taser Report, any photographs taken, and a copy of the Arrest Information form, and forward the packet through the involved personnel's chain of command to IAB.
   d. For a Level of Control 3 against a handcuffed subject, when three or more cycles of the taser are applied to one subject, when one taser is applied to multiple subjects during the same incident, or when multiple tasers are applied to the same subject:
      (1) Complete an administrative investigation.
      (2) Attach the administrative investigation to the Data Processing Worksheet, Use of Force Report, Use of Taser Report, any photographs taken, and a copy of the Arrest Information form, and forward the packet through the involved personnel's chain of command to IAB.
3. Deputy Chief
   a. Make a final determination for Level of Control 3 unless deviation from progressive discipline and/or departmental charges are recommended.
   b. Forward the investigative packet to IAB.
   c. Cause the involved personnel to be notified of the final determination when no discipline or progressive discipline not resulting in departmental charges is the result.
4. Internal Affairs Bureau
   a. Record the incident in the involved personnel's IAB database.
   b. Maintain the original *Use of Force* Report.

E. Level of Control 4 through 7
1. Involved Personnel
   a. Cause any needed medical aid to be rendered.
   b. Immediately notify, or cause notification of an on-duty supervisor.
   c. Complete a *Use of Force* Report and give it to the investigating supervisor.
2. Investigating Supervisor
   a. Identify and interview the following:
      (1) Involved Division personnel
      (2) All available witnesses
      (3) The subject upon whom the *use of force* was used

    b. Review the *Use of Force* Report.
    c. Complete an administrative investigation.
    d. Complete a Data Processing Worksheet, attach the *Use of Force* Report, a copy of the Arrest Information form, and the administrative investigation, and forward the packet through the involved personnel's chain of command to IAB.

3. Deputy Chief
    a. Make a final determination for Levels of Control 4 through 7 unless deviation from progressive discipline and/or departmental charges are recommended.
    b. Forward the investigative packet to IAB.
    c. Cause the involved personnel to be notified of the final determination when no discipline or progressive discipline not resulting in departmental charges is the result.

4. Internal Affairs Bureau
    a. Record the incident in the involved personnel's IAB database.
    b. Maintain the original *Use of Force* Report.

F. *Use of Force* Resulting in Serious Physical Harm to or Death of a Human

  Note: If the *use of force* involves the discharge of a firearm other than a gas gun, follow the procedures set forth in the "Discharged Firearms" directive. If the *use of force* involves the discharge of a gas gun, follow the procedures set forth in the "Gas Guns and Grenades" directive

1. Involved Personnel
    a. Cause any needed medical aid to be rendered.
    b. Immediately cause Communications Bureau personnel to be notified.
    c. Secure the scene.

2. Communications Bureau
    a. Dispatch personnel to render assistance or to secure the scene.
    b. Notify the following:
     (1) The Columbus Division of Fire
     (2) The precinct sergeant and zone lieutenant responsible for the scene
     (3) The Investigative Duty Desk
       Note: The Investigative Duty Desk will contact the Critical Incident Response Team.
     (4) The bureau commander for the zone of occurrence
     (5) The Crimes Against Persons Bureau Commander
     (6) The IAB Commander
     (7) The involved personnel's immediate supervisor, if on duty
     (8) A designee of the Firearms/Police-Involved Death Review Board (if death occurs under circumstances involving a police action)

  (9) A member of the Officer Support Team
  (10) The Patrol Administrati*on* Sergeant
  (11) The Legal Advisor
  (12) IAB Duty Desk Sergeant/Responder
3. Officer Support Team
    Provide the involved personnel with any assistance, information, or other support they may desire.
    Note: Officer Support Team members are subject to being subpoenaed to attend legal proceedings and testify to what they are told by the involved personnel. Therefore, Officer Support Team members are cautioned not to discuss the incident.
4. Critical Incident Response Team
   a. Conduct a criminal investigation.
   b. Advise personnel who are the focus of the investigation of their constitutional rights.
      Note: The involved personnel may invoke their constitutional rights at any time during the criminal investigation.
   c. Complete the *Use of Force* Report and Data Processing Worksheet and attach both to the original investigative packet.
   d. File the original investigative packet.
   e. Forward copies of the investigative packet as follows:
      (1) One copy to the appropriate county prosecutor
      (2) Three copies to the Firearms/Police-Involved Death Review Board if a firearm was used, or death occurred under circumstances involving a police action.
5. Firearms/Police-Involved Death Review Board
   a. Review all information concerning the incident.
   b. Determine whether the police action was within Division policy.
   c. Prepare and forward a summary of the findings, together with the original investigative packet, the *Use of Force* Report, and Data Processing Worksheet, through the involved personnel's chain of command to the deputy chief.
      Note: If there is a dissenting opinion between the Firearms/Police-Involved Death Review Board members, the dissenting member will include a letter of finding with the investigative packet and route it through the involved personnel's chain of command to the Chief of Police.
6. Immediate Supervisor
   a. Review the entire investigative packet and make recommendations.
   b. Forward the investigative packet through the chain of command.

7. Chain of Command

    Review the entire investigative packet and make recommendations.
8. Deputy Chief
   a. Review the investigative packet.
   b. Make a final determination concerning the incident unless deviation from progressive discipline and/or departmental charges are recommended.

   Note: If the recommendation of the deputy chief is in disagreement with the finding of the Firearms/Police-Involved Death Review Board, forward the investigative packet to the Chief of Police.

   c. Forward the investigative packet to IAB.
   d. Cause the involved personnel to be notified of the final determination when no discipline or progressive discipline not resulting in departmental charges is the result.
9. Chief of Police
   a. Make the final determination when a recommendation to bypass progressive discipline is made.
   b. Make a final determination if there are dissenting opinions within the Firearms/Police-Involved Death Review Board or between the board and the involved personnel's deputy chief.
   c. Cause the involved personnel to be notified of the determination.
10. Internal Affairs Bureau
    a. Record the disposition of the incident in the involved personnel's IAB database.
    b. Maintain the original *Use of Force* Report.