## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

|  |  |
|---|---|
| DEARREA KING, | Case No. 2:18-cv-1060 |
| Plaintiff, | |
| | Judge Edmund A. Sargus |
| v. | |
| | Chief Magistrate Elizabeth Preston Deavers |
| CITY OF COLUMBUS, et al., | |
| | **DEFENDANT CITY OF COLUMBUS'** |
| Defendants. | **MOTION FOR SUMMARY** |
| | **JUDGMENT** |

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, Defendant City of Columbus respectfully moves this Court for summary judgment on all claims asserted against it in this civil action by Plaintiff Dearrea King. A supporting memorandum is attached hereto, and supporting exhibits have been filed herewith and separately.

Respectfully submitted,

/s/ Westley M. Phillips
Westley M. Phillips (0077728)
Assistant City Attorney
City of Columbus, Department of Law
77 N. Front St., Columbus, OH 43215
(614) 645-7385 / (614) 645-6949 (fax)
wmphillips@columbus.gov
Attorney for Defendants

## CONTENTS

I.      PRELIMINARY STATEMENT ................................................................................3

II.     SUMMARY OF THE ARGUMENT ......................................................................4

III.    STATEMENT OF FACTS .......................................................................................5

IV.     STANDARD OF DECISION ...................................................................................5

V.      LAW AND ARGUMENT .........................................................................................5

      A.      NO IMPROPER LEGISLATIVE ENACTMENT OR OFFICIAL POLICY ........................9

      B.      NO FINAL DECISION-MAKER APPROVAL ...........................................................13

      C.      NO INADEQUATE TRAINING OR SUPERVISION ...................................................16

      D.      NO CUSTOM OF TOLERANCE OR ACQUIESCENCE .............................................23

      E.      NO INADEQUATE HIRING OR RETENTION ..........................................................24

VI.     CONCLUSION .........................................................................................................25

## MEMORANDUM IN SUPPORT

## I.   PRELIMINARY STATEMENT

This case arises out of the September 14, 2016 police-involved shooting death of Tyre King. *See* COMPL. ¶1 (R.1 #2). Plaintiff Dearrea King, individually and as the administrator of King's estate, sued three defendants: (1) Columbus Police Officer Bryan Mason; (2) former Columbus Police Chief Kim Jacobs; and (3) the City of Columbus. *See id.* ¶¶36–39 (R.1 ##6–7). Plaintiff sued Mason and Jacobs individually and in their official capacities as employees of the City of Columbus. *See id.* ¶¶38–39 (R.1 #7). Plaintiff also asserted a total of five claims: (1) a "wrongful death and a survival action" under 42 U.S.C. § 1983 and Ohio Revised Code§ 2125.01; (2) an "excessive force and unreasonable seizure" claim under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution; (3) a racial-discrimination claim under 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment; (4) a claim for deliberate indifference to a serious medical need under 42 U.S.C. §§ 1983, 1988, and the Fourth and Fourteenth Amendments; and (5) a claim for federal municipal liability against the City under 42 U.S.C. § 1983 and *Monell v. Department of Social Services*, 436 U.S. 658 (1978). *See id.* ¶¶79–127 (R.1 #13–21).

On April 5, 2019, the Court dismissed Plaintiff's official-capacity claims against former Chief Jacobs and Officer Mason, under both state and federal law. *See* OP. & ORDER 3–4, 10 (R.32 #166–67, 173). The Court also dismissed Plaintiff's individual-capacity claims against former Chief Jacobs under both state and federal law. *See id.* 4–9, 10 (R.32 #167–72, 173). The Court further dismissed Plaintiff's state-law claims against the City. *See id.* 9–10 (R.32 #172–73). Thus, all that remains after the Court's April 5, 2019 opinion and order are the individual-capacity claims against Officer Mason under both state and federal law and the federal municipal-liability claims

against the City itself. By separate motion, Officer Mason has requested summary judgment from the Court on all of the remaining claims asserted against him. *See* MASON MSJ (R.136 #2848–2887). In this motion, the City respectfully seeks summary judgment on all of the remaining claims asserted against it.

## II.  SUMMARY OF THE ARGUMENT

The City is entitled to summary judgment because Plaintiff cannot establish any underlying violation of King's constitutional rights by Officer Mason or by any other City employee or agent. **(Pages 5 to 9).** Primary Source: *Thomas v. Columbus*, 854 F.3d 361 (6th Cir. 2017).

Plaintiff cannot establish the existence of an improper municipal policy through any of the City's legislative enactments or official agency policies. Plaintiff cannot identify any written City policy that was unconstitutional on its face or that actually caused the constitutional deprivations that she alleges. **(Pages 9 to 13).** Primary Source: *Payne v. Sevier County*, 681 Fed. App'x 443 (6th Cir. 2017).

Plaintiff cannot sustain a municipal-liability claim against the City upon a ratification or final decision-maker theory. There was nothing improper regarding the City's review of the incident. Furthermore, the review of the incident cannot have been the moving force behind the incident. **(Pages 13 to 15).** Primary Source: *Pembaur v. Cincinnati*, 475 U.S. 469 (1986).

Plaintiff cannot sustain a failure-to-train or supervise theory of municipal liability against the City. Plaintiff cannot show any deficiency in the City's training or supervision and cannot establish that any purported deficiency in the City's training or supervision was the result of any deliberate indifference. **(Pages 16 to 23).** Primary Source: *Canton v. Harris*, 489 U.S. 378 (1989).

Plaintiff cannot sustain a custom-of-tolerance theory of municipal liability. Plaintiff cannot produce evidence of a historical failure by the City to investigate or discipline unconstitutional

uses of deadly force or instances of racial bias. **(Pages 23 to 24).** Primary Source: *Stanfield v. Lima*, 727 Fed. App'x 841 (6th Cir.2018).

Plaintiff cannot sustain an inadequate hiring or retention theory. Nothing in Mason's background would lead the City to conclude that a use of excessive deadly force would be a "plainly obvious consequence of the hiring decision." **(Pages 24 to 25).** *Board of County Commissioners v. Brown*, 520 U.S. 397 (1997).

### III.    STATEMENT OF FACTS

The City adopts the statement of facts contained in Officer Mason's motion for summary judgment and incorporates that statement of facts as if it were rewritten here. *See* Mason MSJ 2–23 (R.136 #2851–72).

### IV.    STANDARD OF DECISION

The City adopts the statement of standard of decision contained in Officer Mason's motion for summary judgment and incorporates that statement of standard of decision as if it were rewritten here. *See* Mason MSJ 23–24 (R.136 #2872–73).

### V.    LAW AND ARGUMENT

While a municipality like the City can be held liable for money damages under 42 U.S.C. § 1983, such liability cannot be based merely on a theory of vicarious liability. *See Monell v. Department of Social Services*, 436 U.S. 658, 690–94 (1978). A "municipality can be found liable under § 1983 *only* where the municipality *itself* causes the constitutional violation at issue." *Canton v. Harris*, 489 U.S. 378, 385 (1989) (emphasis added) (citing *Monell*, 436 U.S. at 694–95). Thus, a plaintiff raising a federal municipal-liability claim under § 1983 must first establish some underlying federal violation and then "demonstrate that the alleged federal violation occurred because of a municipal policy or custom." *Thornton v. Columbus*, 727 Fed. App'x 829, 838 (6th Cir. 2018); *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).

"[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality." *Bryan County v. Brown*, 520 U.S. 397, 404 (1997). Rather, the "plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Id.* at 404 (emphasis in original); *Griffith v. Franklin County*, 975 F.3d 554, 581 (6th Cir. 2020); *Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013). In other words, Plaintiff may not merely complain about some alleged deficiency in the City's policies or customs. Rather, she "must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bryan County*, 520 U.S. at 404; *Alman*, 703 F.3d at 903; *Triplett-Fazzone v. Columbus*, Case No.2:12-cv-331, 2013 U.S. Dist. LEXIS 110663, *16 (S.D. Ohio Aug. 6, 2013).

In light of the foregoing, it can be properly said that all municipal-liability claims under § 1983 have at least four essential elements: (1) an underlying constitutional violation by a municipal employee or agent; (2) an improper official municipal policy or custom; (3) a sufficient culpable mental state on the part of the municipality with respect to that policy or custom; and (4) a direct causal link between that municipal policy or custom and the underlying violation at issue. Because Plaintiff cannot establish any of these elements, the City is entitled to summary judgment on the remaining federal municipal-liability claims asserted against it and to a dismissal from this civil action.

With respect to the first element, a "plaintiff must show harm 'caused by a constitutional violation.' … No constitutional violation means no municipal liability." *Thomas v. Columbus*, 854 F.3d 361, 367 (6th Cir. 2017) (quoting & citing *Lee v. Metropolitan Government*, 432 Fed. App'x 435, 449 (6th Cir. 2011)); *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Stevens-Rucker v. Columbus*, 739 Fed. App'x 834, 846 (6th Cir. 2018). For reasons discussed in greater detail in

Officer Mason's motion for summary judgment, Plaintiff cannot establish any underlying violation of Decedent's constitutional rights by Officer Mason or by any other City employee or agent. *See* MASON MSJ 24–33 (R.136 #2873–82).[1] Because Plaintiff cannot establish any underlying constitutional violation, the Court may grant the City's motion for summary judgment for that reason alone.

With respect to the second element of a federal municipal-liability claim, the Sixth Circuit has long recognized at least four avenues for establishing an improper municipal policy: "The plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Thomas v. Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (citing *Monell*, 436 U.S. at 694; *Pembaur v. Cincinnati*, 475 U.S. 469, 480 (1986); *Stemler v. Florence*, 126 F.3d 856, 865 (6th Cir. 1997); *Doe v. Claiborne County*, 103 F.3d 495, 507 (6th Cir. 1996)); *Griffith*, 975 F.3d at 581; *Burgess*, 735 F.3d at 478. In her complaint here, Plaintiff also asserts a municipal-liability theory that the City improperly hires, retains, and assigns "officers with honesty and integrity issues, behavioral issues and patterns of misconduct." COMPL. ¶75(b) (R.1 #10–11). Because such a theory might be considered a *fifth* avenue for establishing an improper municipal policy, it will be discussed as well. *See Bryan County*, 520 U.S. at 410–14; *Fox v. DeSoto*, 489 F.3d 227, 238 (6th Cir. 2007); *Coates v. Gelnett*, Case No. 3:20-2021 U.S. Dist. LEXIS 12218, *6–8 (W.D. Ky Jan. 21, 2021); *Wilson v. Trumbull County*, Case No. 4:12-cv-2163, 2013 U.S. Dist. LEXIS 154925, *36–37 (N.D. Ohio Oct. 7, 2013). In any event, Plaintiff cannot establish the existence of an improper municipal

---

[1] The City adopts those portions of the law and argument contained in Officer Mason's motion for summary judgment and incorporates them as if they were rewritten here.

policy through any of these five potential avenues. As such, the City is entitled to summary judgment on the remaining federal municipal-liability claims for that reason as well.

While the remaining discussion about Plaintiff's *Monell* theories will be organized around these five avenues, it must be remembered that these avenues are merely methods for establishing the second element of such claims. That is, they are the means by which a § 1983 plaintiff identifies and establishes some sort of improper municipal policy. Even if Plaintiff can establish an underlying constitutional violation (which she cannot) and an improper policy (which she cannot), she must still prove both the third and fourth essential elements of federal municipal liability (i.e., causation and culpability). *See Bryan County*, 520 U.S. at 405. In the context of municipal liability, causation exists only when the purportedly improper policy is the "moving force of the constitutional violation." *Oklahoma City v. Tuttle*, 471 U.S. 808, 820 (1985) (quoting *Polk County v. Dodson*, 454 U.S. 312, 326 (1981)); *Monell*, 436 U.S. at 694; *Canton*, 489 U.S. at 388–89. Moreover, the relevant culpable state for municipal liability is that of "deliberate indifference"— a "very high standard of culpability, exceeding 'gross negligence.'" *Ross v. Duggan*, 402 F.3d 575, 590 n.7 (6th Cir. 2004) (emphasis in original) (quoting *Canton*, 489 U.S. 378, 388–92 & n.7).

When a plaintiff claims that a particular municipal action itself violated federal law or that the municipality has specifically directed its employees to do something that violates federal law (i.e., the first and second avenues for establishing an improper municipal policy), resolving municipal-liability issues of culpability and causation is a relatively straightforward matter. *Bryan County*, 520 U.S. at 404. After all, "Section 1983 itself 'contains no state-of-mind requirement independent of that necessary to state a violation' of the underlying federal right." *Id.* at 405 (quoting *Daniels v. Williams*, 474 U.S. 327, 329–30 (1986)). Thus, "proof that a municipality's legislative body or authorized decision maker has intentionally deprived a plaintiff of a federally

protected right necessarily establishes that the municipality acted culpably." *Bryan County*, 520 U.S. at 405. Nonetheless, when a plaintiff claims that the municipality has not directly inflicted an injury, but has instead caused and allowed the injury to happen (i.e., the third, fourth, and potentially fifth avenues to an improper municipal policy), "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Id.* (citing *Canton*, 489 U.S. at 391–92; *Tuttle*, 471 U.S. at 824; *Springfield v. Kibbe*, 480 U.S. 257, 270–71 (1987) (O'Connor, J., dissenting)); *Connick v. Thompson*, 563 U.S. 51, 74 (2011).

Ultimately, Plaintiff cannot establish an underlying constitutional violation by Officer Mason or by any other City employee or agent. Thus, she cannot sustain a claim against the City for that reason alone. Still, even if she could, her federal claims against the City still fail because Plaintiff cannot identify any improper municipal policy or custom. Further, she cannot establish either the casual connection or the culpability necessary for federal municipal liability. In short, Plaintiff's *Monell* theories are without merit.

### A.    NO IMPROPER LEGISLATIVE ENACTMENT OR OFFICIAL POLICY

In order to establish the existence of an improper municipal policy, Plaintiff can first look to the municipality's legislative enactments or to the official agency policies. *See Thomas*, 398 F.3d at 429; *Griffith*, 975 F.3d at 581; *Burgess*, 735 F.3d at 478. When trying to prove the existence of an illegal municipal policy through a legislative enactment or official agency policy, a § 1983 plaintiff must look to the municipality's written laws, rules, regulations, or directives. Plaintiff cannot identify any legislative enactment or official agency policy that directs or allows Columbus police officers to engage in any of the purportedly unconstitutional conduct that she assigns to Officer Mason on September 14, 2016. In any event, "[f]or § 1983 purposes, not every directive issued by a county official constitutes a 'policy.' … Instead, a policy must either be facially

unconstitutional or reveal that policymakers were deliberately indifferent to the rights of those affected by the directive." *Payne v. Sevier County*, 681 Fed. App'x 443, 447 (6th Cir. 2017) (citing *Bryan County*, 520 U.S. at 404, 406–07).

     With respect to the use of force generally, CPD Rule of Conduct 1.19 states that "Division personnel shall use force only in accordance with law and Division policy and procedures." *See* PAIGE AFF. ¶ 26 (MASON MSJ EX. G, R.136-23 #2942); PAIGE AFF. EX.3 (R.136-26). Moreover, Directive 2.01(II)(A)(1) states that "[p]olice officers shall not use more force than is reasonable in a particular incident," and Directive 2.01(II)(A)(2) provides a list of factors "to be considered when determining the reasonableness of a use of force." PAIGE AFF. ¶ 27 (MASON MSJ EX. G, R.136-23 #2942); PAIGE AFF. EX.4 (R.136-27). Those factors include: (a) the "severity of the crime at issue"; (b) whether the "suspect poses an immediate threat to the safety of the officer or others"; (c) whether the "suspect is actively resisting arrest"; and (d) whether the "suspect is attempting to evade arrest by flight." PAIGE AFF. ¶27 (MASON MSJ EX. G, R.136-23 #2942); PAIGE AFF. EX.4 (R.136-27). Thus, the City's use-of-force directive essentially repeats the longstanding holding of *Graham v. Connor*, 490 U.S. 386 (1989), in which the Supreme Court first explicitly applied the Fourth Amendment' objective reasonableness test to the force used in the law enforcement contexts. *See id.* at 395–96. Nothing within the City's official agency policies authorizes, orders, or permits a CPD officer to use more force than is reasonable in a particular incident.

     With respect to the use of deadly force, one of the CPD's core values is "Demonstrating appreciation for human dignity, diversity, and individual rights while holding reverence for human life above all else." PAIGE AFF. ¶ 25 (MASON MSJ EX. G, R.136-23 #2941); PAIGE AFF. EX.2 (R.136-25). Directive 2.01(II)(B)(1) then states that "[s]worn personnel may use deadly force when the involved personnel have reason to believe the response is objectively reasonable to

protect themselves or others from the imminent threat of death or serious physical harm." PAIGE AFF. ¶ 27 (MASON MSJ EX. G, R.136-23 #2942); PAIGE AFF. EX.4 (R.136-27). Directive 2.01(II)(B)(2) then states that "[s]worn personnel may use deadly force upon a human being to prevent escape when there is probable cause to believe that the suspect poses an immediate threat of serious physical harm to himself, herself, or others." PAIGE AFF. ¶ 27 (MASON MSJ EX. G, R.136-23 #2942); PAIGE AFF. EX.4 (R.136-27). Directive 2.01(II)(B)(5) further states that "[o]nly under circumstances where it is reasonable to believe an infliction or threatened infliction of serious physical harm to human life exists is the use of deadly force justified." PAIGE AFF. ¶ 27 (MASON MSJ EX. G, R.136-23 #2942); PAIGE AFF. EX.4 (R.136-27). As such, the City's use-of-deadly-force policy essentially repeats the longstanding holding of *Tennessee v. Garner*, 471 U.S. 1 (1985), in which the Supreme Court created the standard by which courts have since judged the constitutionality of a police officers' deadly-force decisions. *See id.* at 12. Nothing within the City's official agency policies authorizes, orders, or permits a CPD officer to use deadly force outside the constitutional limitations established by the Supreme Court.

With respect to the claims that Officer Mason was deliberately indifferent to a serious medical need, the CPD directives are replete with commands for offices to render aid when necessary. *See*, *e.g.*, Directive 2.01(III)(B)(1)(a) (requiring needed medical aid to be rendered if there is a complaint of injury after a Level 0–1 use of force) PAIGE AFF. ¶ 27 (MASON MSJ EX. G, R.136-23 #2942); PAIGE AFF. EX.4 (R.136-27); Directive 2.01(III)(C)(1)(a) (requiring the same after a Level 2 use of force, whether or not when there is an injury complaint) PAIGE AFF. ¶ 27 (MASON MSJ EX. G, R.136-23 #2942); PAIGE AFF. EX.4 (R.136-27); Directive 2.01(III)(D)(1)(a) (same with respect to a Level 3 use of force) PAIGE AFF. ¶ 27 (MASON MSJ EX. G, R.136-23 #2942); PAIGE AFF. EX.4 (R.136-27); Directive 2.01(III)(E)(1)(a) (same with respect to a Level 4–

7 use of force) PAIGE AFF. ¶ 27 (MASON MSJ EX. G, R.136-23 #2942); PAIGE AFF. EX.4 (R.136-27); Directive 2.01(III)(F)(1)(a) (same with respect to any use of force resulting in serious physical harm to—or the death of—a human) PAIGE AFF. ¶ 27 (MASON MSJ EX. G, R.136-23 #2942); PAIGE AFF. EX.4 (R.136-27); Directive 2.02(III)(D)(1)(a) (same with respect to any discharge of a firearm resulting in a human injury or death) PAIGE AFF. ¶ 28 (MASON MSJ EX. G, R.136-23 #2942); PAIGE AFF. EX.5 (R.136-28). Nothing within the City's official agency policies authorizes, orders, or permits a CPD officer to ignore the medical needs of anyone, including a detained suspect or someone against whom force has been used.

With respect Plaintiff's claims that race was a motivating factor in Officer Mason's decisions on September 14, 2016, CPD Rule of Conduct 1.50(A) first states that "Division personnel shall stop and detain a person only for an articulable reason, and shall not stop or detain a person based solely on a common trait of a group (for example, race, ethnicity, gender, sexual orientation, religion, economic status, age, cultural group)." PAIGE AFF. ¶26 (MASON MSJ EX. G, R.136-23 #2942); PAIGE AFF. EX.3 (R.136-26). Similarly, one of the CPD's core values is "Demonstrating appreciation for human dignity, diversity, and individual rights while holding reverence for human life above all else." PAIGE AFF. ¶ 25 (MASON MSJ EX. G, R.136-23 #2941); PAIGE AFF. EX.2 (R.136-25). Moreover, CPD Directive 3.07 is related to bias-based profiling in general, and Directive 3.07(II)(B) specifically prohibits it:

> Division personnel shall not engage in bias-based profiling, shall only stop or detain a person for an articulable reason, and shall advise that person of the reason for the stop or detention as soon as practicable and prior to the termination of the contact. A person's race, ethnic background, gender, sexual orientation, religion, economic status, age, cultural group, or any other identifiable groups or any combination thereof shall not be a factor in determining probable cause for an arrest or reasonable suspicion for a stop unless it is based on specific credible

> information containing a physical description which to some
> degree matches the person or vehicle that is detained.

PAIGE AFF. ¶ 29 (MASON MSJ EX. G, R.136-23 #2942); PAIGE AFF. EX.6 (R.136-29). Of course,

the Division's use-of-force policies (including the rendering of medical aid) discussed above are

race neutral on their face. Thus, nothing within the City's official agency policies authorizes,

orders, or permits CPD officers to treat individuals of a certain race any differently in their

decisions to stop them, to detain them, to use force (deadly or not) against them, or to cause

necessary medical aid to be rendered.

Ultimately, Plaintiff cannot identify any written City policy that was unconstitutional on

its face or that actually caused the constitutional deprivations that she alleges. In fact, when asked

to do so during discovery, Plaintiff refused. *See* PLAINTIFF RESP. TO CITY INTERROG. #6–7 (Ex.6,

pp.5–6) (attached as CITY MSJ EX. A).[2] Accordingly, Plaintiff cannot establish the existence of an

improper municipal policy through any of the City's legislative enactments or official agency

policies. If her *Monell* claims against the City are to succeed at all, Plaintiff must avail herself of

another avenue of municipal liability.

### B.    NO FINAL DECISION-MAKER APPROVAL

In order to establish the existence of an improper municipal policy, Plaintiff can next look

to actions taken by municipal officials with final decision-making authority. *See Thomas*, 398 F.3d

at 429; *Griffith*, 975 F.3d at 581; *Burgess*, 735 F.3d at 478. Under this ratification theory of

municipal liability, "a single decision can constitute a municipal policy or custom, if that decision

is made by an official who possesses final authority to establish municipal policy with respect to

---

[2] Instead, Plaintiff asserted inappropriate objections, claimed that she was still conducting discovery, and listed a myriad of allegations about purported City policies without actually identifying a single legislative enactment or official written policy. To the extent, Plaintiff claims that she needed to wait for an expert opinion on the matter, it should be noted that her proffered police procedures expert, Melvin Tucker, found nothing wrong with the City's written policies. *See* TUCKER DEP. 84–85, 99–100 (R.128-1 #1910-11, 1914).

the action ordered, which means that his decisions are final and unreviewable and are not constrained by the official policies of superior officials." *Stillwagon v. Delaware*, Case No. 2:14-cv-80, 2016 U.S. Dist. LEXIS 44223, *61–62 (S.D. Ohio March 31, 2016) (internal quotations omitted); *Pembaur*, 475 U.S. at 480–81; *Flagg v. Detroit*, 715 F.3d 165, 175 (6th Cir. 2013). Thus, an "official with final decision making authority ratifies a subordinate's action if the decision maker provides 'affirmative approval of a particular decision made by the subordinate.'" *Stillwagon*, 2016 U.S. Dist. LEXIS 44223, *62 (quoting *Feliciano v. Cleveland*, 988 F.2d 649, 656 (6th Cir. 1993)).

The shooting at issued occurred on September 14, 2016. *See* COMPL. ¶1 (R.1 #2). The incident was investigated with Detective William Gillette assigned as the primary investigator. *See* PILYA AFF. ¶ 18 (attached as CITY MSJ EX. B); PILYA AFF. EX. 1 (Preliminary Progress Rep.). On May 19, 2017, a Franklin County grand jury declined to indict Officer Mason for his conduct during the incident. *See* PILYA AFF. ¶ 19; PILYA AFF. EX. 2 (Final Progress Rep.). On October 26, 2017, the CPD's Firearms/Police-Involved Death Review Board ("FRB") found Officer Mason's conduct to have been intentional but within CPD policy. *See* PILYA AFF. ¶ 20; PILYA AFF. EX. 3 (FRB Dispo.). On December 11, 2017, Officer Mason's chain of command ultimately concurred with the FRB's determination, and no further action was taken against him. *See* PILYA AFF. ¶ 21; PILYA AFF. EXS. 4 & 5 (Routing Sheets). Plaintiff believes that the foregoing means the City "ratified" Officer Mason's conduct for purposes of establishing municipal liability under § 1983. *See* PLAINTIFF RESP. TO CITY INTERROG. #21–22 (Ex.6, p.11) (attached as CITY MSJ EX. A); TUCKER DEP. 126 (R.128-1 #1921).

As a preliminary matter, the fact that the City did not come to the conclusion about the incident that Plaintiff would have preferred does not itself constitute ratification of unconstitutional

conduct. Plaintiff does not point to any actual deficiency in the City's investigation of the incident at issue. In any event, Plaintiff "must still 'prove that the ratification was a moving force in *causing* the constitutional violation.'" *Stillwagon*, 2016 U.S. Dist. LEXIS 44223, *620 (emphasis added) (quoting *Feliciano*, 988 F.2d at 656 n.6); *Williams v. Ellington*, 936 F.2d 881, 884–85 (6th Cir. 1991)). This, however, can *never* be the case when the purported ratification comes *after* the event at issue.

Things that happened in 2017 cannot be the cause of an incident that occurred earlier in 2016. Courts have repeatedly held that the "subsequent ratification of the officers' conduct in [a] case cannot logically be the moving force behind the alleged constitutional violation." *Phillips v. Stevens*, Case No. 2:04-cv-207, 2007 U.S. Dist. LEXIS 60215, *34 (S.D. Ohio Aug.16, 2007) (citing *Alexander v. Beale Street Blues*, 108 F. Supp.2d 934, 949 (W.D. Tenn. 1999)); *Williams*, 936 F.2d at 884–85; *Stillwagon*, 2016 U.S. Dist. LEXIS 44223, *64; *France v. Lucas*, Case No. 1:07-cv-3519, 2012 U.S. Dist. LEXIS 151344, *41 (N.D. Ohio Oct.22, 2012), *affirmed by* 836 F.3d 612 (6th Cir.2016); *Tomazic v. Cleveland*, Case No. 1:04-cv-2252, 2006 U.S. Dist. LEXIS 65682, at *16 (N.D. Ohio Sept. 14, 2006); *Frerichs v. Knox County*, Case No. 3:16-cv-693, 2017 U.S. Dist. LEXIS 115564, *27–30 (E.D. Tenn. July 25, 2017). Nonetheless, this rejected theory of post-incident ratification is the only theory of ratification or decision-maker *Monell* liability that Plaintiff has articulated.

Because the City's investigation of the September 14, 2016 shooting and its subsequent approval of Officer Mason's conduct cannot have been the moving forces behind the shooting itself, Plaintiff cannot sustain a municipal-liability claim against the City upon a ratification or final decision-maker theory.

## C.     NO INADEQUATE TRAINING OR SUPERVISION

In order to establish the existence of an improper municipal policy, Plaintiff can next look a policy of inadequate training or supervision. *See Thomas*, 398 F.3d at 429; *Griffith*, 975 F.3d at 581; *Burgess*, 735 F.3d at 478. While inadequate police training and supervision can serve as an improper policy or custom for purposes of municipal liability, they do so only when the purported failures to train or supervise amount to "deliberate indifference to the rights of persons with whom the police come into contact." *Canton*, 489 U.S. at 388–89; *Meeks v. Detroit*, 727 Fed. App'x 171, 182 (6th Cir. 2018); *Roell v. Hamilton County*, 870 F.3d 471, 487 (6th Cir.2017); *Brown v. Battle Creek*, 844 F.3d 556, 573 (6th Cir. 2016); *Burgess*, 735 F.3d at 478; *Pecsi v. Niles*, 674 Fed. App'x 544, 547 (quoting *Monell*, 436 U.S. at 694; *Bryan County*, 520 U.S. at 407).

To succeed on a failure-to-train or a failure-to-supervise theory of municipal liability, Plaintiff must prove that: (a) the City's training or supervision program was inadequate to the tasks its officers must perform; (b) such an inadequacy was the result of the City's deliberate indifference; and (c) these particular inadequacies were closely related to or did actually cause Decedent's injury. *See Canton*, 489 U.S. at 389–91; *Roell*, 870 F.3d at 487; *Alman*, 703 F.3d at 903; *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989). Essentially, this is just a training-and-supervision-specific restatement of the last three elements of municipal liability generally, and it also appears to assume the existence of an underlying constitutional violation. In any event, Plaintiff cannot sustain either theory of recovery against the City, and this avenue of *Monell* liability is not available to her.

Plaintiff cannot show that the training or supervision received by Columbus police officers was—or is—lacking or inadequate to the tasks those officers must perform. There is no dispute the City trains its law enforcement officers thoroughly. All sworn personnel must successfully complete the CPD Training Academy's basic recruit training program. *See* PAIGE AFF. ¶ 10

(MASON MSJ EX. G, R.136-23 #2939). During this full-time, six-month, 1,000-plus-hour basic recruit training program, recruits are trained, instructed, and taught on, among other things: (a) the safe, proper, and effective use of non-lethal force; (b) the safe, proper, and effective use of lethal force; (c) the safe, proper, and effective use of firearms; (d) the law and legal limits applicable to the use of non-lethal force, the use of lethal force, and the use of firearms; (e) current law and legal limits applicable to arrests, searches, and seizures; (f) basic first aid; (g) community diversity; (h) the inappropriateness of biased-based (i.e., racial) profiling; (i) crisis intervention; and (j) de-escalation techniques. *Id.* at ¶¶ 11-17 (MASON MSJ EX. G, R.136-23 #2939-40). The CPD's basic recruit training program meets—and often exceeds—the State of Ohio's requirements for such training. *Id.* at ¶ 15 (MASON MSJ EX. G, R.136-23 #2940).

Following basic training, new CPD officers must also complete the Division's Field Officer Training (FTO) Program. *Id.* at ¶ 18 (MASON MSJ EX. G, R.136-23 #2940). New officers spend about fifteen weeks going through four phases of one-on-one training with veteran officers who observe, evaluate, and record their performance in the field and offer additional advice, training, and instruction to the new officers when and where necessary. *Id*. Even after they have completed all of their initial training, all CPD officers receive frequent, updated, and regularly-scheduled continuing education, training, and instruction on all of those same topics discussed. *Id.* at ¶¶ 20-22 (MASON MSJ EX. G, R.136-23 #2940-41). Mason completed all of the training identified above. *See* MASON AFF. ¶¶ 38-40 (R.136-2 #2898).

Plaintiff cannot identify any particular deficiencies or inadequacies in the CPD's use-of-force training or supervision. Although she makes many general allegations of purportedly improper training, Plaintiff does so in only the vaguest of terms and provides no additional evidence or explanation. *See* COMPL. 27, 75(a), 75(e)–(g), 76(a), 76(c), 116, 123–24, 126 (R.1 #5,

10–12, 19–21); PLAINTIFF RESP. TO CITY INTERROG. #8–9 (Ex.6, pp.6–7) (attached as CITY MSJ

EX. A). Of course, the "party opposing a motion for summary judgment 'may not rest upon the

mere allegations or denials of [her] pleading, but must set forth specific facts showing that there is

a genuine issue for trial.'" *Mayers v. Williams*, Case No. 16-5409, 2017 U.S. App. LEXIS 22053,

*3 (6th Cir. April 21, 2017) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986);

*Morgan v. Stansberry*, No. 19-6475, 2020 U.S. App. LEXIS 17401, at *3 (6th Cir. June 2, 2020)

(same).

Moreover, Plaintiff cannot establish that any purported deficiency in the City's training or

supervision was the result of any deliberate indifference. "To establish deliberate indifference, a

plaintiff generally needs to show that the policy has resulted in 'prior unconstitutional actions,' but

that policymakers have maintained the policy nonetheless." *Payne v. Sevier County*, 681 Fed.

App'x 443, 447 (6th Cir. 2017) (quoting *Miller v. Calhoun County*, 408 F.3d 803, 815 (6th Cir.

2005)); *Connick*, 563 U.S. at 62; *Bryan County*, 520 U.S. at 409; *Brown*, 844 F.3d at 573; *Regets

v. Plymouth*, 568 Fed. App'x 380, 394–95 (6th Cir.2014); *Marcilis v. Redford*, 693 F.3d 589, 605

(6th Cir. 2012). Plaintiff cannot produce evidence of even a single prior unconstitutional use of

force by Mason. She cannot produce evidence of a single prior instance of Mason exhibiting any

racial bias. During written discovery, Plaintiff refused to identify any prior unconstitutional

actions. *See* PLAINTIFF RESP. TO CITY INTERROG. #13, 15, 17, 19 (Ex.6, pp.8–10) (attached as CITY

MSJ EX. A). Although she stated she would supplement her discovery answers later, she never

did. *Id.*

Plaintiff's proffered police procedures expert, Melvin Tucker, has not offered any opinion

regarding the City's training programs. Still, he references prior incidents in an effort to opine

about a failure-to-supervise theory. While the deficiency in Tucker's supervision theories and

methodology will be discussed in greater detail later, now is a good time to discuss the prior incidents upon which he relies for virtually all of his policy opinions.[3] Tucker states, "In the seven-year period before the shooting death of King, Mason had been involved in 47 incidents involving [the] use of force and 25 of the use of force incidents resulted in civilians requiring medical attention." TUCKER DEP. 111 (R.128-1 #1917). For this proposition, Tucker refers to Page 27, Lines 9–21, of Mason's deposition. In that portion of Mason deposition, however, Plaintiff's counsel was questioning Mason about the accuracy of statements that had been made about him by bloggers in an article for which no foundation had been laid. *See* MASON DEP. 25–27 (R.132-1 #2616-18). Mason's counsel objected to this line of questioning and to the introduction of the article itself. *See id.* at 26–27 (R.132-1 #2617-18). Moreover, Mason did not confirm the blogger's statistics, questioned where the bloggers had obtained their information, and had earlier stated that he did not know how many times he had used force as a Columbus Police Officer. *See id.* at 25–27 (R.132-1 #2616-18).

There is no evidentiary support for the proposition that Mason was involved in forty-seven use-of-force incidents in the seven years prior to September 14, 2016, or that twenty-five of those incidents resulted in civilians needing medical attention. While Tucker's heavy reliance on this unsupported figure raises serious questions about his qualifications and methodology, the Court can fortunately avoid such admissibility issues for the time being because Tucker also admits that he knows nothing of substance about any of Mason's prior uses of force. He does not know how many of them were excessive, and he does not know how many of them were unjustified. *See* TUCKER DEP. 112–14, 119–20 (R.128-1 #1917-19). While Tucker does not believe such

---

[3] With respect to her claims that Officer Mason was deliberately indifferent to a serious medical need or that race was a motivating factor in his decisions on September 14, 2016, Plaintiff has not offered any evidence, argument, or theory related to even one prior incident of such alleged misconduct.

information is relevant (*See id.* at 119–20, R.128-1 #1919), the U.S. Supreme Court and the Sixth Circuit disagree. "To establish deliberate indifference, a plaintiff generally needs to show that the policy has resulted in 'prior *unconstitutional* actions,' but that policymakers have maintained the policy nonetheless." *Payne*, 681 Fed. App'x at 447 (emphasis added) (quoting *Miller*, 408 F.3d at 815); *Connick*, 563 U.S. at 62; *Bryan County*, 520 U.S. at 409; *Brown*, 844 F.3d at 573; *Regets*, 568 Fed. App'x at 394–95; *Marcilis*, 693 F.3d at 605.

Tucker also relies on the fact that Mason has had a total of four uses-of-deadly force from 2006 to 2016. TUCKER DEP. 111-12 (R.128-1 #1917). Mason's uses of deadly force during each of these incidents was justified. *See* MASON AFF. ¶¶ 33-37 (R.136-2 #2897); MASON AFF. EX. 13 (R.136-15 #2913-17); MASON AFF. EX. 14 (R.136-16 #2918-22); MASON AFF. EX. 15 (R.136-17 #2923); MASON AFF. EX. 16 (R.136-18 #2924); MASON MSJ (R.136 #2848–2887). Mason was not charged with a crime by any prosecuting authority for his conduct during any one of the incidents. *See* MASON AFF. ¶ 37 (R.136-2 #2897). Each of these incidents was thoroughly investigated, and Mason's conduct was not found to be in violation of any version of the City's use-of-force directives. *See id.* at ¶ 37 (R.136-2 #2897). No civil claims were successfully prosecuted against Mason for any of the previous incidents, and Mason is entitled to summary judgment on the claims asserted against him in this civil action. *See* MASON AFF. ¶ 37 (R.136-2 #2897); MASON MSJ (R.136 #2848–2887). Of course, the September 14, 2016 shooting death of Tyre King cannot be considered a *prior* action (constitutional or unconstitutional) because that is the incident at issue in this case. In any event, Tucker admits he knows nothing about the three prior shooting incidents. *See* TUCKER DEP. 114 (R.128-1 #1918). Again, Tucker mistakenly believes that such information is irrelevant. *Compare id.* at 119–20 (R.128-1 #1919), *with Payne*, 681 Fed. App'x at 447 (emphasis added) (quoting *Miller*, 408 F.3d at 815) ("To establish deliberate indifference, a

plaintiff generally needs to show that the policy has resulted in 'prior *unconstitutional* actions,' but that policymakers have maintained the policy nonetheless."); *Connick*, 563 U.S. at 62; *Bryan County*, 520 U.S. at 409; *Brown*, 844 F.3d at 573; *Regets*, 568 Fed. App'x at 394–95; *Marcilis*, 693 F.3d at 605.

Tucker finally relies on two other incidents as purported examples of similar misconduct by CPD officers. TUCKER DEP. 126-27 (R.128-1 #1921). On February 6, 2015, CPD Officer Keith Abel shot James England. *See England v. Columbus*, Case No. 2:19-cv-1049-SDM-KAJ (S.D. Ohio, filed March 20, 2019) (COMPL. ¶¶4–5 (R.1 #2); ANSWER ¶¶4–5 (R.8 #68)). On October 29, 2015, CPD Officers Matthew Baase and John Narewski shot Deaunte Bell-McGrew. *See Cooper v. Columbus*, Case No. 2:19-cv-3105-SDM-EPD (S.D. Ohio, filed July 17, 2019) (AM. COMPL. ¶¶1–2 (R.16 #68); ANSWER ¶¶1–2 (R.17 #88)). These two prior incidents are subject to litigation that is currently pending before this Court, and liability has been contested in both cases. The cases arising out of these two prior incidents are being pursued by the same attorneys representing Plaintiff here, and Tucker has been retained as a proffered expert by these same attorneys in each of the three cases. *See* TUCKER DEP. 58–60 (R.128-1 #1904). Dispositive motions are due in the *Cooper* matter on March 5, 2021, *see* ORDER, Case No. 2:19-cv-3105, R.24 #112, and dispositive motions are due in the *England* matter on March 26, 2021. *See* NOTATION ORDER, Case No. 2:19-cv-1049, R.20 and RESET DEADLINES (no formal docket entry) entered May 11, 2020). At that time, those individual defendants will move for summary judgment, and they will demonstrate the absence of an underlying constitutional violation to support Tucker's theories herein this case. Nonetheless, for present purposes, it suffices to note that there has been no finding by any authority that these incidents actually involved unconstitutional conduct, let alone that these incidents were

such that they would have put the City on notice of some sort of deficiency in its training or supervision.

Ultimately, Plaintiff cannot provide evidence of a "pattern of similar constitutional violations" that would be "'ordinarily necessary' to demonstrate deliberate indifference" on the City's part. *Connick*, 563 U.S. at 62 (quoting *Bryan County*, 520 U.S., at 409); *Brown*, 844 F.3d at 573. Still, the Supreme Court has left open the possibility that a pattern of similar prior constitutional violations might not be necessary to establish deliberate indifference, but only "in a narrow range of circumstances." *Connick*, 563 U.S. at 63 (quoting *Bryan County*, 520 U.S. at 409; citing *Canton*, 489 U.S. at 390 n.10); *Brown*, 844 F.3d at 573. For "liability to attach in the instance of a single violation, the record must show 'a complete failure to train the police force, training that is so reckless or grossly negligent that future police misconduct is almost inevitable or would properly be characterized as substantially certain to result.'" *Harvey v. Campbell County*, 453 Fed. App'x 557, 567 (6th Cir. 2011) (quoting *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982)); *Zavatson v. Warren*, 714 Fed. App'x 512, 527 (6th Cir. 2017); *Andwan v. Greenhills*, Case No. 1:13-cv-624, 2017 U.S. Dist. LEXIS 132982, *39–41 (S.D. Ohio Aug. 21, 2017); *Glowka v. Bemis*, Case No. 3:12-cv-345, 2015 U.S. Dist. LEXIS 166997, *15 (S.D. Ohio Dec. 14, 2015). Plaintiff cannot meet this exacting standard because, as stated above, the City extensively trains on all topics relevant to this case.

Ultimately, a plaintiff seeking to impose municipal liability under a § 1983 failure-to-train or supervise theory may not "allege merely that an officer's training and supervision were inadequate, or that the officer would not have violated the plaintiff's constitutional rights had he or she been given more or better training and supervision." *Glowka*, 2015 U.S. Dist. LEXIS 166997, *15 (citing *Sova v. Mt. Pleasant*, 142 F.3d 898, 904 (6th Cir. 1998)); *Canton*, 489 U.S. at

390–91; *Winkler v. Madison County*, 893 F.3d 877, 903 (6th Cir. 2018); *Alman*, 703 F.3d at 903. This, however, appears to be all that Plaintiff can do. She cannot sustain a failure-to-train or supervise theory of municipal liability against the City in this case.

### D.   NO CUSTOM OF TOLERANCE OR ACQUIESCENCE

The Sixth Circuit has identified four factors that a plaintiff must prove in order to establish a custom of tolerance or acquiescence:

> (1) the existence of a clear and persistent pattern of illegal activity; (2) notice or constructive notice on the part of the defendant; (3) the defendant's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) that the defendant's custom was the moving force or direct causal link in the constitutional deprivation.

*Stanfield v. Lima*, 727 Fed. App'x 841, 851 (6th Cir.2018) (quoting *Thomas*, 398 F.3d at 429); *Doe v. Claiborne County*, 103 F.3d 495, 507 (6th Cir. 1996); *Thomas v. Columbus*, Case No.2:15-cv-2469; 2017 U.S. Dist. LEXIS 153371, *39 (S.D. Ohio Sept. 20, 2017). A "failure to investigate" can satisfy this test "if the plaintiff can show that the municipality historically failed to investigate or discipline similar conduct such that the municipality's inaction represents an unofficial custom of tolerance." *Bear v. Delaware County*, Case No. 2:14-cv00043, 2016 U.S. Dist. LEXIS 6537, *38 (S.D. Ohio Jan. 20, 2016) (citing *Leach v. Shelby County*, 891 F.2d 1241, 1247–48 (1989), and *Marchese v. Lucas*, 758 F.2d 181, 188 (6th Cir. 1985)); *Burgess*, 735 F.3d at 478; *Thomas*, 398 F.3d at 433. King cannot produce evidence of a historical failure by the City to investigate or discipline unconstitutional uses of deadly force or instances of racial bias. As such, she cannot sustain a custom-of-tolerance theory of municipal liability.

To the extent King bases her failure-to-investigate theory on her disagreement with the CPD investigation of the particular incident at issue in this case, such a theory would fail because the *post hoc* investigation of a particular event cannot logically be the cause of an event that

preceded the investigation. *See Burgess*, 735 F.3d at 479; *Daniels v. Columbus*, Case No. C2-00-562, 2002 U.S. Dist. LEXIS 28130, *16 (S.D. Ohio Feb. 20, 2002). Moreover, the City's approval (or ratification) of Officer Mason's conduct *after* the shooting was over cannot possibly have been the "moving force" behind Mason's conduct. *See Burgess*, 735 F.3d at 479; *Greenlee v. Miami Township*, Case No. 3:14-cv-173, 2015 U.S. Dist. LEXIS 18145, *21 (S.D. Ohio Feb. 12, 2015).

### E.     NO INADEQUATE HIRING OR RETENTION

While it has never been formally identified as an avenue for establishing a purportedly improper municipal policy or custom, there is at least some basis in the case law for the notion that inadequate hiring or retention could suffice. Perhaps the best way to understand this avenue is to examine the U.S. Supreme case that discusses it most fully.

In *Board of County Commissioners v. Brown*, 520 U.S. 397 (1997), the plaintiff brought a claim for damages against a county board of commissioners. *See id.* at 399. She alleged that a county police officer used excessive force in arresting her and that the county itself was liable for her injuries based on its sheriff's hiring and training decisions. *See id.* Specifically, the plaintiff claimed the county's sheriff had failed to adequately review the involved officer's background. *See id.* at 401. The officer, it turns out, had a record of driving infractions and had pleaded guilty to various driving-related offenses and other misdemeanors, including assault and battery, resisting arrest, and public drunkenness. *See id.* At trial, the sheriff testified that he had obtained the involved officer's driving record and a report on him from the National Crime Information Center but that he had not closely reviewed either of those documents. *See id.* The sheriff had authorized the officer to make arrests but not to carry any weapons or to operate a patrol car. *See id.*

The *Brown* Court first noted that a § 1983 claim "premised upon the inadequacy of an official's review of a prospective applicant's record" presents a very real danger of doing that which *Monell* itself specifically had proscribed.

> Every injury suffered at the hands of a municipal employee can be traced to a hiring decision in a "but-for" sense: But for the municipality's decision to hire the employee, the plaintiff would not have suffered the injury. To prevent municipal liability for a hiring decision from collapsing into *respondeat superior* liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged.

*Brown*, 520 U.S. at 410. Noting that neither the district court nor the appellate court below had actually tested the link between the involved officer's actual background and the risk that he would, if hired, use excessive force, the Supreme Court emphasized the exacting nature of this causation analysis:

> [A] finding of culpability simply cannot depend on the mere probability that any officer inadequately screened will inflict any constitutional injury. Rather, it must depend on a finding that this officer was highly likely to inflict the particular injury suffered by the plaintiff. The connection between the background of the particular applicant and the specific constitutional violation alleged must be strong.

*Id.* at 412. Simply saying that inadequate screening could likely result in an officer violating a citizen's constitutional rights is insufficient. *See id.* at 411–12. The real question here, if *Brown* is to be applied, is to determine whether the City should have concluded from Mason's actual background that a use of excessive deadly force would be a "plainly obvious consequence of the hiring decision." *Id.* at 412–13. On this point, the showings by both the plaintiff in *Brown* and King in the case at bar are inadequate.

## VI. CONCLUSION

For the reasons stated above and in the motion for summary judgment filed by Defendant Bryan Mason, Defendant City of Columbus respectfully moves this Court for summary judgment on all remaining claims asserted against it in this action and for final judgment entry in its favor.

Respectfully submitted,

/s/ Westley M. Phillips
Westley M. Phillips (0077728)
Assistant City Attorney
City of Columbus, Department of Law
77 N. Front St., Columbus, OH 43215
(614) 645-7385 / (614) 645-6949 (fax)
wmphillips@columbus.gov
Attorney for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that, on **February 18, 2021**, I electronically filed the foregoing with the Clerk of this Court by using the Court's CM/ECF System. Copies will be served upon counsel of record by, and may be obtained through, the Court's CM/ECF System:

/s/ Westley M. Phillips
Westley M. Phillips (0077728)