# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| DEARREA KING, | Case No. 2:18-cv-1060 |
| Plaintiff, | |
| v. | Judge Edmund A. Sargus, Jr. |
| | Chief Magistrate Judge Elizabeth A. Preston Deavers |
| CITY OF COLUMBUS, OHIO, et al., | |
| Defendants. | **AFFIDAVIT OF ERIC PILYA** |

STATE OF OHIO

COUNTY OF FRANKLIN, SS:

1. I, Eric Pilya, having been first duly cautioned and sworn, do hereby state and affirm that I have personal knowledge of the facts stated in this affidavit below and that I am competent to testify to those facts.

2. I am a law enforcement officer with the Columbus Division of Police, which is also known as the Division. It is also called the Columbus Police Department, the CPD, or the Department. I have been employed by the CPD since 1987.

3. At all relevant times, I was the Homicide Cold Case Sergeant for the CPD and the leader of its Critical Incident Response Team (CIRT).

4. CIRT is a team within the CPD's Homicide Section that is comprised of detectives and sergeants with specialized training and experience in homicide and/or death investigations.

5. The purpose of CIRT is to promote standardized and consistent investigations of certain types of serious incidents, such as police-involved shootings, and to complete such investigations in a timely and efficient manner.

6. At all relevant times, whenever there was a discharge of a firearm by CPD personnel resulting in injury or death, CIRT conducted a criminal investigation of the incident, and creates a packet documenting that investigation.

7. The primary objective of any CIRT investigation is not necessarily to pursue criminal charges or disciplinary action against any individual or officer involved in a police-shooting incident. Rather, the objective of a CIRT investigation is primarily to determine what happened during the incident itself.

8. Regardless of what the CIRT investigation finds, if the police-involved shooting incident under investigation results in a death, CIRT always forwards its investigative packet to the relevant county prosecutor, who will then independently determine whether the case will be presented to a grand jury.

9. If the police-involved shooting incident does not involve death but CIRT investigators determine probable cause exists to file criminal charges again any individual and/or officer involved in the incident, the CIRT's primary investigator will pursue those charges in the relevant court and/or through the relevant prosecuting authority.

10. In all cases, CIRT also forwards its investigation packet to the Firearms/Police-Involved Death Review Board (FRB), which is a body within the CPD that will determine whether the involved officer's conduct was within Division policy and whether any corrective action and/or discipline is warranted.

11. CIRT's investigation packet and the FRB's determination are also reviewed by the involved officers' respective chains of command for their own findings and recommendations.

12. In cases involving death, CIRT does not render judgments on the conduct of the officers it investigates. In those cases CIRT's job is solely to conduct the investigation, to learn the

facts of the incident, to gather evidence, and then to pass those findings on to the relevant county prosecutor for possible criminal charges and to the FRB for possible internal action and/or discipline.

13. In cases not involving death, CIRT makes a determination as to whether probable cause exists to charge the involved officers with a crime as a result of the incident. If such probable cause exists, CIRT's primary investigator will pursue those charges. If such probable cause does not exist, the primary investigator will not pursue those charges. In either case, CIRT's job is still to conduct the investigation, to learn the facts of the incident, to gather evidence, and then to pass those findings on to the FRB for possible internal action and/or discipline.

14. To the extent that CIRT or any of its investigators form, render, or express an opinion regarding an involved officer's conduct (short of a probable cause determination in non-fatal police shootings), such opinions are not expressed to either the prosecutor or the FRB, nor would I expect such opinions to have any influence on their independent determinations.

15. Because CIRT is a group of Columbus police officers that, at all relevant times, investigated Columbus police officers, we understood that the integrity of our investigations must be of the highest degree so as to avoid even the perception of impropriety or undue influence. Thus, as team leader, I tried to ensure CIRT remained unbiased in its investigations and uninfluenced by the opinions of others within the Division about what was or was not going on with a particular CIRT investigation.

16. CIRT keeps its investigations private until they are complete. That is, no one outside of CIRT (and CIRT's chain of command) has access to CIRT's files or to an investigation until that investigation is done.

17. We at CIRT understand that there is some risk of inherent bias whenever one asks a police officer to investigate the actions of a fellow police officer, and we try to manage this risk by thoroughly vetting potential CIRT investigators and by making sure they understand the types of decisions that they are going to have to make.

18. I was the team leader when CIRT investigated the September 14, 2016 police-involved shooting of Tyre King ("the incident"). William Gillette was assigned as the primary investigator. Exhibit 1 to this affidavit is a true and accurate copy of the Preliminary Progress Report for the investigation of the incident.

19. On May 19, 2017, a Franklin County grand jury declined to indict Officer Mason for his conduct during the incident. Exhibit 2 to this affidavit is a true and accurate copy of the Final Progress Report for the investigation of the incident.

20. On October 26, 2017, the CPD's Firearms/Police-Involved Death Review Board ("FRB") found Officer Mason's conduct to have been intentional but within CPD policy. Exhibit 3 to this affidavit is a true and accurate copy of the FRB's Disposition.

21. On December 11, 2017, Officer Mason's chain of command ultimately concurred with the FRB's determination, and no further action was taken against him. Exhibits 4 and 5 to this affidavit are the chain of command's Routing Sheets.

**FURTHER AFFIANT SAYETH NAUGHT.**

_____
ERIC PILYA

Sworn to before me and subscribed in my presence on February **16**, 2021.

_____
NOTARY PUBLIC - STATE OF OHIO

My commission expires: **9/17/2022**

Terry D. McConnell II
Notary Public-State of Ohio
My Commission Expires
9/17/2022