**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| DEARREA KING,<br><br>              Plaintiff,<br><br>   v.<br><br>CITY OF COLUMBUS, OHIO, et al.,<br><br>              Defendants. | Case No. 2:18-cv-1060<br><br>Judge Edmund A. Sargus<br><br>Chief Magistrate Judge<br>Elizabeth A. Preston Deavers<br><br>**DEFENDANT BRYAN MASON'S REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MASON'S MOTION FOR SUMMARY JUDGMENT** |

      Defendant Bryan Mason has filed a motion for summary judgment (Doc.136 #2848-2887) and Plaintiff Dearrea King, Administrator of the Estate of Tyre King, has filed a memorandum in opposition (Doc.141 #3090-3143). Mason replies as follows.

**I.    PLAINTIFF'S FEDERAL CLAIMS**

    **A.    PLAINTIFF'S FOURTH AMENDMENT CLAIM**

      Objective reasonableness is a legal conclusion reserved for the Court. *Thomas v. Columbus*, 854 F.3d 361, 366 (6th Cir. 2017). "[O]nce the relevant facts are determined and all reasonable inferences are drawn in favor of the plaintiff, 'the question whether the officer's actions were objectively unreasonable is a pure question of law.'" *Rush v. Lansing*, 644 Fed. App'x 415, 423 (6th Cir. 2016) (quoting *Chappell v. Cleveland*, 585 F.3d 901, 909 (6th Cir. 2009); *see also Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007) (specifically rejecting the notion that objective reasonableness is a question of fact for the jury). In this case, based upon the undisputed record, Officer Mason had probable cause to believe that King posed a threat of serious physical harm to Mason and others. Therefore his use of deadly force was objectively reasonable under the

circumstances. The following facts in evidence remain uncontroverted:

1. The crime at issue was an armed robbery involving a suspect who pointed a gun at the victim's head while threatening "Don't move or I'm going to blow your fucking head off." BRAXTON DEP. 105 (Doc.127-1 #1621).

2. Tyre King helped plan the robbery to get gas money for the group's stolen car. *Id.* at 188 (Doc.127-1 #1704). He then provided the gun used in the robbery as was planned. *Id.* at 188, 192, 295 (Doc.127-1 #1704, 1708, 1811). He walked to the location of the robbery with his coconspirators. *Id.* at 110, 295, 298-99 (Doc.127-1 # 1626, 1811, 1814-15). He took back his gun immediately after it was used in the robbery and put it in his front waistband. *Id.* at 103 (Doc.127-1 #1619). He then went with others to retrieve the stolen getaway car for the group's unsuccessful escape from the scene of the robbery. *Id.* at 21-23, 196-200 (Doc.127-1 #1537-39, 1712-16).

3. King attempted to evade arrest by flight. He was chased on foot by police officers who responded to the robbery. *Id.* at 206-211 (Doc.127-1 #1722-27). He hopped over two wooden privacy fences during his attempt to evade arrest. *Id.* at 47, 297-98 (Doc.127-1 #1563, 1813-14).

4. King actively resisted arrest. He disobeyed Mason's multiple orders, issued at gunpoint, to get down on the ground, and instead headed towards the front of the parked car where the shooting occurred. BRAXTON DEP. 83, 85, 274-75 (Doc.127-1 #1599, 1601, 1790-91); SKORA DEP. 38-39, 82 (R.126-1 #1429-30, 1473); MASON DEP. 56-57 (R.132-1 #2647-48). In front of the parked car, he disobeyed Mason's order of "Don't do it!" REFFITT DEP. 104-05 (R.131-1 #2515-16).

5. When King headed towards the front of the parked car, it looked like he was holding the gun that was in his front waistband. SCOTT DEP. 87 (R.130-1 #2133); BRAXTON DEP. 83, 85, 274-75 (Doc.127-1 #1599, 1601, 1790-91); PIS TMK Video #4 Pt.1 (161025) at 2:28:34; Screenshot of 2:28:34 of PIS TMK Video 07 Braxton #4 Pt.1 (161025) (Doc.136-21 #2937). A suspect can pull a firearm from his or her waistband and fire in fractions of a second. PAIGE AFF. ¶ 38 (Doc.136-23 #2944).

6. King stopped in front of the parked car after Reffitt cut off his route of escape along the driver's side of the parked car. REFFITT AFF. ¶ 7 (Doc.136-19 #2926); REFFITT DEP. 59 (Doc.131-1 #2470); MASON DEP. 56-57 (R.132-1 #2647-48).

7. When King was in front of the parked car, he pulled his gun out of his waistband, was shot, and the gun fell to the ground near the car's front tire. REFFITT AFF. ¶ 8 (Doc.136-19 #2926); REFFITT DEP. 60 (Doc.131-1 #2471); MASON DEP. 57 (R.132-1 #2648). Officer Reffitt immediately aired that the gun had been recovered. AUDIO 14 2016-09-14_19.46.35_Ch63.

8. King was not running away when he was shot. SKORA DEP. 54-55, 93 (R.126-1 #1445-46, 1484).

9. The situation was tense, uncertain, and rapidly evolving. Only 5-8 seconds separated the moment Mason first saw Braxton and King running toward him in the alley from the moment he fired his gun. MASON AFF. ¶ 25 (Doc.136-2 #2895). Mason's three gunshots were all fired in less than two seconds. MASON AFF. ¶ 21 (Doc.136-2 #2895); MASON DEP. 57, 106 (R.132-1 #2648, 2697); SCOTT DEP. 94 (R.130-1 #2140).

None of Plaintiff's theories establish either that a Fourth Amendment violation occurred or that Mason is not entitled to qualified immunity. Plaintiff cites her expert Melvin Tucker to argue that "Mason's use of deadly force was unnecessary and was a greater level of force than other officers would have used in 2016." MEMO IN OPP. at p. 18 (Doc.141 #3114). As explained in Mason's motion, Tucker criticizes Mason's tactics and opines that the shooting was unreasonable because "[i]t wasn't necessary for him to shoot King because he was so close to the car right there he could have taken concealment and cover and then communicated with King. If King came out and pointed a toy gun at him or any kind of gun or whatever, he could have communicated with him and said, drop it, you know, avoided the shooting…" TUCKER DEP. 109 (R.128-1 #1917).

As noted in Mason's motion, the substance of Tucker's opinion regarding Mason's tactical decisions, and thus Plaintiff's argument, has been specifically rejected by both the United States Supreme Court and the Sixth Circuit. Plaintiff "cannot establish a Fourth Amendment violation based merely on bad tactics that result in a deadly confrontation that could have been avoided." *Rucinski v. Cnty. of Oakland*, 655 Fed. Appx. 338, 343 (6th Cir. 2016) (quoting *San Francisco v. Sheehan*, 135 S. Ct. 1765, 1777 (2015)).Tucker's avoidable-equals-unreasonable standard has no

3

support from any legal authority and the Sixth Circuit has specifically rejected Tucker's "cover and communication" theory. *See Goodwin v. Richland Cty.*, 2020 U.S. App. LEXIS 32727, 2020 FED App. 0588N (6th Cir. 2020). Thus, Plaintiff's entire "bad tactics" theory is immaterial as a matter of law. It is also based on a fundamental misunderstanding of the record evidence. Mason denies making any tactical errors. He had very little cover from the parked car when he fired his gun, only from his thighs down to his feet. MASON AFF. ¶ 22; MASON DEP. 66, 97 (R.132-1 #2657, 2688); MASON DEP. EX. H (R.132-9 #2765). And Tucker simply ignores the threat of physical harm King posed to Reffitt, who was approaching King along the driver's side of the parked car. REFFITT DEP. 70 (R.131-1 #2481). Given the facts of this case, a reasonable officer would perceive a significant threat to the lives of Mason, Reffitt, and others in the area at the moment that Mason fired his gun. Thus, Mason's use of deadly force was objectively reasonable. Plaintiff's arguments to the contrary underplay the danger that Mason faced. And they rely on the hindsight bias that the Court must guard against. If Mason had followed Tucker's advice, tragedy may have been avoided here. But if King had a loaded gun, Mason and Reffitt could well be dead. *See Thomas,* 854 F.3d at 366.

Plaintiff's speculation regarding the timing of King's pulling of the gun also fails to create a genuine issue of material fact. Plaintiff admits that immediately after the shooting "[t]he gun was found near the wheel of the parked car, some distance away from Tyre's body" but speculates that King "could have tossed the gun before he was shot" or could have "tossed the gun as he was shot…" MEMO IN OPP. at p. 16 (Doc.141 #3112). She cites no evidence of either thing actually occurring. And such an argument does not change the result in this case as is demonstrated by *Nelson v. City of Battle Creek*, 802 Fed. Appx. 983, 984 (6th Cir. 2020). In *Nelson*, Officer Esteban Rivera responded to reports of an armed man outside of a store. In the parking lot, the officer

4

encountered "N.K.", a teenage boy who fit the report's description. Officer Rivera got out of his patrol car, shouted, "let me see your hands," and drew his firearm. In a span of two seconds, three undisputed things happened: (1) N.K. pulled a black BB handgun—altered to resemble a real handgun—out of his waistband; (2) N.K. tossed it aside and raised his hands; and (3) Officer Rivera shot N.K. In granting Officer Rivera summary judgment on the basis of qualified immunity, the Sixth Circuit stated as follows:

> We must therefore inquire whether, as of November 16, 2013, it was clearly established that it was unconstitutional for an officer to shoot when, over the span of two seconds, someone pulls what appears to be a gun, drops it, and raises his hands after being given a warning. We hold it was not. Rivera reasonably perceived a threat of serious physical harm when he saw N.K. reach for and grab what looked like a real gun. It was not objectively unreasonable for Rivera to decide to shoot N.K. as he saw N.K. grip and raise his gun, even if the bullet ultimately struck N.K. after he had dropped the gun.
>
> Neither the district court nor Nelson identified any case law where an officer under sufficiently similar circumstances was held to have violated the Fourth Amendment. The district court instead relied on what it perceived as "sufficient factual disputes" as to the reasonableness of Rivera's conduct…The dissent similarly says the evidence is "equivocal" as to whether Rivera shot N.K. while N.K threw away his gun or after doing so…To the extent any facts are disputed, however, these disputes do not deprive Rivera of qualified immunity. The dissent highlights testimony from N.K. and his friend suggesting that Rivera shot N.K. after he had already thrown away his gun. But these observations about when N.K. was struck—which Rivera concedes was after N.K. threw his gun away—do not create a dispute of fact as to when Rivera decided to shoot. Rivera claims he decided to shoot when he saw N.K. grab and raise the gun. Nelson fails to dispute this fact because N.K. and other witnesses cannot speak to Rivera's decision-making or his perception of harm in the two-second span the events unfolded
>
> Even assuming that N.K. dropped the gun—and was raising his hands—before Rivera shot him, this does not alter our analysis. "What matters is the reasonableness of the officers' belief," and "[t]he fact that [N.K.] was actually unarmed when he was shot is irrelevant to the reasonableness inquiry in this case." *Mullins*, 805 F.3d at 767. Although "hindsight reveals that [N.K.] was no longer a threat when he was shot, we do not think it is prudent to deny

5

> police officers qualified immunity in situations where they are faced with a threat of severe physical injury or death and must make split-second decisions." *Id.* at 768. Indeed, the Supreme Court and Sixth Circuit have repeatedly said that an officer's employment of deadly force in split-second decisions when faced with a threat of serious injury or death should not be questioned.

*Nelson*, 802 Fed. Appx. at 988-989 (internal citations omitted).

Plaintiff then goes a step further and appears to speculate that King may have never pulled the gun out of his waistband at all (simply ignoring the undisputed fact that the gun traveled from King's waistband to the wheel of the car). Plaintiff argues:

> One of the witnesses, a nun, Sister Anna Skora, testified that she never saw Tyre with a gun and only saw him running away…Sister Skora explained that had Tyre moved his hand in front of his body, she was in a position to have been able to see it...However, she never saw Tyre reach into his pants, pull on his pants or make any movements that indicated to her that Tyre was doing anything other than attempting to run.

MEMO IN OPP. at p. 15 (Doc.141 #3111). But Sister Skora actually testified as follows,

> Q From where you were standing, what side of the first boy's body did you see?
>
> A Oh, I saw his left side of his body.
>
> Q Could you see his right side?
>
> A No, I couldn't.
>
> Q Could you see his right hand?
>
> A No, I didn't. I didn't see his right hand.
>
> Q Did you see his right hip?
>
> A No, no right side at all. I saw only left side.
>
> Q Did you see what, if anything, he was doing with his right hand?
>
> A No, I didn't.

SKORA DEP. 41-42 (R.126-1 #1432-33).

6

> Q When you say you could see the left side of Tyre at the time of the shooting, could you see Tyre's right side?
>
> A No, I didn't see his right side at all, even his hand or anything.
>
> \*\*\*\*\*
>
> Q If Tyre had put his right hand at or near his right waistband, would you have been able to see that?
>
> A I will not see this.
>
> Q If Tyre had started to pull something from his right waistband with his right hand, would you have been able to see that?
>
> A No, I will not.

SKORA DEP. 111 (R.126-1 #1502).

Thus, Plaintiff's suggestion that King may have never pulled the gun out of his waistband fails for a lack of evidence. Sister Skora clearly testified that from her vantage point she could not see whether or not King pulled out the gun. It is also legally insufficient to deprive Officer Mason of qualified immunity. It is uncontroverted that King ignored multiple commands, and when he headed towards the front of the parked car, it looked like he was holding the gun that was in his front waistband. A resistive felony suspect holding a gun in his waistband poses an imminent deadly threat as the gun can be pointed and fired in fractions of a second. Plaintiff has failed to identify any case law where an officer under sufficiently similar circumstances was held to have violated the Fourth Amendment. Instead, in the closest case on point, in which the suspect was unarmed, the Sixth Circuit determined that the officer's use of deadly force was objectively reasonable under the circumstances and thus constitutionally permissible. *See Lemmon v. City of Akron*, 768 Fed. Appx. 410, 420 (6th Cir. 2019).

Plaintiff's allegation that King was "running away" from Mason when he was shot (MEMO IN OPP. at pp. 15, 24 (Doc.141 #3111, 3120)) also has no merit. Plaintiff wrongly suggests that Sister Skora's testimony supports this proposition. *See* MEMO IN OPP. at p. 15 (Doc.141 #3111)

7

("One of the witnesses, a nun, Sister Anna Skora, testified that she…only saw [King] running away"). However, Sister Skora actually testified the very opposite.

> Q And he was running away when he was shot by the police officer?
>
> A No. When—when first time he called him and he gave him directions, he wants to run away because, you know, like, didn't think that police officer was, like, serious, so he tried to just run away.
>
> Q Right. So at that time he was moving his body trying—
>
> A Back and—yes, left and right to try—this way he can avoid him or this way he can avoid him.
>
> Q And was he still doing that, running left and right like that, at the time that the police officer shot him?
>
> A No, he was straight. He stood up. He stood up straight.

SKORA DEP. 54-55 (R.126-1 #1445-46).

> Q But you also saw Tyre running around, right?
>
> A Not, like, running around. He was trying to go back like—like, go left, right because he doesn't know how he can run away.

SKORA DEP. 93 (R.126-1 #1484).

Plaintiff then cites to Jeremy J. Bauer, Ph.D to establish that King's left side was facing Mason when he was struck by the three bullets. MEMO IN OPP. at p. 15 (Doc.141 #3111) citing BAUER REPORT, p. 16 (Doc.141-19 #4657). That trajectory makes sense considering King was standing in front of the parked car and Mason was in the area of the passenger side of the parked car. Mason even testified,

> Q. As you were firing, do you recall which direction you were firing in?
>
> A. It would have been towards Tyre, which would have been southeast.
>
> Q. And was he was he standing directly facing you, or was he at an angle?

8

> A. He was slighted canted to my—he would have been to my left, facing. So facing kind of towards me, but canted slightly.

MASON DEP. 64 (R.132-1 #2655). But without any citation to evidence, Plaintiff then argues "the physical evidence supports that Tyre was turning away from Mason to flee…" MEMO IN OPP. at p. 15 (Doc.141 #3111). A review of Bauer's report reveals that Bauer never stated that King was shot while fleeing or while turning to flee, only that he was shot on the left side. Plaintiff's theory that King was shot while running away is simply not supported by the evidence in the record.

Plaintiff's speculation regarding King's subjective intent during the incident ("he was scared, confused, panicking, and he tried to flee" MEMO IN OPP. at p. 1 (Doc.141 #3097)) also fails to create a genuine issue of material fact. "[T]he subjective intent of the victim—unavailable to the officers who must make a split-second judgment—is irrelevant to the question whether his actions gave rise to a reasonable perception of danger." *Murray-Ruhl v. Passinault*, 246 Fed. App'x 338, 350 (6th Cir. 2007). Rather, the threat that King posed must be judged from the perspective of a reasonable officer on the scene. The demeanor of the suspect is particularly important to a reasonable force analysis. *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 172 (6th Cir. 2004). Courts should pay close attention to whether the suspect posed, or appeared to pose, an immediate threat to the safety of the officers or others. *See Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002). As stated above, King appeared to pose an immediate threat to the safety of Mason and others when he ignored Mason's commands and held the gun in his waistband, and even more so when he pulled the gun out of his waistband.

Plaintiff's allegation that Mason "did not provide any warning" prior to using deadly force (MEMO IN OPP. at p. 16 (Doc.141 #3112)) also has no merit. The evidence in the record establishes that Mason was wearing a uniform that clearly identified him as a law enforcement officer and had shouted multiple orders, issued at gunpoint, to "Get down on the ground!" and "Don't do it!"

9

Mason's conduct and words clearly communicated that escalation of the situation would result in the use of his firearm. *See Loch v. City of Litchfield*, 689 F.3d 961, 967 (8th Cir. 2012) (quoting *Estate of Morgan v. Cook*, 686 F.3d 494, 498 (8th Cir. 2012)). His actions certainly did not violate any clearly established constitutional right.

Plaintiff's suggestion that no other witnesses felt threatened by King ("Witnesses were surprised when Mason began shooting…They did not perceive a threat that justified such force") MEMO IN OPP. at p. 14 (Doc.141 #3110) is not only irrelevant to the reasonable force analysis but also incorrect. Officer Reffitt, who was approaching King along the driver's side of the parked car, believed that King's actions posed a deadly threat and was preparing to shoot to stop that threat when he heard Mason's gunshots. REFFITT DEP. 70 (R.131-1 #2481).

While King's age makes the incident especially tragic for everyone involved, it does not change the result of the objective reasonableness analysis. Tucker states, "Well, I think that—that it doesn't make a lot of difference. A 13 year old can kill you just like a 36 year old can." TUCKER DEP. 107 (R.128-1 #1916). Simply put, Mason had probable cause to believe that King posed a threat of serious physical harm to Mason and others when he used deadly force. As shown above, Plaintiff presents no actual evidence to support her assertions or to challenge the uncontroverted evidence in the record. Instead, she argues that "[t]he Court must 'not simply accept what may be a self-serving account by the police officer, and must instead look at circumstantial evidence that, if believed, would tend to discredit the police story.'" MEMO IN OPP. at p. 21 (Doc.141 #3117). Despite Plaintiff's invitation to do so, and absent evidence to the contrary, the court cannot just reject the testimony of Mason and Reffitt. As stated in *Chappell,* 585 F.3d at 906 (citing *Leary v. Livingston County*, 528 F.3d. 438, 443–44 (6th Cir. 2009)):

> The court's duty to view the facts in the light most favorable to the nonmovant does not require or *permit* the court to accept mere allegations that are not supported by factual evidence.

*Id*. (emphasis added).

In *Chappell*, detectives were doing a protective sweep of a house when they encountered a 15-year-old boy who came out of a closet with a knife in his hand. Believing that they were threatened with serious physical harm, the detectives shot and killed the boy. "Eight days later, during the Cleveland Police Department's investigation of the deadly force incident, both [detectives] stated that [the boy] moved quickly or 'lunged' toward them." 585 F.3d at 905. The detectives' statements, and their deposition testimony twenty months later, were the only evidence that the boy moved quickly or "lunged" at them such that their fear of death or serious injury was objectively reasonable. With regard to the failure to present evidence challenging the officer's statements, the court stated:

> to withstand a properly supported motion for summary judgment, plaintiff must do more than merely rely on the allegations in her pleadings or identify a "metaphysical doubt" or hypothetical "plausibility" based on a lack of evidence; she is obliged to come forward with "specific facts," based on "discovery and disclosure materials on file, and any affidavits," showing that there is a genuine issue for trial.

*Id*. at 912 (citing former Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). The court concluded that "[a]t best, plaintiff has provided grounds for speculation," and reversed the denial of summary judgment for the officers. *Id*. at 916. The court did not even consider disregarding the officers' statements.

The standard for summary judgment is well established. Fed. R. Civ. P. 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party has the initial burden of establishing that there is no genuine dispute as to any material fact as to any

11

element essential to plaintiff's claim. *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009). When the moving party has carried its burden, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Id.* (citing *Matsushiata*, 475 U.S. at 586). A "party opposing summary judgment 'cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Thomas v. Columbus*, Case No. 2:14-cv-906, 2016 U.S. Dist. LEXIS 36149, *10-11 (S.D. Ohio March 21, 2016) (quoting *Street v. J.C. Bradford*, 886 F.2d 1472, 1479 (6th Cir. 1989)).

Officer Mason has met his burden with respect to all relevant issues through affidavits, depositions, and the physical, audio, visual, and photographic evidence. Beyond the hope that the Court should simply disregard or disbelieve Mason's testimony (*see* MEMO IN OPP. at p. 14, 25-26 (Doc.141 #3110, 3121-22)), Plaintiff has presented no evidence to the contrary. Thus, Plaintiff has not met her burden of establishing that Mason is not entitled to qualified immunity on Plaintiff's excessive force claim.

### B. PLAINTIFF'S DENIAL OF MEDICAL CARE CLAIM

Plaintiff has dismissed her Deliberate Indifference to a Serious Medical Need claim. MEMO IN OPP. at p. 1 (Doc.141 #3110, 3097). And for the reasons stated in Mason's motion, Mason's actions neither constituted a deliberate indifference to King's medical needs nor violated any clearly established constitutional right.

### C. PLAINTIFF'S EQUAL PROTECTION CLAIM

A review of Demetrius Braxton's deposition transcript reveals that he is a deeply disturbed person who has has lacked any concern about telling the truth about this incident from the very start. He has shown no regret for attacking innocent people, both literally and figuratively. He threatened to kill Michael Ames during the robbery. He tried to convince 14-year old A.B. to lie

12

to the police then threatened to kill her. He threatened his own aunt's life to deter her from talking to the police. He has made dozens of false statements about what occurred during the incident. His ability to observe and accurately recall anything is questionable at best since he was so high on cocaine and marijuana during the incident that he fell asleep in the back of a police cruiser. BRAXTON DEP. 96 (R.127-1 #1612). Simply put, Braxton's allegation that Mason directed a racial slur towards King and Braxton after the shooting both conflicts with his earlier recorded statement and is blatantly false. Mason denies Braxton's allegation in the strongest possible terms. No reasonable juror could find Braxton's testimony to be credible.

Furthermore, to demonstrate a violation of the Equal Protection Clause, Plaintiff must show that King was subjected to unequal treatment and selective enforcement of the law based on his race. *Farm Labor Organizing Comm. v. Ohio State Highway*, 308 F.3d 523, 533 (6th Cir. 2002); *Stemler v. City of Florence*, 126 F.3d 856, 873 (6th Cir. 1997). Plaintiff must demonstrate that Mason's use of deadly force to seize King (1) had a discriminatory effect; and (2) was motivated by a discriminatory purpose. *Wayte v. United States*, 470 U.S. 598, 608 (1985); *Farm Labor*, 308 F.3d at 533-34; *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000). Plaintiff cannot produce any evidence showing that Mason treated similarly situated individuals of another race differently. That distinguishes this case from *Harris v. City of Circleville*, 583 F.3d 356 (6th Cir. 2009). In *Harris*, the Sixth Circuit affirmed a denial of qualified immunity when it found that the plaintiff (who was African-American) presented sufficient evidence from which a reasonable jury could find that, (1) because of a racial animus, (2) the defendants engaged in an excessive use of force and were deliberately indifferent to the plaintiff's serious medical needs. *Id*. at 369-370. The evidence in *Harris* (for purposes of summary judgment) showed the following: (1) only 2-5 % of detainees at the Circleville Jail were African-American; (2) officers had never before administered

13

peroneal strikes to a handcuffed detainee; (3) the defendant officer could not recall any previous instance where a handcuffed detainee was struck to obtain compliance with a verbal instruction; and (4) after the plaintiff was dragged back into the cell and was lying motionless on the floor, one of the officers came into the cell and told him to get up. When the plaintiff told him he couldn't move, the officer said "Yes, you can." He then kicked the plaintiff in the ribs and said "Looks like we got us a broke nigger here." It was determined that based on this evidence, a reasonable jury could infer that the plaintiff was treated more harshly than other detainees solely because he was African-American. *Harris v. City of Circleville*, 2008 U.S. Dist. LEXIS 4610.

In the case at hand, Plaintiff's equal protection claim is based solely on Braxton's allegation that Mason used a racial epithet after the shooting. Given the existence of probable cause to believe that King posed a threat of serious physical harm and the lack of any evidence of selective enforcement, Braxton's allegation, standing alone, is insufficient to establish an equal protection violation. And regarding qualified immunity, it was not clearly established law that an officer's use of a racial epithet after an objectively reasonable use of force amounts to an equal protection violation where there is no evidence of the decedent being treated more harshly than similarly situated suspects. Thus, Officer Mason is entitled to qualified immunity and summary judgment for Plaintiff's equal protection claim.

## II. PLAINTIFF'S STATE LAW WRONGFUL DEATH CLAIM

For all of the reasons stated above, Officer Mason acted lawfully and reasonably during the incident. Thus, Plaintiff's state-law wrongful death claim fails because King's death was not caused by any wrongful act, neglect, or default which would have entitled King to maintain an action and recover damages under O.R.C. 2125.01.

Likewise, Plaintiff's wrongful death claim is barred by O.R.C. § 2307.60(B)(2). O.R.C. § 2307.60(B)(4) states:

14

> Divisions (B)(1) to (3) of this section do not apply to civil claims based upon alleged intentionally tortious conduct…For purposes of division (B)(4) of this section, a person's act of self-defense, [or] defense of another…does not constitute intentionally tortious conduct.

Ohio's wrongful death statute allows for recovery in a wider set of circumstances than intentionally tortious conduct ("any wrongful act, neglect, or default"). The statute of limitations for a wrongful death action is two years. O.R.C. 2125.02(D)(1). In this case, appellant filed her complaint exactly two years after the date of the incident. Plaintiff has asserted no intentional torts, and the statute of limitations for an intentional tort, such as assault and battery, is one year. O.R.C. 2305.111. Furthermore, Division (B)(4) specifically notes that a person's act of self-defense or defense of another does not constitute intentionally tortious conduct. As stated above, Officer Mason used deadly force to defend his own life and the lives of others.

Finally, statutory immunity shields Officer Mason from Plaintiff's state-law wrongful death claim for the same reasons qualified immunity shields him from the undue-force claim. The same facts that support the reasonableness of Mason's conduct also support the absence of malice, bad faith, wantonness, or recklessness under O.R.C. § 2744.03(A)(6)(b).

For all of the foregoing reasons, Officer Mason is entitled to summary judgment on Plaintiff's state-law wrongful death claim.

### III. CONCLUSION

For the reasons stated above, Defendant Bryan Mason respectfully moves this Court for summary judgment on all remaining claims asserted against him in this action and for a final judgment entry in his favor.

          Respectfully submitted,

          /s/ Westley M. Phillips
          Westley M. Phillips (0077728)
          Assistant City Attorney
          City of Columbus, Department of Law
          77 N. Front St., Columbus, OH 43215
          (614) 645-7385 / (614) 645-6949 (fax)
          wmphillips@columbus.gov
          Attorney for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that, on **April 5, 2021**, I electronically filed the foregoing with the Clerk of this Court by using the Court's CM/ECF System. Copies will be served upon counsel of record by, and may be obtained through, the Court's CM/ECF System:

          /s/ Westley M. Phillips
          Westley M. Phillips (0077728)