# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| DEARREA KING,<br><br>        Plaintiff,<br><br>v.<br><br>CITY OF COLUMBUS, OHIO, et al.,<br><br>        Defendants. | Case No. 2:18-cv-1060<br><br>Judge Edmund A. Sargus, Jr.<br><br>Magistrate Judge<br>Elizabeth Preston Deavers<br><br>**DEFENDANTS' MOTION TO EXCLUDE OR LIMIT THE TESTIMONY OF PLAINTIFF'S EXPERT, MELVIN L. TUCKER** |

Defendant Bryan Mason moves this Court for an order excluding or limiting the testimony at trial of Plaintiff's designated police procedures expert witness, Melvin L. Tucker. A memorandum in support of this motion is attached, and supporting exhibits have been filed separately.

                                        Respectfully submitted,

                                        /s/ Westley M. Phillips
                                        Westley M. Phillips (0077728) – LEAD
                                        Sheena D. Rosenberg (0088137)
                                        Alana Valle Tanoury (0092265)
                                        *Assistant City Attorneys*
                                        CITY OF COLUMBUS, DEPARTMENT OF LAW
                                        ZACH KLEIN, CITY ATTORNEY
                                        77 North Front Street, Columbus, Ohio 43215
                                        (614) 645-6945 / (614) 645-6949 (fax)
                                        wmphillips@columbus.gov
                                        sdrosenberg@columbus.gov
                                        avtanoury@columbus.gov
                                        *Attorneys for Defendant Bryan C. Mason*

## MEMORANDUM IN SUPPORT

### I. INTRODUCTION

This civil action arises out of the September 14, 2016 police-involved shooting of Tyre King by Columbus Police Officer Bryan Mason. *See* COMPLAINT (Doc #2). On August 3, 2021, the Court issued an order granting the City of Columbus' motion for summary judgment, thereby dismissing all of Plaintiff's claims against the City. *See* OPINION AND ORDER (Doc #: 150 ## 4843-65). The only claims remaining to be tried are: (1) Plaintiff's Fourth Amendment excessive force claim against Bryan Mason; (2) Plaintiff's Equal Protection claim against Mason; and (3) Plaintiff's Ohio law wrongful death claim against Mason.

Plaintiff's designated police procedures expert witness, Melvin L. Tucker ("Tucker") has submitted an expert report stating the five opinions discussed below. TUCKER DEP. (Doc #: 128-1 ## 1915-22); TUCKER AFF. (Doc #: 142-1 ## 4719-53). Those five opinions are the subject of this motion to exclude.

### II. LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence governs the use of expert testimony, providing:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

This rule, as amended in 2000, reflects the Supreme Court's decisions in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999). Fed. R. Evid. 702 advisory

committee's notes, 2000 amend. ("In *Daubert* the Court charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony, and the Court in *Kumho* clarified that this gatekeeper function applies to all expert testimony, not just testimony based in science."). Courts have broad discretion to determine whether to admit or exclude expert testimony. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528 (6th Cir. 2008). The burden is on the party proffering the expert report and testimony to demonstrate by a preponderance of proof that the opinions of their experts are admissible. *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001).

### III. LAW AND ARGUMENT

Tucker's five opinions are inadmissible for the following reasons.

#### A. TUCKER'S FIRST OPINION

Tucker's first opinion reads as follows:

> Accepting Officer Bryan Mason's account as true, his use of deadly force against Tyre King, a 13 year old black male, on September 14, 2016 was unnecessary and a greater level of force than other officers would have used in 2016 because Officer Mason had cover and concealment readily available to him and the opportunity to take that cover and concealment instead of resorting to deadly force. Officer Mason ignored the "option" of cover and concealment available to him and shot Tyre King.
>
> *****
>
> Law enforcement officers have been taught for the past 40 years that when engaging a subject, they should seek a position of concealment and cover, if possible, and communicate with the subject until they can clarify the circumstances confronting them. This concept has been referred to in the law enforcement profession for the past 40 years as the 3 C's of all tactical situations.
>
> *****
>
> In the seven-year period before the shooting death of Tyre King on September 14, 2016 Mason had been involved in 47 reports involving use of force and 25 of the use of force incidents resulted

2

> in civilians requiring medical attention (Mason deposition page 27, lines 9-21).
>
> During the time period 2006-2016 Mason had been involved in four cases involving deadly force (Mason deposition page 39, line 20).
>
> *****
>
> To have not taken advantage of the option of cover and concealment to avoid the use of deadly force when Mason knew that King was a black male "kid" ignored the recommended tactics for this type of situation and suggests that Mason would choose deadly force as a first option and not a last resort. In fact, when asked if there were any incidents that he could recall in his career where he felt it could have been reasonable to use deadly force, but he chose a lesser force option, Mason answered "No" (Mason deposition page 41, line 21).

TUCKER AFF. (Doc #: 142-1 ## 4723-25).

During his deposition, Tucker confirmed that he opines that the shooting was unreasonable because "[i]t wasn't necessary for [Mason] to shoot King because [Mason] was so close to the car right there he could have taken concealment and cover and then communicated with King. If King came out and pointed a toy gun at him or any kind of gun or whatever, he could have communicated with him and said, drop it, you know, avoided the shooting…" TUCKER DEP. 109 (R.128-1 #1917). According to Tucker,

> A. Last resort. Deadly force should be a last resort, not a first resort; not the first option chosen. Now, that doesn't mean that sometimes there's not a choice. And I supported that and testified on behalf of officers who have used deadly force when it was justified.
>
> Q. So in this particular case, deadly force was not the only resort— or the only available option to Officer Mason because he had the option of cover and concealment, correct?
>
> A. Right.
>
> Q. And that cover and concealment was behind the car?
>
> A. Right.

TUCKER DEP. 109-10 (R.128-1 #1917).

3

### 1. Tucker's Cover and Communication Theory

As demonstrated above, Tucker's first opinion is that Mason ignored Tucker's recommended tactics for this type of situation by not taking concealment and cover and communicating with King. According to Tucker, if Mason had not ignored Tucker's recommended tactics then "[i]f King came out and pointed a toy gun at him or any kind of gun or whatever, he could have communicated with him and said, drop it, you know, avoided the shooting…"

"A claim that the government used excessive force during the course of a seizure is analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Chappell v. City of Cleveland*, 585 F.3d 901, 908 (6th Cir. 2009) (citing *Graham v. Connor*, 490 U.S. 386, 388, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). In applying the objective reasonableness standard, the United States Court of Appeals for the Sixth Circuit has adopted a "segmented analysis." *Livermore ex rel Rohm v. Lubelan*, 476 F.3d 397, 406 (6th Cir. 2007). Under this approach, a court must consider the totality of the circumstances facing a police officer at the time he made his split-second judgment immediately prior to using deadly force." *Chappell*, 585 F.3d at 909. "The relevant time for the purposes of this inquiry is the moment immediately preceding the shooting." *Bouggess v. Mattingly*, 482 F.3d 886, 890 (6th Cir. 2007). In other words, "it is the reasonableness of the 'seizure' that is the issue, not the reasonableness of the [officers'] conduct in time segments leading up to the seizure." *Chappell*, 585 at 909 (emphasis added).

Based on the relevant legal standard, the Sixth Circuit has specifically rejected Tucker's "cover and communication" theory, finding it to be irrelevant and inadmissible in a police-involved shooting case. In *Goodwin v. Richland Cnty.*, 832 F. App'x 354 (6th Cir. 2020), a police officer entered the home of a suicidal man who was holding what appeared to be a gun under his shirt while refusing commands to show his hands or drop his "weapon." The officer shot the man who was found to be unarmed. The district court excluded Tucker's testimony criticizing the

4

officers' decision to confront the decedent in his bedroom rather than communicate with him from a position of cover. In affirming the district court's decision, the Sixth Circuit ruled that Tucker's proffered testimony was inadmissible because it was irrelevant to the sole issue before the jury: whether, at the moment that the officer shot the decedent, his use of deadly force was objectively reasonable. According to the Sixth Circuit, even assuming that Tucker's theory was true, it may not be used to determine whether the later use of force was reasonable. *Goodwin*, 832 Fed. Appx. at 358 citing *Cnty. of Los Angeles v. Mendez*, 137 S. Ct. 1539, 1547, 198 L. Ed. 2d 52 (2017); *See Livermore ex rel. Rohm, v. Lubelan*, 476 F.3d at 406.

A plaintiff "cannot establish a Fourth Amendment violation based merely on bad tactics that result in a deadly confrontation that could have been avoided." *Rucinski v. Cnty. of Oakland*, 655 Fed. Appx. 338, 343 6th Cir. 2016) (quoting *San Francisco v. Sheehan*, 135 S. Ct. 1765, 1777 (2015)). Rather, courts must consider the officer's reasonableness under the circumstances he faced at the time he decided to use force. *See Livermore ex rel. Rohm*, 476 F.3d at 406 (describing the so-called "segmented analysis" this circuit uses to analyze use-of-force claims). Courts may not scrutinize whether it was reasonable for an officer "to create the circumstances." *Id*. Even a reckless approach to the scene will not necessarily render a later use-of-force decision unreasonable. *See Chappell*, 585 F.3d at 915-16; *Thomas v. City of Columbus*, 854 F.3d 361, 365 (6th Cir. 2017). And Tucker's avoidable-equals-unreasonable standard has no support from any legal authority and directly contradicts the long-held standard against judging an officer's conduct with safe and leisurely hindsight. See *Graham*, 490 U.S. at 396; *Mullins v. Cyranek*, 805 F.3d 760, 766 (6th Cir. 2015); *Dickerson v. McClellan*, 101 F.3d 1151, 1163 (6th Cir. 1996); *Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992).

In this case, the issue before the jury is whether, at the moment Mason shot King, his use of deadly force was objectively reasonable. The issue is not whether Mason could have avoided the deadly confrontation by employing Tucker's recommended tactic of taking concealment and cover so he could then communicate with King "[i]f King came out and pointed a toy gun at him or any kind of gun or whatever." Tucker's proffered testimony is irrelevant, confusing, and unduly prejudicial. As both the district court and the Sixth Circuit determined in *Goodwin*, Tucker's concealment and cover opinion must be excluded.

### 2. Objective Reasonableness Standard Not Last Resort Standard

Tucker's first opinion also suggests the incorrect legal standard to the jury. An officer's use of deadly force is objectively reasonable "'where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or others.' Thus, if the officer had probable cause to believe the suspect posed a serious threat, their use of deadly force was constitutionally permissible." *Pollard v. City of Columbus, Ohio*, 780 F.3d 395, 403 (6th Cir. 2015) (quoting *Garner*, 471 U.S. at 11). And where an officer's use of "deadly force is ... justified under the Constitution, there is no constitutional duty to use non-deadly alternatives first." *Plakas v. Drinski*, 19 F.3d 1143, 1148 (7th Cir. 1994). The Fourth Amendment does not require officers "to use the best technique available as long as their method is reasonable under the circumstances." *Dickerson*, 101 F3d at 1160.

This is not a case in which Mason is arguing that he used deadly force just to capture a fleeing felon. Rather, this is a case in which Mason is arguing that he had probable cause to believe that King posed a serious threat based on the totality of the circumstances that he faced at the moment he used deadly force.[1] The rule cited in *Carter v. Chattanooga*, 850 F.2d 1119, 1122 (6th

---

[1] Of course, one of the many factors comprising the totality of the circumstances was that King (according to the

6

Cir. 1988)—i.e., that deadly force is "permissible only if used as a last resort to prevent escape of a suspect"—is not applicable where, as here, the issue is whether or not the officer fired his weapon to protect against an immediate threat to his safety. *See Rucinski v. County of Oakland*, 2015 U.S. Dist. LEXIS 80813, *18, 2015 WL 3874482. Thus, Tucker's suggested "last resort" legal standard is misplaced in this case and should not be presented to the jury. Furthermore, Tucker's attempt to provide any legal standard (and certainly an incorrectly stated legal standard) invades the province of the court to determine the applicable law. *See Torres v. County of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985). This reoccurring issue is discussed in more detail in the section analyzing Tucker's second opinion.

### 3. Character Evidence

Tucker's first opinion also makes reference to other uses of force that occurred during Mason's career. In addition to being immaterial, confusing, and unduly prejudicial, this evidence is not relevant to the issue of whether the force used during the incident was excessive. Fed. R. Evid. 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Accordingly, these other acts are not admissible to prove the character of Mason to establish that he used excessive force during this incident. Rule 404(b) also provides for the admissibility of other "acts" to show "proof of motive, opportunity, knowledge, identity, or absence of mistake or accident…" However, other incidents, if any exist, are not probative of any alleged motive to use excessive force against Tyre King. The remaining purposes listed (opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident) are not at issue.

---

defense) resisted arrest and attempted to evade arrest by flight.

7

### B. TUCKER'S SECOND OPINION

Tucker's second opinion reads as follows:

> Acknowledging that there are disputed accounts about the events leading up to the shooting of Tyre King, Columbus Police department (CPD) Officer Bryan Mason did not have justification to use deadly force against Tyre King and his use of deadly force was a greater level of force than other officers would have used under the same or similar circumstances in 2016 because King did not place Mason or anybody else in immediate jeopardy of serious bodily harm or death.
>
> The use of deadly force, in the absence of an actual and immediate threat of death or serious physical harm to anyone, violated the training officers receive on the use of deadly force and the Columbus Police Department policy guidance on the use of deadly force and suggests that Officer Mason was either plainly incompetent (not aware of the standards and his own department's policy for the use of deadly force) or he was aware of the standards but ignored them.
>
> Officers are instructed in use of force training programs that the reasonableness of an officer's threat assessment and the reasonableness of his/her response is analyzed by asking the "objective reasonableness" questions set out in Graham v. Connor: (1) would other reasonable officers on the date of the incident, considering the same facts and circumstances, have perceived the threat the same way; and (2) would other reasonable officers, on the same date of the incident, have responded in the same manner.
>
> An officer's threat assessment must be considered in light of the "totality of the circumstances" known to the officer before the reasonableness of the officer's response (threat mitigation) can be determined.

*Id.* (Doc #: 142-1 ## 4725).

Tucker's second opinion pertains exclusively to legal rather than factual issues. It is well-settled that testimony which offers a legal conclusion "'invades the province of the court to determine the applicable law …." *Torres*, 758 F.2d at 150, quoting *F.A.A. v. Landy*, 705 F.2d 624, 632 (2nd Cir. 1983). Tucker may not instruct the jury on the applicable legal standard. And his conclusion regarding the reasonableness of Mason's use of force is an inadmissible legal

8

conclusion. The Sixth Circuit has held that "[b]ecause testimony about whether [an officer] used reasonable force is a legal conclusion and may confuse the trier of fact, the district court is within its sound discretion to exclude it," *Hubbard v. Gross*, 199 F. App'x 433, 443 (6th Cir. 2006). Furthermore, any attempt to tell the jury which witnesses to believe during his explanation of his legal analysis will invade the province of the jury to decide issues of credibility, relevancy, and weight. See *Zak v. Facebook, Inc.*, 2021 U.S. Dist. LEXIS 189180, *25, 2021 WL 4472784. For all of these reasons, Tucker's second opinion invades the province of the Court and the jury and must be excluded.

    C.    **TUCKER'S THIRD, FOURTH, AND FIFTH OPINIONS**

Tucker's third, fourth, and fifth opinions relate solely to the dismissed municipal liability claims. They read as follows:

> **Tucker's Third Opinion**
>
> The failure of the Columbus Police Department to properly supervise their officers by having an effective system in place to identify officers whose behavior might be problematic and to intervene before they harmed a citizen demonstrated a deliberate indifference to the safety of citizens that their officers would come into contact with in the performance of their police duties and was causally connected to Officer Bryan Mason's unnecessary use of deadly force on September 14, 2016 and the death of Tyre King.
> *****
>
> Had the Columbus Police Department put into place an effective early warning and intervention system, it is likely Mason's propensity to use force would have been identified and intervention methods could have been taken to prevent incidents, such as the shooting death of Tyre King.

*Id.* (Doc #: 142-1 ## 4725-26).

> **Tucker's Fourth Opinion**
>
> The Columbus Police Department Firearms/Police-Involved Death Review Board sent a memorandum to Columbus Chief of Police Kimberly Jacobs concluding that the use of deadly force against

9

>Tyre King by Officer Mason was intentional and not a violation of policy. The Columbus Police Department chain of command affirmed that finding. The ratification of the shooting of Tyre King by the Columbus Police Department (CPD) chain of command sent a message to all department officers that officers will not be held accountable when they use more force than is necessary and when they violate Department policy.
>
>*****
>
>These events are part of a pattern of ratification that sends a message to all department officers that CPD officers will not be held accountable when they use more force than is necessary or violate department policy and that the custom and practice of the CPD is to ignore the law and law enforcement standards for the use of deadly force. This pattern is evident in the decisions by top management and review mechanisms within the CPD, and shows a failure by the CPD to meaningfully investigate and punish unjustified deadly force events. The CPD's pattern of ratification of unjustified deadly force and excessive force events was causally connected to Mason's unnecessary use of deadly force against and the death of Tyre King.

*Id.* (Doc #: 142-1 ## 4726-27) (emphasis added).

> ### Tucker's Fifth Opinion
>
> The CPD's pattern of ratification of events involving deadly force or other force that is greater than necessary, discussed in Opinion No. 3, combined with the CPD's failure to properly supervise officers by having an effective system in place to identify officers whose behavior might be problematic and to intervene before they harmed a citizen discussed in Opinion No. 2, constitutes an unwritten, affirmative policy by the CPD. This policy reflects the CPD's formal rule or understanding among members of the department that police-involved shootings will almost always be found "within policy" by the CPD even if those shootings are unjustified or constitute excessive force.
>
> This affirmative policy was causally connected to Mason's unnecessary use of deadly force against and the death of Tyre King.

*Id.* (Doc #: 142-1 # 4727).

10

### 1. No Municipal Liability Claims Remain

With respect to the second element of a federal municipal-liability claim, the Sixth Circuit has long recognized at least four avenues for establishing an improper municipal policy: "The plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Thomas v. Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). Tucker's third, fourth, and fifth opinions essentially track this language and relate solely to these issues. Any evidence pertaining to Plaintiff's dismissed municipal liability claims is now irrelevant, unduly prejudicial, and confusing to the jury. Tucker should be precluded from offering his third, fourth, or fifth opinions.

### 2. Character Evidence

Tucker's third opinion also makes reference to Mason's alleged "propensity to use force." As stated above, this portion of Tucker's opinion is inadmissible pursuant to Fed. R. Evid. 404(b).

## IV. CONCLUSION

For the reasons stated above, Defendant Bryan Mason, respectfully moves this Court for an order excluding or limiting the testimony at trial of Plaintiff's designated police procedures expert witness, Melvin L. Tucker.

Respectfully submitted,

/s/ Westley M. Phillips
Westley M. Phillips (0077728) – LEAD
Sheena D. Rosenberg (0088137)
Alana Valle Tanoury (0092265)
*Assistant City Attorneys*
CITY OF COLUMBUS, DEPARTMENT OF LAW
ZACH KLEIN, CITY ATTORNEY
77 North Front Street, Columbus, Ohio 43215
(614) 645-6945 / (614) 645-6949 (fax)
wmphillips@columbus.gov
sdrosenberg@columbus.gov
avtanoury@columbus.gov
*Attorneys for Defendant Bryan C. Mason*

## CERTIFICATE OF SERVICE

I hereby certify that, on **October 7, 2022**, I electronically filed the foregoing Notice of Appearance with the Clerk of this Court by using the Court's CM/ECF System. Copies will be served upon counsel of record by, and may be obtained through, the Court's CM/ECF System.

/s/ Westley M. Phillips
Westley M. Phillips  (0077728)