UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DEARREA KING,

        **Plaintiffs,**

                                        **Case No. 2:18-cv-1060**
       **v.**                          **Judge Edmund A. Sargus, Jr.**
                                     **Magistrate Judge Elizabeth P. Deavers**

BRYAN MASON,

        **Defendant.**

## OPINION AND ORDER

     This matter arises on Defendant Bryan C. Mason's Motion in Limine (ECF No. 193) and Plaintiff Dearrea King's Motion in Limine (ECF No. 196).  Also considered is Defendant's Motion to Exclude or Limit the Testimony of Plaintiff's Expert Jeremy J. Bauer (ECF No. 178) and Plaintiff's Supplemental Motion in Limine (ECF No. 218).

     For the reasons stated herein, the Court **GRANTS** in part and **DENIES** in part and **HOLDS IN ABEYANCE** in part Defendant's Motion in Limine.  (ECF No. 193).  The Court also **GRANTS** in part, **DENIES** in part, and **HOLDS IN ABEYANCE** in part Plaintiff's Motion in Limine.  (ECF No. 196).  Further, the Court **GRANTS** in part and **DENIES** in part Defendant's Motion to Exclude or Limit the Testimony of Plaintiff's Expert Jeremy J. Bauer.  (ECF No. 178).  Finally, the Court **DENIES** in part and **DEFERS** until trial in part Plaintiff's Supplemental Motion in Limine.  (ECF No. 218).

### A.  Procedural Background

     Plaintiff Dearrea King, the Administrator of the Estate of Tyre King, brought a complaint against Bryan C. Mason, amongst others, on September 14, 2018.  (ECF No. 1).  Defendant

Mason moved for summary judgment on February 18, 2021.  After briefing, Defendant's motion

was denied. (ECF No. 150).  This Court set a trial date for January 17, 2023.  (ECF No. 166).

Defendant Bryan Mason filed his Motion in Limine December 19, 2022.  (ECF No. 193).

Specifically, Defendant seeks to exclude "evidence, testimony, statements, and/or arguments"

related to twelve topics.  (ECF No. 193, page 1).  These topics are "(1) Tyre King's BB gun; (2)

Plaintiff's cover and communication theory; (3) King's subjective intent; (4) any denial of

medical care argument; (5) Francisco Diaz's opinions that are not included in his report; (6)

Plaintiff's dismissed municipal liability claims; (7) Equal Protection issues regarding the City of

Columbus; (8) other incidents involving Mason; (9) Mason's post-incident reassignment; (10)

misdemeanor theft admissions made during Mason's 2006 hiring process; (11) Mason's hiring

process polygraph; and (12) Robert Reffitt's lawsuit."  (*Id.*).  Plaintiff responded on December

27, 2022.  (ECF No. 204).  Plaintiff's Response also makes argument related to Defendant's

Motion to Exclude or Limit the Testimony of Plaintiff's Expert Jeremy J. Bauer.  (ECF No. 178).

Defendant filed that particular motion earlier, on November 28, 2022.

Plaintiff Dearrea King filed her Motion in Limine December 19, 2022.  (ECF No. 196).

Specifically, Plaintiff seeks to exclude "Expert Testimony and Reports of Thomas Paige and

Matthew Noedel," certain "non-expert opinion testimony," "Evidence of Past Crimes, Wrongs,

or Bad Acts of Witnesses," and "Other Irrelevant Evidence."  (ECF No. 196, Pages 1, 6, 8).  This

other irrelevant evidence includes "Facts Not Known to Defendant Mason at the Time of the

Shooting." "Police Awards and Commendations," "Dismissed Claims," and "Financial

Liability."  (*Id.*, Pages 8, 9, 10).  Defendant responded on December 27, 2022.  (ECF No. 203).

**B.  Standard**

Preliminary questions relating to the admissibility of evidence are to first be raised with

the Court via a motion *in limine*.  *Se*e Fed. R. Evid. 104(a); *Compton v. Kolvoord,* No. 92-3214, 1993 WL 141063, at *2 (6th Cir. Apr. 30, 1993).  Although neither the Federal Rules of Evidence nor the Federal Rules of Civil Procedure explicitly authorize a court to rule on an evidentiary motion *in limine*, the United States Supreme Court has noted that the practice of such motions "has developed pursuant to the district court's inherent authority to manage the course of trials."  *In re. E.I. Du Pont De Nemours & Co. C-8 Personal Injury Litigation*, No. 2:13-CV-1103, 2016 WL 3064124, at *2 (S.D. Ohio May 30, 2016) (quoting *Luce v. U.S.*, 469 U.S. 38, 41 n.4 (1984)).  The purpose of a motion *in limine* is to allow a court to rule on issues pertaining to evidence in advance of trial, in order to avoid delay and ensure an evenhanded and expeditious trial. *Id.*; see also *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F.Supp.2d 844, 846 (N.D. Ohio 2004).

To obtain the exclusion of evidence under a motion *in limine*, a party must prove that the evidence is clearly inadmissible on all potential grounds. *Id.* "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Id.* (quoting *Ind. Ins. Co.* at 846).

Evidence is not admissible if it is irrelevant. *See* Fed. R. Evid. 401, 402. In order to establish the relevance of a particular matter, the evidence must affect the "probability of the existence of any fact that is of consequence to the determination of the action." Fed. R. Evid. 401 Further, even potentially relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403.

District courts also frequently grant motions *in limine* to prevent the introduction of improper character evidence at trial. *See* Fed. R. Evid. 402, 403, 404, 608, and 609; *Allstate Ins.*

*Co. v. Shuler*, No. 94-5329, 1995 WL 258139, *4 (6th Cir. May 2, 1995) (affirming decision of district court granting motion *in limine* excluding character evidence until character attacked); *Randolph v. Ohio, Dept. of Youth Servs*., No. C2- 01-1253, 2007 WL 2852356, *2 (S.D. Ohio Oct. 2, 2007) (granting motion *in limine* excluding improper character evidence); *Stokes v. Xerox Corp*., No. 05-71683, 2008 WL 275672, *8-9 (E.D. Mich. Jan. 28, 2008) (granting motions *in limine* excluding improper character evidence); *U.S. v. Stout*, 509 F.3d 796, 797 (6th Cir. 2007) (affirming grant of motion *in limine* suppressing prior bad acts evidence); *Ross v. American Red Cross*, No. 2:09-cv- 00905-GLF-MRA, 2012 WL 2004810, at *4 (S.D. Ohio June 5, 2012) (granting motion *in limine* excluding improper character evidence).

Motions in limine are also frequently granted in regard to expert witnesses.  Federal Rule of Evidence 702 provides: "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:"

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed R. Evid 702.

## C. Defendant's Motion in Limine Analysis

As a threshold matter, Defendant's Motion in Limine is **GRANTED** as to two topics; the "(10) misdemeanor theft admissions made during Mason's 2006 hiring process" and "(11) Mason's hiring process polygraph."  (ECF No. 193, Page 1).  Thus, the ten remaining contested

topics are: "(1) Tyre King's BB gun; (2) Plaintiff's cover and communication theory; (3) King's subjective intent; (4) any denial of medical care argument; (5) Francisco Diaz's opinions that are not included in his report; (6) Plaintiff's dismissed municipal liability claims; (7) Equal Protection issues regarding the City of Columbus; (8) other incidents involving Mason; (9) Mason's post-incident reassignment…and (12) Robert Reffitt's lawsuit." (*Id*.).

### 1. Tyre King's BB gun

Defendant seeks to preclude Plaintiff "from introducing evidence, testimony, and argument that the gun possessed by Tyre King during the September 14, 2016 shooting incident was a 'toy gun,' 'BB gun,' 'inoperable,' 'air pistol,' or that it was not a 'real' firearm." (ECF No. 193, Page 2). Quoting this Court's prior order, Defendant argues "[s]uch evidence must be excluded because 'on the issue of reasonableness it is of no moment that King was carrying a BB gun rather than a real one.'" (*Id*.) (citing ECF No. 150). Plaintiff, while conceding to the "exclusion of the phrase 'toy gun,'" opposes the rest of Defendant's argument. (ECF No. 204, Page 2). Plaintiff points out that, under *Graham*, "a jury must be presented with the actual facts of the encounter to determine what a reasonable officer would have perceived." (*Id.*). Given that the gun in question was in fact not a real firearm, Plaintiff contends Defendant's "argument would require referring to the BB gun as something it was not – a real handgun." (*Id*.).

The Court agrees with Plaintiff.  The "Graham analysis is based on what a reasonable officer would have perceived at the time of the at-issue shooting." (ECF No. 204, Page 2). Defendant is correct that, at the time of the shooting, Mason had been informed that an individual (King) was armed, not that they were armed with a BB gun. (*Id*.). However, it is an issue of fact whether Mason had a chance to perceive BB gun before he shot King. Further, the item in question was, in fact, a BB gun. Referring to it otherwise would require lying to the jury,

something which the Court disfavors.   This is particularly true given that the gun in question

will be seen by the jurors, making any dishonesty readily apparent.  Finally, the Court is not

bound by the language of its earlier ruling, in which the Court held "on the issue of

reasonableness it is of no moment that King was carrying a BB gun rather than a real one."

While it may not matter to the issue of reasonableness at summary judgment, the true identity of

the item in question is relevant to the questions facing the Court and the jury now.  As such,

Defendant's motion in limine is **DENIED** as to the topic of Tyre King's BB gun.  The parties

may refer to the item as a BB gun or a gun, but not as a "toy gun."

### 2.  Cover and Communicate

Defendant asks the Court to exclude evidence and argument related to "Plaintiff's cover

and communication theory."  (ECF No. 193, Page 4).  Defendant argues that such evidence and

argument would be "irrelevant, confusing, and unduly prejudicial."  (*Id*.).   Defendant points out

that "the issue before the jury is whether, at the moment that Mason shot King, his use of deadly

force was objectively reasonable."  (*Id*.).  Given this standard, argument "that had Mason taken

cover when he first encountered King, then he wouldn't have had to use deadly force once King

was pulling the gun" would be irrelevant to the issue at hand.  (*Id*.)  Plaintiff disagrees.  She

argues "[e]vidence that Defendant Mason could have, and should have, taken concealment and

cover, or communicated a warning, instead of using deadly force, is relevant to the question of

the reasonableness of Defendant Mason's use of force."  (ECF No. 204, Page 2).  Plaintiff also

points out that "'[t]he standard for relevancy is extremely liberal.'" (*Id*.) (citing *United States v.

Whittington*, 455 F.3d 736, 738-739 (6th Cir. 2006) (internal quotations omitted)).  She also

makes the case that the theory "is also relevant to Plaintiff's state law claim, which unlike the

Fourth Amendment standard, does not apply a segmenting analysis."  (ECF No. 204, Page 3).

The Court agrees with Defendant in part.  Courts in Section 1983 claims perform a segmenting analysis.  *See Livermore ex rel Rohm v. Lubelan*, 476 F.3d 397, 406 (6th Cir. 2007).  The relevant inquiry in such an analysis is "whether the force used to effect [the seizure] was reasonable in the totality of the circumstances, not whether it was reasonable for the police to create the circumstances."  *Id.* (quoting *Carter v. Buscher*, 973 F.2d 1328, 1332 (7th Cir. 1992)).  As such, the cover and communicate theory is irrelevant to Plaintiff's Section 1983 claim and could potentially prejudice the jury.

However, the analysis in Plaintiff's state law claim is different.  As Plaintiff points out, the courts in Ohio do not use the same segmenting analysis in this type of claim as federal courts do in Section 1983 excessive use of force claims.  *Moore v. City of Cleveland*, 87 N.E.3d 858 (Ohio Ct. App. 2017).  The result under the analysis used by Ohio's courts, however, is identical here.  The Tenth District Ohio Court of Appeals found "[t]he 'relevant inquiry before the court [was] whether [Officer Mason], from his own perspective, reasonably had probable cause to believe that he [was] at imminent risk' of serious physical harm when he fired his weapon." *Hayes v. Columbus*, 2014-Ohio-2076, 2014 WL 2048176, at *11 (citing *Kendzierski v. Carney*, 2005-Ohio-6735 at ¶ 29 (Ct. App.)).  This analysis, like the federal Section 1983 analysis, does not consider whether an officer had the opportunity to take cover and communicate *before* he engaged with a subject.  The only relevant question is, at the moment he used force, did the officer have probable cause to believe he was at imminent risk of serious physical harm.  Under this inquiry, Tucker's cover and communicate theory is irrelevant.  The Court sees no reason to ignore the Tenth District of Ohio Court of Appeals' interpretation of state law.  Defendant's motion in limine is **GRANTED.**  The Court instructs Plaintiff to limit her introduction of evidence on the cover and communicate theory accordingly.

### 3.  Subjective Intent

Defendant seeks to prohibit Plaintiff from introducing "[e]vidence and argument regarding King's subjective intent" as such evidence would be "inappropriate, irrelevant, and unduly prejudicial."  (ECF No. 193, Page 5).  In particular, Defendant is concerned about "any speculation that King's subjective intent was to throw the gun when he pulled it out of his waistband."  (*Id.*).  Plaintiff, while conceding to a bar on "inadmissible evidence of Tyre's actual subjective intent," argues "evidence that a reasonable officer would have perceived that Tyre was throwing down the gun or running away, or did not reach for his gun, for example, based on the actions witnesses saw Tyre take, is relevant."  (ECF No. 204, Page 3).  Plaintiff contends this type of evidence "is not evidence of subjective intent, but evidence of the objective facts of the encounter."  (*Id.*).

This Court agrees with Plaintiff.  While, as Defendant points out, "the subjective intent of the victim—unavailable to the officers who must make a split-second judgment—is irrelevant to the question of whether his actions gave rise to a reasonable perception of danger," evidence, based on witness observations "that a reasonable officer would have perceived that Tyre was throwing down the gun or running away, or did not reach for his gun" is relevant to the question of whether Mason's perception of danger was reasonable. *Murray-Ruhl v. Passinault*, 246 Fed. App'x 338, 350 (6th Cir. 2007) (ECF No. 204, Page 3).  Under Rule 602 of the Federal Rules of Evidence, "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."  While Plaintiff may not speculate as to King's actual intent, Plaintiff's witnesses may of course testify as to what actions they saw him take.  This includes any observations that King "was throwing down the gun or running away, or did not reach for his gun."  (ECF No. 204, Page 3).  However, the witnesses

may not make inferences about King's intent in performing those actions. At this time, Defendant has not established that this evidence is clearly inadmissible on all potential grounds. Defendant's motion in limine is **DENIED** as to the issue of subjective intent.

### 4. Denial of Medical Care

Defendant seeks to prevent Plaintiff from making any argument related to the denial of medical care to King as "Plaintiff voluntarily dismissed her claim of deliberate indifference to a serious medical need." (ECF No. 193, Page 5). Given this dismissal, Defendant contends argument related to the denial of medical care "would be inappropriate, irrelevant, and unduly prejudicial." (*Id.*) Plaintiff, while acknowledging "no constitutional claim for the denial of medical care remains," argues that King's "need for immediate medical assistance is probative of the pain and suffering he experienced as a result of Defendant Mason's actions." (ECF No. 204, Pages 3–4). Given its probative value, Plaintiff maintains "this evidence is admissible and should not be excluded." (*Id.*, Page 4).

The Court agrees with Plaintiff. While Defendant is correct that Plaintiff has dismissed her deliberate indifference claim, he ignores the damages aspect of Plaintiff's case. Defendant has not yet shown that denial of medical care is irrelevant to the issue of damages. As Plaintiff points out, argument regarding a lack of medical care provided after Kind was shot "is probative of the pain and suffering," which will likely affect the ultimate damage award if one is given. As such, Plaintiff may make argument related to the denial of medical care. Plaintiff's witnesses may also testify as to any denial or delay of medical care they personally observed after King was shot. They may also testify as to any actions or movements made by King after he was struck. Defendant's motion in limine is **DENIED** as to the issue of denial of medical care.

### 5.  Francisco Diaz's Opinions

Defendant seeks to bar Plaintiff's expert Francisco Diaz MD FCAP from providing an opinion that is not within his expert report.  (ECF No. 193, Page 5).  The opinion in question is comes from a press release, in which Diaz stated ""[b]ased on the location and the direction of the wound paths it is more likely than not that Tyre King was in the process of running away from the shooter or shooters when he suffered all three gunshot wounds.""  (*Id*.) (citing ECF No. 193, Exhibit 1, Page 100).  Plaintiff does not contest the substance of Defendant's argument.  However, Plaintiff contends the Court should not rule on this issue, as it "is meaningless and unnecessary to rule at this point that Diaz's testimony be consistent with the Federal Rules of Civil Procedure."  (ECF No. 204, Page 4).

In the January 6, 2023 Final Pretrial Conference, Plaintiff indicated that the statement in question would not be used.  This issue is, therefore, **MOOT**.

### 6.  Dismissed Municipal Liability Claims

Defendant requests that the Court prohibit Plaintiff "from making any inquiry, comment, or argument regarding the allegations related to the dismissed Monell claims."  (ECF No. 193, Page 6).  The dismissed Monell claim involved "policies, practices, customs and/or usages" within the Columbus Police Department.  (*Id*.).  Specifically, Defendant wants to prevent Plaintiff from making any reference to or inquiries into "matters, including, but not limited to, the City's 1999 DOJ case, Matrix Consulting's review of CPD, and any CPD reform measures, including the request for the DOJ to review CPD's current policies, practices, and customs."  (*Id*.).  Defendant states "Plaintiff's exhibits P.33-38, 42-45, 48-66 fall under this category of evidence. So do Plaintiff's disclosed witnesses Kim Jacobs; Traci Shaw; Richard Bash; Kenneth Kuebler; Eric Pilya; Robert Meader; George Joseph; and Ethan Corey."  (*Id*.).  Defendant argues

the exclusion of these witnesses and evidence is warranted because the Court has already "granted judgment in the City's favor on all claims." (*Id*.). Further, Defendant contends "any implication that the City is still a defendant or that the City might indemnify Mason would be inappropriate, irrelevant, and unduly prejudicial." (*Id*.).

Plaintiff concedes "that any reference to the claims themselves, the City as a defendant, or indemnification will not be relevant." (ECF No. 204, Page 4). However, she maintains "[t]he question of the reasonableness of Defendant Mason's use of force is based on what a reasonable officer would have done, and for that reason, evidence regarding police practices, including the policies he was instructed on and the training he received, will be relevant." (*Id*.). Plaintiff is particularly concerned "because of the likelihood that Defendant Mason will attempt to rely on evidence that he acted in compliance with his training and City policies to support his argument that his actions were reasonable." (*Id*.).

The Court agrees with Defendant. While the specific polices on which Officer Mason was trained may relevant, "the City's 1999 DOJ case, Matrix Consulting's review of CPD, and any CPD reform measures, including the request for the DOJ to review CPD's current policies, practices, and customs," are not. The relevant issues of fact in this case revolve around whether Mason, at the moment he used forced, was acting reasonably. Previous investigations and reviews into use of force policies and practices are not pertinent to this inquiry. And such evidence could be greatly prejudicial to Defendant. Further, the Court has already dismissed Plaintiff's Monell claim against the City of Columbus. Defendant's motion is limine is **GRANTED** as to the Dismissed Municipal claims. Notwithstanding this Order, Plaintiff may still introduce evidence and elicit testimony regarding the specific policies on which Officer Mason was trained, as well as the policies that existed at the time of the shooting.

### 7.  Equal Protection Claim as to the City

Defendant asks the Court to preclude the parties "from discussing race discrimination, institutional racism, or other incidents outside this case involving CPD or other law enforcement, unless such matters involve Mason and are otherwise admissible." (ECF No. 193, Page 7). Defendant points out that "[m]atters of race discrimination, institutional racism, and historical and recent incidents involving law enforcement are generally not admissible against individual defendants" and, here, the "case involves the actions of Mason, not the entire Columbus Division of Police." (*Id.*).  Plaintiff responds by arguing "Defendant Mason has failed to demonstrate that all evidence regarding race discrimination, institutional racism, and historical and recent incidents involving law enforcement are clearly inadmissible for any purpose" and thus such evidence "must not be excluded" (ECF No. 204, Page 5).  Pointing to the disputed issue of whether Mason used a slur after he shot King, she contends "[e]vidence regarding the existence of race discrimination in the Columbus Division of Police makes it more probable that Defendant Mason used a slur against" King.  (*Id.*)

The Court agrees with Defendant.  The issue in dispute on Plaintiff's Equal Protection claim is whether there was "intentional discrimination against [King] because of his membership in a particular class" by Mason.  *Harris v. City of Circleville*, 583 F.3d 356, 369–70 (6th Cir. 2009).  It is only Mason's actions and intent that matter under this analysis.  Discrimination by other officers against other civilians does not make it more or less likely that Mason intended to discriminate against King.  Further, this issue here is remarkably similar to one faced by this Court in *Hood v. Bare*.  There, the court held "[m]atters of race discrimination, institutional racism, and historical and recent incidents involving law enforcement are generally not admissible against individual defendants." *Hood v. Bare*, 2021 U.S. Dist. LEXIS 207995 (S.D.

Ohio Oct. 28, 2021) citing Fed. R. Evid. 401, 403. Defendant's motion in limine is **GRANTED** as to "race discrimination, institutional racism, or other incidents outside this case involving CPD or other law enforcement, unless such matters involve Mason and are otherwise admissible." (ECF No. 193, Page 7).

### 8. Other Incidents Involving Officer Mason

Defendant seeks to preclude Plaintiff "from making any inquiry, comment, or argument pertaining to any other uses of force by Mason, or any other complaints, investigations, or incidents, other than the one at issue." (ECF No. 193, Page 7). Specifically, Defendant is concerned about references to "Mason's three previous uses of deadly force and 47 reports involving force." (*Id*.). Defendant maintains such "evidence is confusing, unduly prejudicial and irrelevant, and, if admitted, would violate Fed. R. Evid. 404(b)(1)." In sum, Defendant argues that evidence and argument regarding Officer Masons' prior uses of force would be prejudicial, irrelevant, and would constitute inadmissible character evidence. Plaintiff disagrees. She maintains that prior instances of use of force by Officer Mason fall under two Fed. R. Evid. 404(b)(1) exceptions. (ECF No. 204, Page 6). Specifically, the motive and intent exceptions. (*Id*.). Plaintiff argues "[m]otive and intent are relevant and admissible as to the Equal Protection claim and the state law claim here." (*Id*.). She posits two reasons for why evidence and argument regarding Mason's other use of force incidents should be admitted. First, "evidence of Mason's prior uses of force is relevant to the state law claim because Mason's reckless state of mind is at issue on the merits, to prove Mason is not entitled to Ohio statutory immunity, and to assessing punitive damages." (*Id*.) And second, "this evidence is relevant to refuting Mason's defense that he acted reasonably because he was following the City's policies and practices." (*Id*.)

13

The Court agrees with Defendant.  Rule 404(b)(1) of the Federal Rules of Evidence states "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  If evidence of Mason's prior uses of force is admitted, it will do exactly that.  Further, Mason's prior uses of force are not probative of his motive or intent in this case.  Mason's decision to use his weapon in the past, in entirely different factual situations, is not probative of his motive/intent here.  It is not even clear that Mason's prior uses of force were bad acts, as contemplated by Rule 404(b)(1).  Counsel for Defendant described the prior shootings by Mason in great detail during the January 6, 2023 final pretrial conference.  In that description, all the prior shootings were justified and lawful.  Plaintiff's counsel were asked if they disagreed with the defense characterization of the shootings, to which they responded in the negative.  Mason was never disciplined for any of these actions, and "[n]o civil claims were successfully prosecuted against Mason."  (ECF No. 216, Page 3).  As such, no reasonable juror could conclude that Mason's prior uses of force are relevant to the use of force at hand. *Huddleston v. United States*, 485 U.S. 681, 689 (1988).  Evidence of Mason's prior uses of force does not fit into the 404(b)(2) exceptions.

Even if the Court found that the prior uses of force did fit into one 404(b)(2) exception or another, they would still not be admissible.  The Court would exclude them as significantly more prejudicial than probative under Fed. R. Evid. 403.  Mason's prior instances of force have very little relevance to his motive and intent here.  There is no evidence in the record that Mason's previous shootings were anything other than lawful.  The prejudice to Defendant, on the other hand, would be great.  The other acts would likely overwhelm the facts at issue in this trial.  The prior shootings and use of force would focus on matters other than the facts of this case.

Further, while it appears that no court in the Sixth Circuit has directly addressed this exact issue in the civil context, courts in similar positions have excluded similar evidence, and such exclusions have been upheld. *See Helfrich v. Lakeside Park Police Dep't*, 497 F. App'x 500, 507 (6th Cir. 2012); *Simmons v. Napier*, 626 F. App'x 129, 135 (6th Cir. 2015). Defendant's motion in limine is **GRANTED** as to the other incidents involving Officer Mason.

### 9. Officer Mason's Post-Incident Reassignment

Defendant asks the Court to bar "[a]ny evidence or argument regarding Mason's reassignment" as such evidence would be "inappropriate, irrelevant, and unduly prejudicial." (ECF No. 193, Page 9). Defendant claims after "Mason received post-incident death threats…the City reassigned him from patrol into a narcotics detective assignment in an attempt to protect his safety." (*Id.*). Thus, any discussion of his post-incident reassignment would have no bearing on the case at hand. Plaintiff, however, find Mason's reassignment to be probative. She contends that Mason was reassigned for "'the protection of the community.'" (ECF No. 204, Page 7) (citing ECF No. 141, Exhibit 5, Page 153). Plaintiff finds that a reassignment for this reason "refutes any defense that he acted according to nationally accepted police practices and training, or even according to the City's practices and training." (ECF No. 204, Page 7). As such, Mason's reassignment "is probative evidence that his uses of force were contrary to the City's practices and unreasonable and that he was a danger to the community." (*Id.*).

The Court agrees with Defendant. "[T]he issue before the jury is whether, at the moment that Mason shot King, his use of deadly force was objectively reasonable." (ECF No. 193, Page 4). This question does not revolve around Chief of Police Jacobs' opinion of Mason's suitability for a patrol assignment. In addition, the Chief did not make a formal determination of wrongdoing. Mason's later reassignment is not probative of his earlier actions. Further, such

evidence could be highly prejudicial and is excludable under Rule 403. There is a real possibility the evidence Mason was reassigned could bias the jury against him.  Thus, Defendant's motion in limine is **GRANTED** as to Officer Mason's reassignment.

### 10. Robert Reffitt's Lawsuit

Defendant seeks to preclude Plaintiff from questioning lay witness Robert Reffitt about "the use-of-force case *Davis v. City of Columbus*, et al., S.D. Case No. 2:17-cv-823."  Reffitt was a defendant in that case and although he (along with the other defendants) "received a jury verdict in their favor," "a motion for a new trial was recently granted as to all defendants."  (ECF No. 193, Page 10).  Defendant argues "[a]ny evidence or argument regarding the Davis case or incident is inappropriate, irrelevant, and unduly prejudicial and must be excluded."  (*Id.*)  Plaintiff concedes "the underlying facts of the excessive force claims brought by Timothy Davis against Officer Refitt in another case are not relevant to the claims here against Defendant Mason."  (ECF No. 204, Page 7).  However, she maintains the Court should defer its ruling until a later date, because "at this stage it cannot be said that there is no admissible purpose for this evidence, including on cross-examination of [Reffitt]."  (*Id.*).

The Court agrees with Plaintiff.  Without seeing the Defendant's direct of Reffitt, the Court cannot conclude that there is no admissible purpose for the lawsuit. Thus, Defendant's motion in limine is **HELD IN ABEYANCE** as to Robert Reffitt's lawsuit.

### D.  Defendant's Motion to Exclude or Limit the Testimony of Plaintiff's Expert Jeremy J. Bauer

Defendant seeks to exclude four of Plaintiff's Expert Jeremy J. Bauer's opinions.  An analysis of the opinions is below.

### 1.  Bauer's First Opinion

The first opinion Defendant would like the Court to exclude is as follows: "Tyre's left side was facing Officer Mason when he was struck by the three bullets fired by Officer Mason. Tyre was looking away from Officer Mason when Officer Mason shot Tyre in the head." (ECF No. 149, Exhibit 19, Page 16).  Defendant argues the "second sentence of this opinion is confusing and will not help the jury understand the evidence."  (ECF No. 178, Page 2). Defendant points out that Bauer's testimony is based on the bullet evidence in Tyre's body. (*Id.*).  Defendant argues Bauer cannot testify about where Tyre' was looking when Officer Mason fired his gun, as the firing of the weapon occurred before the bullet entered Tyre.  This argument is not convincing.

The Court agrees with Plaintiff, "[t]he potential to distinguish between the moment that Mason shot and the moment that Tyre was struck does not support exclusion of the evidence, rather this kind of dispute goes to the weight of the evidence." (ECF No. 204, Page 9).  This is especially true given the speed at which bullets travel.  Further, Defendant will have a ample opportunity to bring this issue to the jury's attention on cross examination.  The Court will not exclude this testimony.

### 2.  Bauer's Second Opinion

The second opinion Defendant seeks to bar is as follows: "Tyre's wounds are inconsistent with Officer Mason's account that Tyre spun clockwise during the shooting." (ECF No. 149, Exhibit 19, Page 16).  Defendant argues this statement "must be excluded because expert testimony regarding the credibility of an eyewitness is improper."  (ECF No. 178, Page 4). While Defendant is correct that expert witnesses must not testify on the credibility of eyewitnesses, that is not what is happening here. *Hobart Corp. v. Dayton Power & Light Co.*,

S.D.Ohio No. 3:13-cv-115 (Sep. 23, 2019). As Plaintiff points out, "Bauer never opines as to whether or not Mason was credible." (ECF No. 204, Page 9). Unlike the expert in Defendant's cited case *Greenwell v. Boatwright*, Bauer never makes any mention of Mason's credibility. Nor does he "evaluat[e] eye-witness testimony." *Greenwell v. Boatwright*, 184 F.3d 492, 496 (6th Cir.1999). Bauer simply opines "Defendant Mason's version of the facts is refuted by the physical evidence, specifically that Tyre's wounds were inconsistent with Mason's account, based on the location of his gunshot wounds." (ECF No. 204, Page 9). Testimony of this sort is admissible and well within the expertise of such an expert witness. The Court will not exclude this testimony.

### 3. Bauer's Third Opinion

The third opinion Defendant maintains should be excluded is as follows: "[t]here is no physical evidence to demonstrate that Tyre was holding a gun when he was shot by Officer Mason. It is unknown how the gun came to rest north of the wheel stop." (ECF No. 149, Exhibit 19, Page 16). Defendant states that "the statement that it is 'unknown how the gun came to rest north of the wheel stop' is not an opinion and should be excluded." (ECF No. 178, Page 6). Defendant also maintains Bauer's opinion that "'[t]here is no physical evidence to demonstrate that Tyre was holding a gun when he was shot by Officer Mason,' should be excluded because it will not help the jury understand the evidence or determine any fact at issue." (*Id*., Page 7). In response, Plaintiff argues that these statements are relevant to the jury, in that they explain "the boundaries of what the evidence can and cannot demonstrate in this case." (ECF No. 204, Page 10).

The Court agrees with Defendant. Expert testimony must be based on the sufficient facts and data. Bauer did not have enough facts to come to a conclusion on how the gun came to rest

where it did, and whether King was holding a gun when shot by Officer Mason.  As such, he should not be permitted to testify as to this topic.  The Court will exclude this testimony.

### 4.  Bauer's Fourth Opinion

The fourth opinion Defendant would like the Court to exclude is as follows: "[h]ad Tyre thrown the gun before, or during the shooting incident, the throwing motion would have been visible to Officer Mason and within Officer Mason's field-of-view."  (ECF No. 149, Exhibit 19, Page 16).  Defendant maintains "[w]hether Officer Mason would have seen Tyre throw the gun (if Tyre did in fact throw the gun), is a factual conclusion that would be within the understanding and/or common knowledge of the jury."  (ECF No. 178, Page 7).   In addition, Defendant argues this opinion should be excluded as it contradicts the facts of the case.

The Court agrees with Plaintiff that "this opinion is an admissible scene reconstruction opinion and should not be excluded." (ECF No. 204, Page 10).  Bauer is testifying about what was within Mason's field of view in the moments before, and as, he fired on King.  This is within Bauer's expertise as a scene reconstruction expert.  Additionally, it is not within the common knowledge of the jury, as it is unlikely that any juror in this case has been involved in a shooting.  Further, there is no indication that this opinion contradicts the facts of this case.  King's movements and actions in the moments before he was shot are in dispute here.  The facts do not establish whether or not King attempted to throw his BB gun.  As such, the Court will not exclude this testimony.  Defendant's motion to exclude is **GRANTED** in part and **DENIED** in part.

### E. Plaintiff's Motion in Limine

#### 1. Expert Testimony and Reports of Thomas Paige and Matthew Noedel

Plaintiff asks the Court to bar the admission of "the Expert Testimony and Reports of Thomas Paige and Matthew Noedel." (ECF No. 196, Page 1).

#### i. Expert Testimony and Reports of Paige

Plaintiff maintains Paige's report and testimony should be excluded because his "opinions exceed the scope of his expertise, his opinions will not assist the trier of fact and his opinions invade the province of the jury." (*Id*.) First, Plaintiff argues Paige is not qualified to testify that "an officer's actions 'violated nationally recognized police standards governing excessive force.'" (ECF No. 193, Page 1) (citing *Champion v. Outlook Nashville, Inc*., 380 F.3d 893, 908 (6th Cir. 2004)). Second, Plaintiff contends Paige is going to offer three "specific opinions that exceed the scope of his expertise." (*Id*., Page 2). Third, Plaintiff argues "Paige is not credible or objective." (*Id*.). And finally, she points out that Paige's "opinion that Mason's conduct 'was objectively reasonable' improperly invades the province of the jury because it is an impermissible legal conclusion." (*Id*.).

Defendant concedes that "an expert's report is hearsay and therefore inadmissible." (ECF No. 203, Page 1). He also agrees that Paige should not "be permitted to provide a conclusion about 'objective reasonableness.'" (*Id*., Page 2). However, Defendant maintains "the opinions themselves… are admissible" as Paige will not testify about objective reasonableness. (*Id*.). Instead, Defendant states "Paige will testify about the threat faced by Mason and whether Mason's use of force was in line with standard police practices and procedures." (*Id*.).

The Court agrees with Plaintiff in part. Testimony on objective reasonableness clearly embraces the ultimate question in this case. As such, it is not admissible. Paige may testify as to policies and procedures, but not as to legal conclusions. The three specific opinions that exceed

the scope of Paige's expertise are also not admissible. Plaintiff is concerned that Paige will opine that Mason was "mathematically at risk of being shot," opine "on human perception and response time," and opine on the "work of a sociologist" (ECF 193, Page 2). All of these opinions would be outside the scope of his expertise as an expert in "police policies, procedures, and tactics." (ECF No. 203, Page 1). However, the Court will permit Paige to testify as to the nationally recognized police standards that govern excessive force. (ECF No. 193, Page 1). As Defendant points out, Paige has extensive experience as a law enforcement officer and has previously been permitted to testify "in a federal deadly force case." (*Id*., Page 2). He also "has extensive experience as a law enforcement trainer and as a trainer of trainers. (*Id*.). Paige is clearly qualified to opine on police policies, procedures, and tactics, and may testify as to the nationally recognized police standards.

Paige's employment at the Columbus Police Department does not disqualify him from testifying either. While the Sixth Circuit has stated "permitting police officers to testify as experts in their own investigations and give opinion testimony on the significance of evidence they have collected, absent any cautionary instruction, threatens the fairness, integrity, and public reputation of judicial proceedings," the Circuit has never extended this precedent to the fellow city employees of the officer on trial. *U.S. v. Lopez-Medina*, 461 F.3d 724, 744-745 (6th Cir. 2006). And as Defendant points out "King will have an opportunity to challenge Paige's qualifications or methodology via cross-examination." (ECF No. 203, Page 2). Paige may "testify about the threat faced by Mason and whether Mason's use of force was in line with standard police practices and procedures." (*Id*.). Plaintiff's motion in limine is **GRANTED** in part and **DENIED** in part as to this topic.

### ii. Noedel

Plaintiff maintains "the report and expert testimony of Matthew Noedel should be excluded because his opinions will not assist the trier of fact and invade the province of the jury." (ECF No. 196, Page 4).  She says the "primary opinion he offers is that it is not possible to determine that the pistol was a replica and not a real firearm without direct, up close inspection of the pistol.  (*Id*.) (internal quotations omitted).  Plaintiff argues this exceeds Noedel's expertise in "scene reconstruction." (*Id*., Page 4).  Plaintiff also contends "Noedel's opinion that the evidence supports that King did possess a replica BB pistol during this event is unhelpful to the jury and should be excluded." (ECF No. 196, Page 5) (internal quotations omitted).  Further, Plaintiff argues "Noedel's opinions that Tyre King's body position can change and that an officer can deliver three shots on target in less than a second are speculative and should be excluded." (*Id*.) (internal quotations omitted).  Finally, Plaintiff contends "Noedel's reconstruction images should be excluded as prejudicial." (*Id*.)

The Court agrees with Plaintiff in part.  Noedel's testimony that ""[i]t is not possible to determine that the pistol was a replica without direct, visual inspection of the recovered gun," is not relevant when the jury can see the gun themselves.  (ECF No. 203, Page 3).  Noedel's testimony will not assist the jury, as they can form their own impression of what King's BB gun looked like.  Defendant argues "the opinion is not within the common knowledge of a layperson, as many jurors will not be familiar with guns and their components," but the Court disagrees. (*Id*.)  The appearance of a handgun is well within the common knowledge of a layperson. Further, Noedel's testimony that King possessed the BB gun must also be excluded.  That is a question of fact that should be answered by a fact witness.  A number of eyewitnesses saw King

with the gun.  The issue of whether King ever possessed the gun is not in dispute.  As such, Noedel's testimony that King's DNA was on the BB gun is unhelpful.

As to Noedel's testimony that "[a] trained shooter can easily deliver three shots from a semiautomatic pistol on target in less than 1 second" is apparently based on the scientific literature of his field.  And if Defendant is correct that "purpose of Noedel's opinion is to help the jury understand how quickly three shots can be fired by a trained shooter (such as Mason), as this information is not within the common knowledge of a layperson," Noedel's testimony could be helpful to the jury.  It is not entirely clear how relevant this opinion is to the reasonability of Mason's use of force.  However, it is not clearly inadmissible.  The same is true of Noedel's testimony on the King's body position.  As Defendant notes, Noedel's "opinion explains the dynamics of a shooting incident and will help the jury to understand the evidence," which will be "particularly relevant if Plaintiff contends King was running away."  (ECF No. 203, Page 5).

Finally, the Court agrees that Noedel's reconstruction images may be prejudicial.  Defendant concedes this point, and "will stipulate and/or agree to a limiting instruction that the figure in Noedel's model does not appear the same age, height, weight, etc., as King."  (ECF No. 203, Page 5).  Noedel's images are likely to be highly relevant to his testimony and to the ultimate question in case.  As such, the Court will not exclude them.  It is the Court's view that this limiting instruction should be enough to avoid unfair prejudice to the Plaintiff, especially given that the juror's will see photograph's of King's body.  Plaintiff's motion in limine on this topic is **GRANTED** in part and **DENIED** in part.  Further, Defendant must abide by a limiting instruction "that the figure in Noedel's model does not appear the same age, height, weight, etc., as King."  (ECF No. 203, Page 5).

### 2.  Non-Expert Opinion Testimony

Plaintiff seeks to preclude the introduction of inadmissible "non-expert opinion testimony."  (ECF No. 196, Page 6).  Specifically, Plaintiff requests the exclusion of "the CIRT opinion that Mason's use of force was justified."  (*Id*.).  Plaintiff argues that allowing testimony from CIRT team members regarding whether Mason's use of force was justified would constitute a circumvention of "the rules of expert witness disclosure." (*Id*.).  Defendant does not contest Plaintiff's argument.  Defendant states that he has no plans "to offer evidence or opinion from any member of the CIRT team related to the reasonableness of Mason's use of force." (ECF No. 203, Page 5).  According to Defendant, "[i]f Mason calls Detective Kestner or Detective Gillette, it will be to provide fact testimony about which they have personal knowledge."  (*Id*.).

The Court agrees with Plaintiff.  A "CIRT opinion that Mason's use of force was justified" would certainly constitute inadmissible non-expert testimony.  However, as Defendant has no plans "to offer evidence or opinion from any member of the CIRT team related to the reasonableness of Mason's use of force," this issue is not likely to come up.  Plaintiff's motion in limine on this topic is **GRANTED**.

### 3.  Evidence of Past Crimes, Wrongs, or Bad Acts of Witnesses

Plaintiff asks the Court to "exclude evidence of prior convictions, arrests, or police and child services encounters of all witnesses and related to Tyre King, because such evidence is irrelevant, highly prejudicial, and not admissible under any exception in the evidence rules." (ECF No. 196, Page 7).

### i.  Demetrius Braxton

As Defendant points out, "for a crime that, in the convicting jurisdiction, was punishable by death or imprisonment for more than one year, the evidence…must be admitted, subject to Rule 403, in a civil case." Fed. R. Evid. 609(a)(1)(A).  It is not disputed that Braxton has been convicted of two felonies punishable by imprisonment for more than one year.  Thus, the Court turns to Rule 403 of the Federal Rules of Evidence.  In the relevant part, 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of… unfair prejudice." Fed. R. Evid. 403.  At this time it is unclear if Braxton's prior robbery conviction will have enough "probative value for impeachment purposes" that it is not "substantially outweighed" by the danger of unfair prejudice.  (ECF No. 204, Page 6) (Fed. R. Evid. 403).  At this time, the Court will not exclude evidence of Braxton's prior convictions.

### ii.  William Scott

Under the relevant part of Rule 609(b)(1) of the Federal Rules of Evidence, evidence of a conviction more than 10 years old may be admitted if "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect."  Here, Scott was released from prison in 2008.  While Defendant argues knowledge of his conviction would help jurors assess his credibility, the probative value of a nearly fifteen-year-old conviction is doubtful.  Particularly in light of the fact that Scott's crime had little to do with dishonesty.  On the other hand, the potential for unfair prejudice is high.  At this time, the Court will exclude evidence of Scott's prior convictions subject to renewal at trial.

### iii.  Other Witnesses

At this time it is unclear who these other witnesses are.  Without knowing their identities, the Court cannot assess probative value and prejudice.  As such, the Court cannot make a ruling

on this issue yet.  Similarly, it is also unclear what evidence of bad acts and prior convictions of King's Defendant is planning to introduce.  Without this information, the Court cannot assess probative value and prejudice.  As such, the Court cannot make a ruling on this issue yet.

Plaintiff's motion in limine is **DENIED** Demetrius Braxton, **GRANTED** as to William Scott, and **HELD IN ABEYANCE** as to other witnesses and King himself.

### 4.  Facts Not Known to Defendant Mason at the Time of the Shooting

Plaintiff seeks to preclude Defendant from entering into evidence "information that officers did not know or rely on at the time of the at-issue events."  (ECF No. 196, Pages 8–9). Specifically, Plaintiff requests "the complete exclusion of testimony from Michael Ames, the man who had been robbed, testimony from any witness about the stolen car and the robbery beyond what Defendant Mason heard on police dispatch audio." (*Id*., Page 9).  Defendant argues "Plaintiff's request is overly broad and must be denied."  (ECF No. 203, Page 8).  He contends that this testimony should not be excluded for the following reasons.  First, the "[t]estimony from Ames and Braxton goes directly to the totality of the circumstances that Officer Mason faced when he used force and to the controlling Graham factors."  (*Id*.).  Second, "[t]estimony regarding the robbery is important to provide context to the jury to explain how and why Officer Mason encountered Tyre King."  (*Id*.)  Third, assuming Plaintiff calls lay witness William Scott to testify, "Mason should be permitted to challenge his testimony with his prior inconsistent statements regarding the robbery."  (*Id*., Page 9).  And finally, "evidence about the robbery (and car) go directly to King's damages and causation."  (*Id*., Page 10).  Thus, Defendant maintains, the "jury should consider King's behavior if Plaintiff seeks damages for King."  (*Id*.).

The Court preliminarily agrees with Defendant.  Plaintiff's request is broad and all encompassing.  At this stage, the Court will only exclude evidence that is clearly inadmissible on

all potential grounds. *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F.Supp.2d 844, 846 (N.D. Ohio 2004).

Plaintiff is correct that "the reasonableness of Defendant Mason's conduct permits consideration

of 'only the facts the officers knew at the time of the alleged Fourth Amendment violation.'"

(ECF No. 203, Page 9) (citing *Dickerson v. McClellan*, 101 F.3d 1151, FN3 (6th Cir. 1996)).

However, she has not yet established that the testimony she requests to be excluded falls into this

category. As Defendant makes clear, the testimony of Ames and Braxton could very well be

relevant to showing the totality of the circumstances faced by Mason at the time he used force.

Further, the defense has the right to tell its full story of events. Such testimony could have other

uses as well. At the same time, the Court believes further development of the evidence at trial is

necessary. For example, how attenuated was the robbery from the fatal shooting? While

Defendant may elicit testimony from Ames and play the 911 call he made (excluding any

statements from third parties), the Court reserves a ruling until trial.

### 5. Police Awards and Commendations

Plaintiff asks the Court to bar the admission of evidence of Mason's police awards and

commendations. She argues "the admissibility of police awards and commendations was

carefully analyzed in *United States v Brown*, 503 F. Supp. 2d 239 (DDC 200)." (ECF No. 196,

Page 9). And in that case "[t]he court ruled that commendations were neither opinion nor

reputation and therefore inadmissible." (*Id.*) Defendant states "Mason does not intend to

introduce evidence of his police awards or commendations." (ECF No. 203, Page 10).

However, he argues that "if Plaintiff is permitted to present evidence criticizing Mason's prior

uses of deadly force… Mason should be permitted to present evidence that he was awarded

CPD's Silver Cross for his actions during one of those incidents which involved an active

shooter who had already shot other officers." (*Id.*, Page 10).

The Court agrees with Plaintiff.  She is correct that the court in *Brown* did not admit evidence of police awards and commendations, finding them to be inadmissible.  And as mentioned in the Court's ruling on Defendant's motion in limine, Plaintiff will not be permitted to present evidence criticizing Mason's prior uses of deadly force.  As such, Defendant has no need to present evidence of Mason's Silver Cross.  Plaintiff's motion in limine is **GRANTED** as to police awards and commendations.

### 6.  Dismissed Claims

Plaintiff seeks to prohibit the admission of evidence that "a grand jury failed to indict Defendant Mason on criminal charges" and evidence regarding "the existence of the dismissed Monell claim."  (ECF No. 196, Page 9).  Defendant does not contest this prohibition but argues that it should apply to both parties.  "Plaintiff should also be prohibited from presenting this type of evidence."  (ECF No. 203, Page 10).

The Court agrees with the parties.  The grand jury's failure to indict Defendant Mason has little to no relevance to this case.  Additionally, allowing such testimony, from either party, could create a danger of unfair prejudice and juror confusion.  Further, district courts within the Sixth Circuit that have dealt with similar issues have granted motions in limine.  See *Crabbs v. Pitts*, No. 2:16-cv-0387, 2018 WL 5262397, at *10 (S.D. Ohio Oct. 23, 2018); *see also, Moore v. Bannon*, No. 10-12801, 2012 WL 2154274, at *7 (E.D. Mich. June 13, 2012).  Given Defendant's concession and the supportive caselaw, the Court will exclude evidence that "a grand jury failed to indict Defendant Mason on criminal charges" and evidence regarding "the existence of the dismissed Monell claim."  (ECF No. 196, Page 9).  Plaintiff's motion in limine is **GRANTED** as to the dismissed claims.

### 7.   Financial Liability

Plaintiff asks the Court to bar the admission of "Defendant Mason's personal financial liability, financial insolvency, or poverty." (ECF No. 196, Page 10).  Defendant agrees that information regarding Mason's financials should be excluded.  He just argues that the exclusion apply to both parties.  "Plaintiff must also be barred from presenting this type of evidence." (ECF No. 203, Page 10).

The Court agrees with the parties.  Defendant Mason's financial situation has no relevance to his use of force against King.  Additionally, the introduction of information regarding his finances runs a very real risk of prejudicing the jury.  Further, district courts within our Circuit that have dealt with similar issues have excluded this type of information.  *See DuJardin vs. City of Oxnard*, 38 Cal.App. 4th 174, 45 Cal. Rptr. 2d 48 (1995); *City of Springfield v. Thompson Sales Co.*, 71 S.W. 3d 597 (Mo. S.Ct., 2002).  Given Defendant's concession and the supportive caselaw, the Court will exclude evidence of "of "Defendant Mason's personal financial liability, financial insolvency, or poverty." (ECF No. 196, Page 10).  Plaintiff's motion in limine is **GRANTED** as to this topic.

### F.   Plaintiff's Supplemental Motion in Limine

Plaintiff asks the Court to "exclude the impermissible opinion testimony of Richard Turner, should exclude from the courtroom BB guns other than the one at issue in this litigation, and should admit evidence of Defendant Mason's use of force history." (ECF No. 212, Page 1).  As mentioned above, the Court has already ruled on the admissibility of Defendant Mason's use of force history.  These prior uses of force are inadmissible.

The first issue the Court will deal with is the testimony of Richard Turner.  At this time, the Court does not have sufficient facts or knowledge of the circumstances in which this testimony

will be used to rule on the admissibility of Turner's testimony. These facts will need to be developed over the course of trial. The Court will hold its ruling in abeyance until Defendant begins presenting their case in chief. Until the Court rules on the admissibility of this testimony, neither party shall mention Richard Turner or his testimony to the jury. Before Defendant presents Turner's testimony, they must seek permission of the Court through a sidebar.

The second and final issue to be decided is that of the BB guns. Plaintiff contends "Defendant's Exhibits 142 and 144, a packaged and an unpackaged duplicate of the BB gun at issue in this case, are cumulative and prejudicial and this Court should exclude them." (ECF No. 215, Page 3). She argues, "[a]llowing additional versions of this model BB gun into the courtroom, let alone admitting them into evidence, has no probative value and risks confusing or intimidating the jury." (*Id*.).

There is very little risk of the duplicate guns confusing or intimidating the jury. In the Court's view, it is unlikely that a BB gun of this sort could intimidate the jury. This is particularly true of a BB gun that is still in its packaging. Additionally, Plaintiff concedes that one version of the BB gun, the one possessed by King before he was fatally shot, is admissible. Given that one BB gun will already be admitted, any additional risk of intimidation resultant from the admission of the two other BB guns will be minimal at most. Further, it is unclear how the admission of these items will confuse the jury. Plaintiff does not explain how the jury would be confused. Finally, it is unclear how the jury will be prejudiced against Plaintiff is these BB guns are admitted. Again, Plaintiff does not explain.

On the other hand, these BB guns are likely relevant. Defendant states, "Exhibits 142 and 144 were used by Turner to explain characteristics of the BB gun." (ECF No. 216, Page 2). The

Court find that the issue should be decided only after specific evidence is adduced. The matter is deferred for ruling during trial.

**G. Conclusion**

For the foregoing reasons, the Court, in accordance with this Opinion and Order, **GRANTS** in part **DENIES** in part and **HOLDS IN ABEYANCE** in part Plaintiff and Defendant's Motions in Limine. (ECF No. 196) (ECF No. 193). The Court also **GRANTS** in part and **DENIES** in part Defendant's Motion to exclude. (ECF No. 178). Further, the Court **DENIES** in part and **DEFERS** its ruling in part Plaintiff's Supplemental Motion in Limine. (ECF No. 215).

As with all in limine decisions, this ruling is subject to modification should the facts or circumstances at trial differ from that which has been presented in the pre-trial motion and memoranda. This case is to remain open.

**IT IS SO ORDERED.**

| | |
|---|---|
| **1/13/2023** | **s/Edmund A. Sargus, Jr.** |
| **DATED** | **EDMUND A. SARGUS, JR.** |
| | **UNITED STATES DISTRICT JUDGE** |