# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

DEARREA KING,

                Plaintiff,

     v.

BRYAN C. MASON,

                Defendant.

Case No. 2:18-cv-1060

Judge Edmund A. Sargus, Jr.

Magistrate Judge Elizabeth A. Preston Deavers

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, OR IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL**

---

Plaintiff Dearrea King has filed a motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50 or alternatively for a new trial pursuant to Fed. R. Civ. P. 59. For the following reasons, Plaintiff's motion must be denied.

                    Respectfully submitted,

                    /s/ Westley M. Phillips
                    Westley M. Phillips (0077728) – LEAD
                    Sheena D. Rosenberg (0088137)
                    Alana Valle Tanoury (0092265)
                    *Assistant City Attorneys*
                    CITY OF COLUMBUS, DEPARTMENT OF LAW
                    ZACH KLEIN, CITY ATTORNEY
                    77 North Front Street, Columbus, Ohio 43215
                    (614) 645-6945 / (614) 645-6949 (fax)
                    wmphillips@columbus.gov
                    sdrosenberg@columbus.gov
                    avtanoury@columbus.gov
                    *Attorneys for Defendant Bryan C. Mason*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................................... ii

I.      SUMMARY OF THE ARGUMENT ................................................................................. 1

II.     BACKGROUND ................................................................................................................. 2

III.    PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW MUST BE
        DENIED .............................................................................................................................. 2

IV.     PLAINTIFF'S MOTION FOR A NEW TRIAL MUST ALSO BE DENIED ................. 8

        A.      The Verdict Was Not Against the Clear Weight of the Evidence .......................... 9

        B.      The Jury Instructions Were Neither Erroneous Nor Prejudicial ........................... 12

        C.      The Evidentiary Rulings Were Neither Erroneous Nor Prejudicial ...................... 16

                1.      Plaintiff's Cover and Communication Theory ......................................... 17

                2.      Mason's Prior Uses of Force .................................................................... 19

                3.      Mason's Post-Incident Reassignment ...................................................... 21

                4.      Lack of DNA Sample ............................................................................... 21

                5.      Michael Ames .......................................................................................... 24

V.      CONCLUSION ................................................................................................................. 25

CERTIFICATE OF SERVICE ..................................................................................................... 26

# TABLE OF AUTHORITIES

## Cases

*Anderson v. City of Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266............. 16

*Anderson v. Russell*, 247 F.3d 125 (4th Cir. 2001)....................................................................... 7

*Barnes v. Owens-Corning, Fiberglas Corp.*, 201 F.3d 815 (6th Cir. 2000)................... 1, 9, 12, 16

*Beck v. Haik*, 377 F.3d 624 (6th Cir. 2004) ................................................................................ 16

*Carter v. Buscher*, 973 F.2d 1328 (7th Cir. 1992)....................................................................... 18

*Chappell v. City of Cleveland*, 585 F.3d 901 (6th Cir. 2009) ...................................................... 12

*Cnty. of Los Angeles v. Mendez*, 137 S. Ct. 1539, 198 L. Ed. 2d 52 (2017)................................ 18

*Cooper v. City of Columbus*, 2023 U.S. App. LEXIS 2629 ............................................... 1, 13, 15

*Cooper v. City of Columbus*, 2023 U.S. App. LEXIS 2629, 2023 FED App. 0066N (6th Cir.), 2023 WL 1434055 ........................................................................................................................ 14

*Cummins v. BIC USA, Inc.*, 727 F.3d 506 (6th Cir. 2013)................................................... 1, 16

*Direct Sales Co. v. United States*, 319 U.S. 703, 63 S. Ct. 1265, 87 L. Ed. 1674 (1943) ........... 23

*Ewolski v. City of Brunswick*, 287 F.3d 492 (6th Cir. 2002) ...................................................... 12

*Goodwin v. Richland Cty.*, 832 Fed. Appx. 354 (6th Cir. 2020) ...................................... 1, 7, 8, 18

*Graham v. Connor*, 490 U.S. 386 (1989) ................................................................................... 24

*Hayes v. Columbus*, 2014-Ohio-2076, 2014 WL 2048176........................................................ 1, 18

*Helfrich v. Lakeside Park Police Dep't*, 497 F. App'x 500 (6th Cir. 2012)................................ 20

*Hicks v. Scott*, 958 F.3d 421 (6th Cir. 2020)........................................................................... 8, 12

*Hood v. Bare, et al.*, 2:17-cv-471............................................................................................... 23

*Huddleston v. United States*, 485 U.S. 681 (1988) ..................................................................... 20

*Jordan v. Howard*, 2d Dist. Montgomery No. 29190, 2021-Ohio-4025 ...................... 1, 13, 14, 15

*K & T Enters., Inc. v. Zurich Ins. Co.*, 97 F.3d 171 (6th Cir. 1996)............................................. 3

*Kendzierski v. Carney*, 2005-Ohio-6735 (Ct. App.) ................................................................... 18

*Kitchen v. Chippewa Valley Schools*, 825 F.2d 1004 (6th Cir. 1987) ......................................... 12

*Lemmon v. City of Akron*, 2018 U.S. Dist. LEXIS 84085, 2018 WL 2289865 ........................... 12

*Lemmon v. City of Akron*, 768 Fed. Appx. 410 (6th Cir. 2019) ........................................... 7

*Livermore ex rel Rohm v. Lubelan*, 476 F.3d 397 (6th Cir. 2007) ................................... 18

*Morelock v. NCR Corp.*, 586 F.2d 1096 (6th Cir. 1978) ........................................ 3

*Mosby-Meachem v. Memphis Light, Gas & Water Div.*, 883 F.3d 595 (6th Cir. 2018) ............. 1, 8

*Mullins v. Cyranek*, 805 F.3d 760 (6th Cir. 2015) ........................................ 12

*Old Chief v. United States*, 519 U.S. 172 (1997) .................................... 1, 23

*O-So Detroit, Inc. v. Home Ins. Co.*, 973 F.2d 498 (6th Cir. 1992) ............................ 16

*Pollard v. City of Columbus*, 780 F.3d 395 (6th Cir. 2015) ........................... 1, 7, 12, 15

*Riverview Invs., Inc. v. Ottawa Community Improvement Corp.*, 899 F.2d 474 (6th Cir. 1990) 1, 3

*Simmons v. Napier*, 626 F. App'x 129 (6th Cir. 2015) .................................. 20

*Thomas v. City of Columbus, Ohio*, 854 F.3d 361 (6th Cir. 2017) ................................. 7

*Thornton v. City of Columbus*, 727 F. App'x 829 (6th Cir. 2018) ............................. 1, 7

*United States v. L.E. Cooke Co.*, 991 F.2d 336 (6th Cir. 1993) .................................. 9

*United States v. Wells*, 211 F.3d 988 (6th Cir. 2000) ................................... 16

*Vance v. Spencer County Public Schools*, 231 F.3d 253 (6th Cir. 2000) .................................... 12

*Wilkerson v. City of Akron*, 906 F.3d 477 (6th Cir.2018) .............................. 12

*Williams v. Schismenos*, 258 F. Supp. 3d 842 (N.D.Ohio 2017) ................................ 12

*Wilson v. Gregory*, 3 F.4th 844 (6th Cir. 2021) ........................................ 15

*Woodbridge v. Dahlberg*, 954 F.2d 1231 (6th Cir. 1992) .................................... 1, 9, 11

**Statutes**

42 U.S.C. § 1983 ............................................................................ 2

O.R.C. § 2125.01 ........................................................................ 2

O.R.C. § 2744.03 ..................................................................... 12, 15

**Rules**

Fed. R. Civ. P. 50 ................................................................................................................. 1, 2

Fed. R. Civ. P. 59 ................................................................................................................. 1, 8

Fed. R. Evid. 403 ................................................................................................................ 1, 20

Fed. R. Evid. 404 ............................................................................................................... 19, 20

---
### **MEMORANDUM IN SUPPORT**
---

## I.     SUMMARY OF THE ARGUMENT

Plaintiff's motion for judgment as a matter of law must be denied. Accepting all facts in the light most favorable to Mason, and drawing all reasonable inferences in Mason's favor, a reasonable jury would have a legally sufficient evidentiary basis to find in his favor. **(Pages 2 to 8).** Primary Sources: Fed. R. Civ. P. 50(a); *Riverview Invs., Inc. v. Ottawa Community Improvement Corp.*, 899 F.2d 474 (6th Cir. 1990); *Thornton v. City of Columbus*, 727 F. App'x 829 (6th Cir. 2018).

Plaintiff's motion for a new trial must be denied. **(Pages 8 to 23).** Primary Sources: Fed. R. Civ. P. 59(a); *Mosby-Meachem v. Memphis Light, Gas & Water Div.*, 883 F.3d 595 (6th Cir. 2018).

The verdict was not against the clear weight of the evidence. **(Pages 9 to 12).** Primary Sources: *Barnes v. Owens-Corning, Fiberglas Corp.*, 201 F.3d 815 (6th Cir. 2000); *Woodbridge v. Dahlberg*, 954 F.2d 1231 (6th Cir. 1992).

The jury instructions were neither erroneous nor prejudicial. **(Pages 12 to 16).** Primary Sources: *Pollard v. City of Columbus*, 780 F.3d 395 (6th Cir. 2015); *Cooper v. City of Columbus*, 2023 U.S. App. LEXIS 2629; *Jordan v. Howard*, 2d Dist. Montgomery No. 29190, 2021-Ohio-4025; *Hayes v. Columbus*, 2014-Ohio-2076, 2014 WL 2048176.

The Court's evidentiary rulings were neither erroneous nor prejudicial. **(Pages 16 to 24).** Primary Sources: *Cummins v. BIC USA, Inc.*, 727 F.3d 506 (6th Cir. 2013) (for the legal standard); *Goodwin v. Richland Cty.*, 832 Fed. Appx. 354 (6th Cir. 2020) and *Hayes v. Columbus*, 2014-Ohio-2076, 2014 WL 2048176 (for Plaintiff's cover and communication theory); Fed. R. Evid.

403 (for Mason's post-incident reassignment and the lack of a DNA sample); *Old Chief v. United States*, 519 U.S. 172 (1997) (for the testimony of Michael Ames).

## II.    BACKGROUND

This civil action arises out of the fatal shooting of Tyre King by Columbus Police Officer Bryan Mason. *See* COMPLAINT (R.2). Plaintiff asserted a Fourth Amendment excessive force claim against Mason under 42 U.S.C. § 1983. Plaintiff also asserted a state-law claim against Mason for wrongful death under Ohio Revised Code § 2125.01. The case was tried from January 17, 2023 through January 25, 2023. Following a presentation of all of the evidence, the jury returned a verdict in favor of Mason on all claims. The Court entered judgment on January 25, 2023 consistent with the verdict. On February 22, 2023, Plaintiff filed a post-trial motion for a judgment as a matter of law or alternatively for a new trial, citing to uncertified rough drafts of the transcript of the proceedings.[1] (R.236-1, R.236-2, R.236-3, R.236-4, R.236-5, R.236-6).

## III.    PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW MUST BE DENIED

After the close of evidence, and prior to the submission of the case to the jury, Plaintiff argued that she was entitled to judgment as a matter of law on both her Fourth Amendment excessive force claim and her state-law wrongful death claim. Plaintiff's arguments were addressed and correctly rejected by the Court. Mason asks the Court to adhere to its conclusion that Plaintiff is not entitled to judgment as a matter of law.

Rule 50 provides that a court may enter judgment against a party when the "party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have

---

[1] The uncertified rough drafts of the transcript of the proceedings state that "a rough draft can be used only for the purpose of augmenting notes and cannot be used or cited in any court proceedings…" *See, e.g.*, DRAFT TRIAL TRANSCRIPT, JANUARY 17, 2023 (R.236-1 #7277). Due to the fact that Plaintiff has cited to those transcripts, Mason will do the same out of an abundance of caution. If Plaintiff properly files a certified transcript, Mason will seek to update his citations to the actual record.

a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). In deciding the issue, "the evidence should not be weighed. The credibility of the witnesses should not be questioned. The judgment of this court should not be substituted for that of the jury." *K & T Enters., Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 175-76 (6th Cir. 1996). Instead, the Court must "view the evidence 'in the light most favorable to the party against whom the motion is made, drawing from that evidence all reasonable inferences in his favor.'" *Riverview Invs., Inc. v. Ottawa Community Improvement Corp.*, 899 F.2d 474, 484 (6th Cir. 1990) (quoting *Morelock v. NCR Corp.*, 586 F.2d 1096, 1104 (6th Cir. 1978)).

Accepting all facts in the light most favorable to Mason, and drawing all reasonable inferences in Mason's favor, a reasonable officer would have probable cause to believe that King posed a threat of serious physical harm to Mason and others at the moment force was used. Mason and Robert Reffitt were working as partners, in a clearly identifiable marked Columbus police cruiser, and wearing uniforms that clearly identified them as Columbus Police officers. DRAFT TRIAL TRANSCRIPT, JANUARY 20, 2023 (R.236-4 #7850-51); DRAFT TRIAL TRANSCRIPT, JANUARY 23, 2023 (R.236-5 #8067). Shortly after 7:40 p.m., they responded to a dispatched call of an armed robbery occurring in the area of 18th Street and East Broad Street during which the suspect pointed a handgun at the victim. DRAFT TRIAL TRANSCRIPT, JANUARY 20, 2023 (R.236-4 #7853-54). As Mason and Reffitt drove to the scene, Mason received real time descriptions of the suspects and their location. *Id*. (R.236-4 #7854-59).

As Mason and Reffitt approached the vicinity of the robbery, Reffitt turned southbound on Hoffman Avenue, which is slightly east of South 18th Street. *Id*. (R.236-4 #7865). Almost immediately after making the turn onto Hoffman Avenue, Mason saw two officers exit a northbound cruiser and run directly westbound between some houses. *Id*. (R.236-4 #7865-68). It

is undisputed that those officers were chasing Demetrius Braxton and Tyre King. DRAFT TRIAL TRANSCRIPT, JANUARY 18, 2023 (R.236-2 #7478). Based upon the totality of the circumstances, Mason believed that the officers from the other cruiser were pursuing the robbery suspects. DRAFT TRIAL TRANSCRIPT, JANUARY 20, 2023 (R.236-4 #7866). Despite Plaintiff's argument that King "did not match the description of the actual robber," Mason's belief that Braxton and King were the robbery suspects was both reasonable and correct.[2] Reffitt stopped their own cruiser just south of East Capital Street, which is an alley that runs parallel to and is directly south of East Broad Street. *Id.* (R.236-4 #7868).

Mason quickly exited the cruiser and ran westbound on East Capital Street thinking that he might be able to stop the suspects if they turned north and away from the other officers. *Id.* (R.236-4 #7867-69). Having knowledge that the suspects were wanted for an armed robbery committed at gunpoint, he drew his duty weapon as he ran westbound in the alley. *Id.* (R.236-4 #7869). Mason approached South 19th Street, looked southbound, and immediately observed Braxton and King running northbound on South 19th Street towards his direction. *Id.* (R.236-4 #7870). Mason correctly believed that they were the robbery suspects fleeing from the other officers. *Id.* Because Mason knew that a firearm had been used in the commission of the robbery, Mason focused his gun on Braxton and King and began giving loud verbal commands to "Get down!" *Id.* (R.236-4 #7870-71). Almost immediately after Mason shouted those commands, Braxton went down onto his chest near the middle of South 19th Street, with his hands open and his arms spread out to his sides. *Id.* (R.236-4 #7871).

---

[2] King provided the gun that Braxton used to commit the robbery. DRAFT TRIAL TRANSCRIPT, JANUARY 19, 2023 (R.236-3 #7690).Braxton then robbed Michael Ames with King's gun. *Id.* (R.236-3 #7688).After robbing Ames, Braxton handed the gun back to King. *Id.* (R.236-3 #7690).King then put the gun back into his waistband. *Id.* (R.236-3 #7690-91).

King, however, did not obey Mason's commands. *Id*. (R.236-4 #7872). When Mason shifted his focus to King, Mason could see a handgun that was tucked into King's waistband. *Id*. As Mason shouted extra commands to "Get down! Get down! Get down!" King continued running, veering northeast toward a car that was parked, facing south, in a small parking area located on the southeast corner of East Capital Street and South 19th Street. *Id*. (R.236-4 #7872-73). King then came to a stop with a quick stutter step in front of the car on the driver's side. *Id*. (R.236-4 #7872-74, 7924-25). Mason kept giving loud verbal commands for King to "Get Down! Get Down! Get Down!" to which King did not comply. *Id*. (R.236-4 #7874).

King then reached down and grabbed the grip of the gun that was in his waistband and began tugging forcefully on the gun, three or more times, like it was stuck on a belt or a drawstring. *Id*. Mason continued to give commands for King to "Get Down! Get Down! Get Down!" until King's gun cleared his waistband and came up in front of his torso. *Id*. Mason, believing King was drawing his gun to shoot him, fired three shots at King in rapid succession, with all three shots occurring in one to two seconds. *Id*. (R.236-4 #7874, 7877-78). Mason shot at King's front left side, with King canted away from Mason, turned slightly to the right. *Id*. (R.236-4 #7936, 7948). King was not running when he was shot. Skora Deposition Designation, p. 93 (R.190-1).

Upon being shot, King dropped his gun and fell to the ground. Draft Trial Transcript, January 23, 2023 (R.236-5 #8072-73). King's gun hit the parking block in front of the parked car and landed in front of the car's driver's side front tire. *Id*. (R.236-5 #8072-74, 8086, 8098). Only 5-8 seconds separated the moment Mason first saw Braxton and King running toward him in the alley from the instant he fired his gun. Draft Trial Transcript, January 20, 2023 (R.236-4 #7879). Reffitt immediately aired for a medic for King. Draft Trial Transcript, January 23, 2023 (R.236-5 #8073). Mason did not say any racial slur or make any racist statement. Draft

TRIAL TRANSCRIPT, JANUARY 20, 2023 (R.236-4 #7885-86). Mason did not call King or Braxton

dumb or stupid. *Id*. (R.236-4 #7886). After the shooting, Mason learned that King's gun was a BB

gun. *Id*. (R.236-4 #7885). Mason would not have fired if he knew King's gun was a BB gun. *Id*.

When asked to assume that Mason accurately described everything that occurred during

the incident (*Id*. (R.236-4 #7803)), Plaintiff's policing expert Melvin Tucker confirmed the

following:

1. Mason was responding to a serious, violent crime. *Id*. (R.236-4 #7806-07).

2. King attempted to evade arrest by flight. *Id*. (R.236-4 #7808).

3. King resisted arrest. *Id*.

4. It was reasonable to think that King's gun was a real firearm because it looks like a gun. *Id*. (R.236-4 #7802).

5. Handguns are deadly. *Id*. (R.236-4 #7810).

6. An armed suspect can pull a handgun from his waistband, aim, and shoot in as little as two-tenths of a second. *Id*. (R.236-4 #7813-14).

7. King's age was not relevant to the threat he posed. *Id*. (R.236-4 #7814).

8. This was a tense, uncertain, and rapidly evolving situation. *Id*. (R.236-4 #7808).

Based on all of the foregoing, a reasonable jury would have a legally sufficient evidentiary

basis to find for Mason on both the Fourth Amendment excessive force claim and the state-law

wrongful death claim. As previously stated in the Court's opinion and order denying Mason's

motion for summary judgment:

> According to Mason, King went for the gun in his waistband but had trouble pulling it out, tugging on it at least three times. According to Mason, it was only when King raised the gun that Mason fired. If that is indeed what happened, then Mason's decision to use deadly force was not unreasonable. Regrettable, tragic, but not unreasonable…

OPINION AND ORDER (Doc.150 #4851).

Accepting all facts in the light most favorable to Mason and drawing all reasonable inferences in Mason's favor, King went for the gun in his waistband, pulled out the gun, and it was only when King raised the gun that Mason fired. Plaintiff argues that she is entitled to a judgment as a matter of law because King did not point the gun after pulling it from his waistband. But the Sixth Circuit has been clear that deadly force can be reasonable even if the suspect does not point a firearm at the officer. *Thornton v. City of Columbus*, 727 F. App'x 829, 838 (6th Cir. 2018); *See also Anderson v. Russell*, 247 F.3d 125, 131 (4th Cir. 2001) ("[A]n officer does not have to wait until a gun is pointed at the officer before the officer is entitled to take action.") A suspect does not even have to raise the firearm. *See, e.g., Thomas v. City of Columbus, Ohio*, 854 F.3d 361, 366-67 (6th Cir. 2017) (holding that an officer reasonably used deadly force when an individual ran at him with a firearm at his side); *Thornton*, 727 F. App'x at 837 (holding that an officer's use of deadly force was reasonable when a suspect had a shotgun not pointed at the officers). A suspect does not even have to be armed. *See, e.g., Pollard v. City of Columbus*, 780 F.3d 395 (6th Cir. 2015); *Lemmon v. City of Akron*, 768 Fed. Appx. 410 (6th Cir. 2019); *Goodwin v. Richland Cty.*, 832 Fed. Appx. 354 (6th Cir. 2020).

Plaintiff's other arguments are also without merit. Her argument that "there is no evidence whatsoever in the record that a jury could rely on to find that Tyre King gave an indication that he was willing and about to use the BB gun to harm someone," is simply wrong and was correctly rejected by the jury. Mason was responding to the armed robbery and he knew that a gun had been pointed at the victim. King then pulled out that same gun and raised it up while resisting arrest and ignoring multiple commands, issued at gunpoint by a uniformed police officer, to get on the ground. And Plaintiff's argument that Mason was legally required to give some additional warning is also wrong and was correctly rejected by the jury. The entire interaction occurred over a matter

7

of seconds. Mason did not shoot when he first saw King grab the gun and start tugging at it. Rather, he issued more orders to get down on the ground. He only fired when King pulled out the gun and raised it up. At that point, no further "warning" was feasible. "When the hesitation involved in giving a warning could readily cause such a warning to be the officer's last, then a warning is not feasible." *Hicks v. Scott*, 958 F.3d 421, 437 (6th Cir. 2020).

Accepting all facts in the light most favorable to Mason, and drawing all reasonable inferences in Mason's favor, Mason's conduct was neither objectively unreasonable nor reckless. A reasonable jury would have a legally sufficient evidentiary basis to find in his favor. Plaintiff's renewed motion for a judgment as a matter of law must therefore be denied.

## IV. PLAINTIFF'S MOTION FOR A NEW TRIAL MUST ALSO BE DENIED

"Juries are in the business of deciding material issues of fact. This case was no exception: A jury determined that the defendant police officer acted reasonably in a tense and dangerous situation. Now, the plaintiff wants another shot to convince another jury otherwise." *Goodwin*, 832 Fed. Appx. at 355. Plaintiff's motion for a new trial must be denied. Her arguments lack merit for the reasons that follow.

Rule 59 provides that a new trial may be granted "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). This standard is met "when a jury has reached a seriously erroneous result as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, *i.e.*, the proceedings being influenced by prejudice or bias." *Mosby-Meachem v. Memphis Light, Gas & Water Div.*, 883 F.3d 595, 606 (6th Cir. 2018) (internal quotation marks omitted).

Plaintiff sets forth seven grounds for a new trial. First, Plaintiff argues that the jury's verdict was against the manifest weight of the evidence because the manifest weight of the evidence

supports that King was fleeing at the time Mason began shooting. Second, Plaintiff argues that the jury instructions regarding recklessness were erroneous and prejudicial. Third, Plaintiff argues that the Court erred by precluding evidence regarding Plaintiff's "cover and communication theory." Fourth, Plaintiff argues that the Court erred by precluding evidence regarding Mason's prior uses of force. Fifth, Plaintiff argues that the Court erred by precluding evidence regarding Mason's post-incident reassignment. Sixth, Plaintiff argues that the Court erred by precluding evidence regarding whether or not Mason had submitted a DNA sample for comparison to the DNA samples found on the BB gun. Seventh, Plaintiff argues that the Court erred by admitting the testimony of Michael Ames. These arguments are without merit and are addressed below.

### A.    The Verdict was Not Against the Clear Weight of the Evidence

A verdict is against the clear weight of evidence only if the verdict was unreasonable. *See Barnes v. Owens-Corning, Fiberglas Corp.*, 201 F.3d 815, 820-21 (6th Cir. 2000) (citation omitted). "[I]f a reasonable juror could reach the challenged verdict, a new trial is improper." *Id.* at 821. To make the determination, a court "must compare the opposing proofs, weigh the evidence, and set aside the verdict only if it determines that the verdict is against the clear weight of the evidence." *United States v. L.E. Cooke Co.*, 991 F.2d 336, 343 (6th Cir. 1993) (citing *Woodbridge v. Dahlberg*, 954 F.2d 1231, 1234 (6th Cir. 1992)).

As shown above, the facts in evidence demonstrate that the jury's verdict was reasonably reached. King had stopped running, ignored commands, went for the gun in his waistband, pulled out the gun, and it was only when King raised the gun that Mason fired. And despite Plaintiff's arguments, King was not fleeing when he was shot.

Plaintiff contends that it is undisputed that the first shot fired by Mason was the head shot that entered King's temple. The only witness who testified that shot came first, however, was Plaintiff's expert, Jeremy Bauer, Ph.D. In his deposition (taken in 2021) and in his expert report

(disclosed in 2020), Bauer stated that the order of the head shot and abdomen shot were unknown and that he could not determine which of those two shots came first. DRAFT TRIAL TRANSCRIPT, JANUARY 18, 2023 (R.236-2 # 7547-49, 7556). Despite the fact that he did not receive or review any new evidence, he changed his opinion on this point when testifying at trial. *Id.* Defense counsel cross-examined Bauer regarding the inconsistencies in his opinion, and the jury was free to weigh his credibility in light of those inconsistencies. Thus, it is not "undisputed" that Mason's first shot struck King's head. Moreover, even if the head shot *was* first, it does not change the analysis in this case regarding whether Mason acted reasonably when faced with a felony suspect who pulled out a gun and raised it up while resisting arrest.

Plaintiff next contends that Mason's testimony about how the shooting occurred cannot be accurate because King was not directly facing Mason when the head shot occurred. Plaintiff, however, repeatedly misconstrues Mason's testimony about the direction King was facing when he fired his weapon. Mason has consistently testified that he shot at King's front, left side, and that Mr. King was canted away[3] from him and pulling a gun out of his waistband when he fired his weapon. DRAFT TRIAL TRANSCRIPT, JANUARY 20, 2023 (R.236-4 #7932-33, 7936, 7940, 7948). Mason's testimony that he shot at King's front, left side is consistent with Bauer's testimony regarding the bullet paths entering through King's left side. *See* DRAFT TRIAL TRANSCRIPT, JANUARY 18, 2023 (R.236-2 # 7541-43). Furthermore, even if King was looking away from Mason when Mason first fired his weapon, it does not mean the shooting was unreasonable. What matters

---

[3] Mason repeatedly testified that King was "canted" or turned slightly away from him—not facing him directly. DRAFT TRIAL TRANSCRIPT, JANUARY 20, 2023 (R.236-4 #7936, 7948).

is whether King was pulling the gun from his waistband and creating an imminent threat of physical harm to Mason or others at the time Mason fired.[4]

Plaintiff also misconstrues the trial testimony to support her contention that the manifest weight of the evidence shows that King was fleeing. Contrary to Plaintiff's assertion, Sister Skora specifically states that King *was not fleeing* when he was shot:

> Q Right. Okay. And he was running away when he was shot by the police officer?
>
> A No. When—when first time he called him and he gave him directions, he wants to run away because, you know, like, didn't think that police officer was, like, serious, so he tried to just run away.
>
> Q Right. So at that time he was moving his body trying—
>
> A Back and—yes, left and right to try—this way he can avoid him or this way he can avoid him.
>
> Q And was he still doing that, running left and right like that, at the time that the police officer shot him?
>
> A No, he was straight. He stood up. He stood up straight.

Skora Deposition Designation, pp. 54:23-55:15 (R.190-1).

Plaintiff also relies on Braxton's testimony, but Braxton provided numerous inconsistent accounts of what happened both before and during trial. Braxton admitted giving multiple intentionally false accounts of what had occurred and instructing other witnesses to lie to the police. The jury was able to weigh Braxton's testimony and determine his credibility. Plaintiff also points to William Scott's testimony that King was shot in the back to suggest that King was fleeing. Scott's testimony that King was shot in the back, however, is demonstrably wrong, as it is

---

[4] King would still pose a deadly threat to Mason, Reffitt, and others. In fact, Reffitt was on the other side of the parked Honda Accord, so even if King *was* looking away from Mason, then he would have been looking in Reffitt's direction when he was pulling the gun out of his waistband. *See* Draft Trial Transcript, January 18, 2023 (R.236-2 #7545).

disproven by the physical evidence, including the autopsy photos and Plaintiff's pathologist's testimony.

Comparing the proofs and weighing the evidence does not justify setting aside the jury's verdict. A motion for new trial should be denied "if the verdict is one which could reasonably have been reached." *Woodbridge*, 954 F.2d at 1234. "[A] verdict is not unreasonable simply because different inferences and conclusions could have been drawn or because other results are more reasonable." *Id*. The evidence in this case was not so clearly in Plaintiff's favor that no "reasonable juror could [have] reach[ed] the challenged verdict[.]" *Barnes*, 201 F.3d at 821. The evidence presented at trial demonstrated that Mason's conduct was neither objectively unreasonable nor reckless. A new trial on the basis of the weight of the evidence is therefore not appropriate.

**B.     The Jury Instructions Were Neither Erroneous Nor Prejudicial**

Jury instructions are not erroneous if "they adequately inform the jury of the relevant considerations and provide a basis in law for aiding the jury in reaching its determination." *Kitchen v. Chippewa Valley Schools*, 825 F.2d 1004, 1012 (6th Cir. 1987). "A judgment can be reversed if the instructions, viewed as a whole, were confusing, misleading and prejudicial." *Id*. at 1011; *see also Vance v. Spencer County Public Schools*, 231 F.3d 253, 263 (6th Cir. 2000)(describing standard of review for jury instructions). Plaintiff contends that the Court's jury instruction on recklessness does not accurately state the law and caused prejudice to Plaintiff. In particular, Plaintiff takes exception to that portion of the jury instruction which states: "[i]f you decide Officer Mason's actions were objectively reasonable, then you must find that he did not act recklessly…" Plaintiff's argument has no merit because the Court's instruction correctly stated the law.

If an officer's use of deadly force is objectively reasonable, it logically follows that officer cannot have been reckless, and, therefore, not entitled to immunity under R.C. 2744.03(A)(6), in shooting the decedent. *Pollard*, 780 F.3d at 404; *see also Ewolski v. City of Brunswick*, 287 F.3d

492, 517 (6th Cir. 2002); *Chappell v. City of Cleveland*, 585 F.3d 901, 916 n.3 (6th Cir. 2009);

*Williams v. Schismenos*, 258 F. Supp. 3d 842, 866 (N.D.Ohio 2017); *Mullins v. Cyranek*, 805 F.3d

760, 769 (6th Cir. 2015); *Lemmon v. City of Akron*, 2018 U.S. Dist. LEXIS 84085, \*33, 2018 WL

2289865; *Wilkerson v. City of Akron*, 906 F.3d 477, 483-484 (6th Cir.2018); *Hicks*, 958 F.3d at

441.

 Plaintiff notably failed to cite two recent fatal police-involved shooting cases, *Cooper v.

City of Columbus* and *Jordan v. Howard*, involving Plaintiff's same attorneys, which are directly

adverse to the arguments that she now makes on this same issue. In *Cooper v. City of Columbus*,

2023 U.S. App. LEXIS 2629, a case decided 21 days before Plaintiff filed her motion for a new

trial, the Sixth Circuit held:

> Ohio law immunizes police officers from suit unless their "acts or
> omissions were with malicious purpose, in bad faith, or in a wanton
> or reckless manner." Ohio Rev. Code § 2744.03(A)(6)(b). Plaintiff
> contends that the officers acted in a reckless manner by "escalating"
> the situation—looking for criminal activity and then opening the car
> door and grabbing Bell-McGrew's hand—and that statutory
> immunity cannot lie given his contention that an officer's conduct
> can be both objectively reasonable under the Fourth Amendment
> and reckless for purposes of Ohio's statutory immunity provision.
> We disagree.
>
> Plaintiff is correct that "[s]tatutory immunity under Ohio law, which
> applies to state law claims, is distinct from federal qualified
> immunity." *Stewart v. City of Euclid*, 970 F.3d 667, 676 (6th Cir.
> 2020). That notwithstanding, we have said many times over that
> "[w]hen federal qualified immunity and Ohio state-law immunity
> under § 2744.03(A)(6) rest on the same questions of material fact,
> we may review the state-law immunity defense through the lens of
> the federal qualified immunity analysis." *Downard for Est. of
> Downard v. Martin*, 968 F.3d 594, 602 (6th Cir. 2020) (internal
> citation omitted). And in the context of a police officer's use of
> deadly force, the analysis coincides: "[I]f an officer has probable
> cause to believe that a person poses an immediate threat of serious
> injury, the officer's use of deadly force against that person is not
> reckless." *Sabo v. City of Mentor*, 657 F.3d 332, 337 (6th Cir. 2011).
> Here, because both officers reasonably perceived a serious threat of
> injury, they are entitled to statutory immunity under Ohio law.

13

> *Hicks*, 958 F.3d at 441 (holding that because an officer's use of deadly force was reasonable, he was entitled to statutory immunity under Ohio law); *Mullins*, 805 F.3d at 769 ("Because we find that [the officer]'s use of deadly force was not objectively unreasonable under the circumstances, it follows that he did not act with 'malicious purpose, in bad faith, or in a wanton or reckless manner,' as required to avoid statutory immunity under Ohio law."). Nor does it matter that they "escalated" the situation—no rational juror could conclude their actions displayed "conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Downard*, 968 F.3d at 602 (quoting *Argabrite v. Neer*, 149 Ohio St. 3d 349, 2016- Ohio 8374, 75 N.E.3d 161, 164 (Ohio 2016)).

*Cooper*, 2023 U.S. App. LEXIS 2629, *25-27, 2023 FED App. 0066N (6th Cir.), 2023 WL 1434055.

In *Jordan v. Howard*, 2d Dist. Montgomery No. 29190, 2021-Ohio-4025, Ohio's Second Appellate District held that the finding of objective reasonableness meant that the plaintiff's state-law wrongful death claim was barred by collateral estoppel. The *Jordan* court stated:

> The trial court concluded that collateral estoppel applied because the same evidence would sustain both the state issue and the issue litigated in federal court. We agree. The underlying facts are the same if the issue were phrased as whether the officers acted recklessly or if it were phrased as whether the officers acted reasonably for purposes of qualified immunity. Notably, "collateral estoppel prohibits relitigation of "a fact or a point that was actually and directly at issue in a previous action." *Fort Frye Teachers Assn.*, 81 Ohio St.3d at 395, 692 N.E.2d 140.

> Here, the federal district court granted summary judgment to the police officers on the basis of qualified immunity, finding that "their conduct was objectively reasonable and did not violate clearly established law." *Jordan I*, 440 F.Supp.3d at 857. The court also stressed that "[t]he use of deadly force by a police officer is justified 'when the factual situation revealed a perceived serious threat of physical harm to the officer or others in the area from the perspective of a reasonable officer.'" *Id.*, quoting *Sample v. Bailey*, 409 F.3d 689, 697 (6th Cir.2005). As indicated previously, the federal case was resolved on summary judgment, and the parties had a full opportunity to litigate.

14

\*   \*   \*

In view of the findings in the federal district and appellate courts that the officers' use of deadly force (resulting in McShann's death) was reasonable, and that they did not violate established law, it would be factually and logically inconsistent to conclude in this action that the officers were reckless in causing McShann's death and, therefore, were not entitled to immunity under R.C. 2744.03(A)(6). Accordingly, the trial court did not err in applying collateral estoppel to the wrongful death claim brought by Jordan. As a result, the first assignment of error is without merit and is overruled.

*Jordan*, at ¶ 71-75.

Instead of citing *Cooper* and *Jordan*, which are two cases directly on point, Plaintiff cited to *Wilson v. Gregory* for the proposition that "the question of whether a defendant's actions 'constituted a violation of particular federal constitutional rights under § 1983 is a substantially different question than whether [the defendant] acted with malicious purpose, in bad faith, or in a wanton or reckless manner as Ohio law uses those terms.'" PLAINTIFF'S MOTION (R.236 #7262) (quoting *Wilson v. Gregory*, 3 F.4th 844, 860-861 (6th Cir. 2021)).  In *Wilson*, however, the federal qualified immunity analysis turned on whether the constitutional right at issue was "clearly established." Consequently, the question of state-law immunity under Ohio Revised Code 2744.03(a)(6) could not be reviewed "through the lens of the federal qualified immunity analysis" because Ohio statutory immunity does not turn on whether a right was clearly established. *Wilson*, 3 F.4th at 861. *Wilson* is not even a use of force case, much less a case in which an officer's use of deadly force was found to be objectively reasonable, such as in *Pollard*, *Cooper*, or *Jordan*. In this case, Mason's use of deadly force was objectively reasonable, so Mason could not have been reckless. *Pollard*, 780 F.3d at 404. And interestingly, Plaintiff is now essentially arguing the jury could have found bad faith or malicious purpose for the shooting based on Braxton's heavily disputed and contradicted accusation that Mason said a racial slur after the shooting. But Plaintiff

voluntarily dismissed her Equal Protection claim at trial and decided to proceed only on recklessness for her state law claim.

It is also important to note that Ohio Supreme Court defines recklessness as follows:

> Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct.

*Anderson v. City of Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, ¶ 1 (syllabus p. 4). Thus, the jury instruction in this case correctly stated:

> "Reckless conduct refers to an act done with knowledge or reason to know of facts that would lead a reasonable person to believe that the conduct creates an unnecessary risk of physical harm and that this risk is substantially greater than that necessary to make the conduct negligent.

Claims of error in jury instructions require the instructions to be reviewed as a whole in order to determine whether they adequately informed the jury of the relevant considerations and provided a basis in law for aiding the jury in reaching its decision. *Beck v. Haik*, 377 F.3d 624, 636 (6th Cir. 2004) (citing *O-So Detroit, Inc. v. Home Ins. Co.*, 973 F.2d 498, 502 (6th Cir. 1992)). The relevant inquiry is if the instructions, when viewed as a whole, were confusing, misleading and prejudicial. *United States v. Wells*, 211 F.3d 988, 1002 (6th Cir. 2000); *see also Barnes*, 201 F.3d at 822. As shown above, the Court's recklessness instruction was a correct statement of the law and did not confuse or mislead the jury. Plaintiff is not entitled to a new trial based on the jury instructions.

### C.     The Evidentiary Rulings Were Neither Erroneous Nor Prejudicial

The Court's evidentiary rulings in this case were not erroneous. The parties were given ample opportunities to present their respective arguments and the Court thoroughly articulated its reasons for its evidentiary rulings on the record. Plaintiff has presented no new argument that

would cause the Court to resolve that any of its earlier decisions were in error. Furthermore, an erroneous evidentiary ruling amounts to reversible error, justifying a new trial, only if it was not harmless; that is, only if it affected the outcome of the trial. *Cummins v. BIC USA, Inc.*, 727 F.3d 506, 510 (6th Cir. 2013). And because "[t]he district court has broad discretion to determine questions of admissibility; an evidentiary ruling is not to be lightly overturned." *Cummins*, 727 F.3d at 510. With that standard in mind, each of Plaintiff's evidentiary arguments lack merit for the reasons that follow.

### 1. Plaintiff's Cover and Communication Theory

The Court properly excluded Plaintiff's cover and communication theory because it was irrelevant to the sole issue before the jury: whether Mason had probable cause to believe he was at risk of serious physical harm at the moment he used force. Plaintiff's new argument that her cover and communication theory was related to some scenario in which Mason shot King merely because King was armed, is clearly wrong. Not only did Mason never argue or insinuate that he shot King merely because King was armed, Mason's own expert, Thomas Paige, specifically testified that Mason ***would not*** have complied with national policing standards if he shot King but King never reached for the gun in his waistband. DRAFT TRIAL TRANSCRIPT, JANUARY 23, 2023 (R.236-5 #8150-51). And Mason's closing argument specifically stated: "This case truly boils down to one simple question: Did Tyre King pull out that gun? The answer to that question is yes. That means Bryan Mason had every right to defend himself. That means this was an objectively reasonable use of force." DRAFT TRIAL TRANSCRIPT, JANUARY 24, 2023 (R.236-6 #8286).

Plaintiff was not attempting to argue that Mason should have taken cover at the moment that King was pulling the gun. Rather, Plaintiff was attempting to argue that had Mason taken cover when he first encountered King, then the confrontation would not have been deadly and

Mason would not have had to use deadly force once King was pulling the gun. In his deposition, Plaintiff's expert witness Tucker opined that the shooting was unreasonable because "[i]t wasn't necessary for [Mason] to shoot King because [Mason] was so close to the car right there he could have taken concealment and cover and then communicated with King. If King came out and pointed a toy gun at him or any kind of gun or whatever, he could have communicated with him and said, drop it, you know, avoided the shooting…" TUCKER DEP. 109 (R.128-1 #1917). The Sixth Circuit has specifically considered and rejected Tucker's "cover and communication" theory, finding it to be irrelevant and inadmissible in a police-involved shooting case. *Goodwin,* 832 F. App'x at 358.

Plaintiff's cover and communication theory is directly contrary to the holdings of the Sixth Circuit and United States Supreme Court and was properly excluded. Courts in Section 1983 claims perform a segmenting analysis. *See Livermore ex rel Rohm v. Lubelan*, 476 F.3d 397, 406 (6th Cir. 2007). The relevant inquiry in such an analysis is "whether the force used to effect [the seizure] was reasonable in the totality of the circumstances, not whether it was reasonable for the police to create the circumstances." *Id*. (quoting *Carter v. Buscher*, 973 F.2d 1328, 1332 (7th Cir. 1992)). The issue before the jury was whether, at the moment that Mason the shot King, his use of deadly force was objectively reasonable. *See Goodwin,* 832 F. App'x at 358, citing *Cnty. of Los Angeles v. Mendez*, 137 S. Ct. 1539, 1547, 198 L. Ed. 2d 52 (2017) (emphasis added). As such, the cover and communication theory was irrelevant to Plaintiff's Section 1983 claim and could have prejudiced the jury.

Regarding Plaintiff's state-law claim, the result under the analysis used by Ohio's courts is identical. The Tenth District Ohio Court of Appeals found "[t]he 'relevant inquiry before the court [was] whether [Officer Mason], from his own perspective, reasonably had probable cause to

believe that he [was] at imminent risk' of serious physical harm when he fired his weapon." *Hayes v. Columbus*, 2014-Ohio-2076, 2014 WL 2048176, at *11 (citing *Kendzierski v. Carney*, 2005-Ohio-6735 at ¶ 29 (Ct. App.)). This analysis, like the federal Section 1983 analysis, does not consider whether an officer had the opportunity to take cover and communicate before he engaged with a subject. The only relevant question is, at the moment he used force, did the officer have probable cause to believe he was at imminent risk of serious physical harm. Under this inquiry, Plaintiff's cover and communication theory is irrelevant. In ruling upon Mason's motion *in limine*, the Court correctly saw no reason to ignore the Tenth District of Ohio Court of Appeals' interpretation of state law.

For the reasons stated above, the Court correctly excluded Plaintiff's cover and communication theory. Furthermore, regarding Plaintiff's state-law claim, the evidentiary ruling did not, and could not, affect the outcome of the trial. Mason's use of deadly force was the material fact underlying Plaintiff's federal and state-law claims. The shooting would have been a battery giving rise to a wrongful death claim had Mason used more force than is objectively reasonable under the circumstances. But the jury found Mason's use of deadly force to be objectively reasonable. Thus, Mason could not have been reckless, as explained above, even if Plaintiff's cover and communication theory was presented to the jury for the purpose of Plaintiff's state-law claim.

### 2. Mason's Prior Uses of Force

The Court properly excluded evidence of Mason's prior uses of force. Rule 404(b)(1) of the Federal Rules of Evidence states "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." If evidence of Mason's prior uses of force was admitted, it would have done exactly that. Further, Mason's prior uses of force are not probative of his motive or

intent in this case. Mason's decision to use his weapon in the past, in entirely different factual situations, is not probative of his motive or intent in the King incident.

Mason's prior uses of force were not even bad acts, as contemplated by Rule 404(b)(1). Mason's counsel described the prior shootings by Mason in great detail during the January 6, 2023 final pretrial conference. In that description, all the prior shootings were justified and lawful. Plaintiff's counsel were asked if they disagreed with the defense characterization of the shootings, to which they responded in the negative. Mason was never disciplined for any of these actions, and no civil claims were successfully prosecuted against Mason. As such, no reasonable juror could conclude that Mason's prior uses of force are relevant to the use of force at hand. *Huddleston v. United States*, 485 U.S. 681, 689 (1988). Thus, the Court correctly decided that evidence of Mason's prior uses of force does not fit into the 404(b)(2) exceptions.

The Court also correctly decided that even if the prior uses of force did fit into one 404(b)(2) exception or another, they would still not be admissible. The Court would exclude them as significantly more prejudicial than probative under Fed. R. Evid. 403. Mason's prior instances of force have very little relevance to his motive and intent here. There is no evidence in the record that Mason's previous shootings were anything other than lawful. The prejudice to Mason, on the other hand, would be great. The other acts would have likely overwhelmed the facts at issue in this trial. The prior shootings and use of force would have focused on matters other than the facts of this case.

Further, while it appears that no court in the Sixth Circuit has directly addressed this exact issue in the civil context, courts in similar positions have excluded similar evidence, and such exclusions have been upheld. *See Helfrich v. Lakeside Park Police Dep't,* 497 F. App'x 500, 507 (6th Cir. 2012); *Simmons v. Napier*, 626 F. App'x 129, 135 (6th Cir. 2015).

For the reasons stated above, the Court correctly excluded evidence of Mason's prior uses of force. Furthermore, regarding Plaintiff's state-law claim, the evidentiary ruling did not, and could not, affect the outcome of the trial. As stated above, the jury found Mason's use of deadly force to be objectively reasonable. Thus, Mason could not have been reckless, regardless of his prior uses of force.

### 3. Mason's Post-Incident Reassignment

The Court properly excluded evidence of Mason's post-incident reassignment. The issue before the jury was whether, at the moment that Mason shot King, his use of deadly force was objectively reasonable. This question does not revolve around Chief of Police' opinion of Mason's suitability for a patrol assignment. In addition, the Chief did not make a formal determination of wrongdoing. Rather, the City wanted to protect an officer who had been in an extremely stressful incident and who was receiving death threats. MASON DEP. 21-25 (R.132-1); JACOBS DEP. (R.141-12 #4486-89); BASH DEP. (R.141-5 #3955-56). Mason's later reassignment is not probative of his earlier actions. Further, such evidence could be highly prejudicial and is excludable under Rule 403. There was a real possibility the evidence Mason was reassigned could bias the jury against him.

### 4. Lack of DNA Sample

The Court properly excluded evidence as to whether Mason was asked to submit a DNA sample during CPD's investigation of the incident. The trial in this case took place over six years after the date of the incident and over four years after this lawsuit was filed. No witness ever testified that Mason touched King's gun, or took the gun off of King's body and threw it, or

destroyed the crime scene in any way.[5] And despite the broad scope of civil discovery, Plaintiff never asked to compare Mason's DNA to the DNA samples found on King's gun. Nor did Plaintiff disclose the DNA lab results (R.236-6 #8303-14) as a trial exhibit she intended to use.

Plaintiff admits that she was intending to offer the DNA collection evidence for the following reason:

> The evidence adduced at trial shows that Tyre did not throw the BB gun. If it was not Tyre, it must have been someone else and Defendant Mason was the first person to touch Tyre, where he admittedly was looking for the BB gun. A jury could infer that Mason found the BB gun and threw it. The evidence regarding DNA collection tells the jury that the evidence does not exclude this possibility.

PLAINTIFF'S MOTION (R.236 #7274). Thus, with the lack of any factual development, Plaintiff wanted the jury to speculate that Mason must have committed a serious offense of destroying a crime scene by moving key evidence.[6] Plaintiff's theory is unsupported by any actual evidence and therefore has no probative value. The facts in the record certainly do not create an inference that Mason destroyed a crime scene. *See* DRAFT TRIAL TRANSCRIPT, JANUARY 23, 2023 (R.236-5 #8182-83).

The Court correctly determined:

> THE COURT: Was this officer's DNA on the gun?
>
> MR. SIDOTI: There's two unidentified males on the gun, and they have can't say it's in or out of Demetrius Braxton and Tyre King.

---

[5] In fact, Reffitt testified that upon being shot, King dropped his gun which hit the parking block in front of the parked car and landed in front of the car's driver's side front tire. DRAFT TRIAL TRANSCRIPT, JANUARY 23, 2023 (R.236-5 #8072-74, 8086, 8098).

[6] Plaintiff wanted the jury to speculate as to all of the following: (1) if Mason was asked to submit a DNA sample during the investigation of the incident, that DNA sample would have shown that Mason touched King's gun; (2) if Mason touched King's gun, that must have meant that Mason threw King's gun under the parked car's tire; (3) if Mason threw King's gun under the parked car's tire, that must have meant that King never pulled the gun out of his waistband; (4) if King never pulled the gun out of his waistband, then Mason must have shot King with no justification and nefariously altered a crime scene to cover up a crime.

> THE COURT: If it were his DNA, I would let you use it, but it's male unknown. I don't think there's any probative value to it, not when the gun itself isn't disputed.

DRAFT TRIAL TRANSCRIPT, JANUARY 20, 2023 (R.236-4 #7944-46). The Court also correctly determined:

> But the gun toss—you know, you're suggesting that he took the gun off a body and threw it over there.
>
> ***
>
> You know, a jury is allowed to do one thing and not another. They are allowed to use their common sense and draw inferences. One fact exists from that they can infer another fact exists. At the same time, though, these instructions—that's why we always tell them you take the whole packet, not one page at a time. There's an assumption that the law was followed unless there's proof otherwise. And if you were asking—if the theory here were that one witness who said he threw the gun and this is where the gun lands, you can make that argument. But there's no witness that says that. I would have to assume not just a different set of facts but a different set of facts and basically something akin to a criminal conspiracy to put the gun in the place where it wasn't at a crime scene. So respectfully I get the argument. It just isn't developed with enough facts. Otherwise, it ends up in the realm of speculation.

DRAFT TRIAL TRANSCRIPT, JANUARY 23, 2023 (R.236-5 #8188-89).

The Court's reasoning is sound. While this was not a criminal trial, "charges of conspiracy are not to be made out by piling inference upon inference." *Direct Sales Co. v. United States*, 319 U.S. 703, 711, 63 S. Ct. 1265, 87 L. Ed. 1674 (1943). Plaintiff, who bore the burden of proof, was attempting to invite the jurors to draw inference upon inference upon inference in the hopes that they would speculate that Mason might have pulled the gun out of King's waistband and threw it under the car's tire. Plaintiff's theory lacked any probative value, was highly prejudicial, and is excludable under Rule 403.

      5.      **Michael Ames**

The Court properly admitted the testimony of Michael Ames. Ames' testimony regarding the robbery helped provide context to the jury to explain how and why Mason encountered King. *See Hood v. Bare, et al.*, 2:17-cv-471, MOTION *IN LIMINE* ORDER, p. 4-5 (R. 321), citing *Old Chief v. United States*, 519 U.S. 172, 189 (1997). If the jury did not hear about the robbery, King's flight, his resistance, and the location of the gun in King's waistband when he first encounters Mason, the case would not have made any sense. *See Old Chief*, 519 U.S. at 189 (explaining jurors "who hear a story…may be puzzled at the missing chapters").

Testimony from Ames was also relevant to showing the totality of the circumstances faced by Mason at the time he used force. The testimony went to the controlling *Graham* factors, including: 1) the severity of the crime at issue; 2) whether the suspect poses an immediate threat to the safety of officers or others; and 3) whether the suspect is actively attempting to resist arrest or evade arrest by flight. Importantly, Ames got an excellent view of King's gun as he was being robbed and he thought it was real. DRAFT TRIAL TRANSCRIPT, JANUARY 20, 2023 (R.236-4 #7830-32).

Additionally, Plaintiff's choice to call William Scott at trial necessarily made Ames' testimony admissible to challenge Scott's credibility. Ames' description of the robbery (DRAFT TRIAL TRANSCRIPT, JANUARY 20, 2023 (R.236-4 #7831-33) was dramatically different than Scott's DRAFT TRIAL TRANSCRIPT, JANUARY 19, 2023 (R.236-3 #7612-18).

Furthermore, evidence about the robbery went to King's damages and causation. The jury could consider King's behavior as Plaintiff sought damages for King.

For all of the reasons presented in this memorandum, a new trial on the basis of the Court's evidentiary rulings is not appropriate.

## V. CONCLUSION

For the reasons stated above, Mason respectfully asks this Court to deny Plaintiff's motion for judgment as a matter of law or alternatively for a new trial.

Respectfully submitted,

/s/ Westley M. Phillips
Westley M. Phillips (0077728) – LEAD
Sheena D. Rosenberg (0088137)
Alana Valle Tanoury (0092265)
*Assistant City Attorneys*
CITY OF COLUMBUS, DEPARTMENT OF LAW
ZACH KLEIN, CITY ATTORNEY
77 North Front Street, Columbus, Ohio 43215
(614) 645-6945 / (614) 645-6949 (fax)
wmphillips@columbus.gov
sdrosenberg@columbus.gov
avtanoury@columbus.gov
*Attorneys for Defendant Bryan C. Mason*

## CERTIFICATE OF SERVICE

I hereby certify that, on **March 9, 2023**, I electronically filed the foregoing with the Clerk of the Court by using this Court's e-Filing System, which will send a notice of this electronic filing to all counsel of record in this matter.

/s/ Westley M. Phillips
Westley M. Phillips (0077728)