UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DEARREA KING,**

    **Plaintiff,**

  v.

**CITY OF COLUMBUS, OHIO, et al.,**

    **Defendants.**

Case No. 2:18-cv-1060
Judge Edmund A. Sargus, Jr.
Magistrate Judge Elizabeth Preston Deavers

## OPINION & ORDER

This matter arises on Plaintiff's Motion for Judgment Notwithstanding the Verdict or in the Alternative, Motion for a New Trial.  (ECF No. 236.)  Also considered is Plaintiff's Motion for Extension of Time.  (ECF No. 238.)  For the reasons stated herein, Plaintiff's Motion is **DENIED**.

    **I.**    **Background**

Plaintiff Dearrea King, the grandmother of Tyre King, filed suit against Defendants Officer Brian Mason and the City of Columbus.  (ECF No. 1.)  During pretrial litigation, the Court granted summary judgment to the City, dismissing it from the case.  (ECF No. 160.)  Plaintiff's claims against Office Mason survived.

Beginning on January 17, 2023, the Court held trial on Plaintiff's remaining claims.  (ECF No. 224.)  Plaintiff brought a 42 U.S.C. § 1983 excessive force claim, a 42 U.S.C. § 1983 Equal Protection claim, and a state law claim under ORC § 2125.01 against Defendant Mason.  (ECF No. 1, at 13–16.)  Before the jury was given its charge, Plaintiff voluntarily dismissed her

Equal Protection claim and chose to proceed only on a recklessness theory for her state law claim. (January 23 Trial Transcript, ECF No. 246, at 968.) Plaintiff also made an oral motion Fed. R. Civ. P. 50(a)(1), requesting judgment in her favor as a matter of law. (*Id*., at 964.) The Court denied her motion. (*Id*., at 965)

The jury returned a verdict for Defendant, finding that Officer Mason did not violate Tyre King's constitutional right to be free from excessive force, and that Officer Mason did not act recklessly and batter Tyre King. (ECF No. 233.) Within 28 days of the jury verdict, Plaintiff filed her Motion or Judgment Notwithstanding the Verdict or in the Alternative, Motion for a New Trial on February 22, 2023. (ECF No. 236.) Defendant responded on March 9, 2023. (ECF No. 237.) Plaintiff replied later that month, on March 24, 2023. (ECF No. 238.) This motion is fully briefed and ready for decision.

II.     **Standard**

Under Rule 50 of the Federal Rules of Civil Procedure, a court may grant a party judgment in its favor "if a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). If denied at trial, the proponent may later renew their motion. "The grounds for granting a Rule 50(b) motion are limited. Because such a motion is the 'renewal' of the pre-verdict motion, it may only be granted on the same grounds advanced in a pre-verdict motion." *Kay v. United of Omaha Life Ins. Co*., 709 F. App'x 320, 328 (6th Cir. 2017). Fed. R. Civ. P. 50(b) covers renewed motions for judgment as a matter of law. It is as follows:

> (b) Renewing the Motion After Trial; Alternative Motion for a New Trial. If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the

> court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment—or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged—the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:
>     (1) allow judgment on the verdict, if the jury returned a verdict;
>     (2) order a new trial; or
>     (3) direct the entry of judgment as a matter of law.
>
> *Id*.

A court may grant a party's renewed motion "only if in viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party." *Noble v. Brinker Intern., Inc.*, 391 F.3d 715, 720 (6th Cir. 2004) (quoting *Gray v. Toshiba Am. Consumer Prods., Inc.*, 263 F.3d 595, 598 (6th Cir. 2001)). When making its decision, a court may "not weigh the evidence, evaluate the credibility of the witnesses, or substitute [its] judgment for that of the jury." *Mosby-Meachem v. Memphis Light, Gas & Water Division*, 883 F.3d 595, 602 (6th Cir. 2018) (quoting *Wehr v. Ryan's Family Steak Houses, Inc.*, 49 F.3d 1160, 1152 (6th Cir. 1991)). In other words, this Court may grant Plaintiff's motion "only if reasonable minds could not come to a conclusion other than one favoring the movant." *Id*. (quoting *Garrison v. Cassens Transp. Co.*, 334 F.3d 528, 537 (6th Cir. 2003)).

Under Rule 59 of the Federal Rules of Civil Procedure, a new trial may be granted for "any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). In the Sixth Circuit, courts "uphold the verdict if it was one which the jury reasonably could have reached; we cannot set it aside simply because we think another result is more justified." *Armisted v. State Farm Mut. Auto. Ins. Co.*, 675 F.3d 989, 995 (6th Cir. 2012) (citing *Denhof v. City of Grand Rapids*, 494 F.3d 534, 543 (6th Cir. 2007)). The Circuit has been clear that "'a new trial is warranted when a jury has reached a 'seriously

erroneous result' as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias.'" *Mosby-Meachem v. Memphis Light, Gas & Water Div.*, 883 F.3d 595, 606 (6th Cir. 2018) (quoting *Holmes v. City of Massillon, Ohio*, 78 F.3d 1041, 1045 (6th Cir. 1996)). "[I]n finding that a jury's verdict was against the weight of the evidence, the judge must, to some extent at least, substitute[] his judgment of the facts and the credibility of the witnesses for that of the jury." *Id.* Courts are reminded that they may not set aside a jury's verdict "simply because it believes that another outcome is more justified." *Denhof v. City of Grand Rapids*, 494 F.3d 534, 543 (6th Cir. 2007) (citing *TCP Indus., Inc. v. Uniroyal, Inc.*, 661 F.2d 542, 546 (6th Cir. 1981)).

### III. Analysis

#### a. Judgment as a Matter of Law Pursuant to Rule 50(b)

Plaintiff maintains that she is "entitled to judgment as a matter of law on her claim that Defendant Mason violated the Fourth Amendment when he shot Tyre King and her claim that Mason's actions recklessly caused Tyre's wrongful death." (ECF No. 236, at 2.) Plaintiff explains that "the fact that Tyre King never raised the BB gun at any person and only pointed it down is undisputed. Based on these undisputed facts, Defendant Mason used excessive deadly force and Plaintiff is entitled to judgment as a matter of law." (*Id.*, at 3.) Defendant does not dispute her summary of the law but does disagree with Plaintiff's presentation of the events. He argues that the facts presented at trial establish that "a reasonable jury would have a legally sufficient evidentiary basis to find for Mason on both the Fourth Amendment excessive force claim and the state-law wrongful death claim." (ECF No. 237, at 6.) As support, Defendant points in part to the following facts, confirmed by its expert witness:

4

      1. Mason was responding to a serious, violent crime. Id. (R.236-4 #7806-07).

      2. King attempted to evade arrest by flight. Id. (R.236-4 #7808).

      3. King resisted arrest. *Id*.

      4. It was reasonable to think that King's gun was a real firearm because it looks like a gun. *Id*. (R.236-4 #7802).

      5. Handguns are deadly. *Id.* (R.236-4 #7810).

      6. An armed suspect can pull a handgun from his waistband, aim, and shoot in as little as two-tenths of a second. *Id.* (R.236-4 #7813-14).

      7. King's age was not relevant to the threat he posed. *Id.* (R.236-4 #7814).

      8. This was a tense, uncertain, and rapidly evolving situation. *Id.* (R.236-4 #7808).

(ECF No. 237, at 6.)

Under these facts, Defendant argues, Officer Mason acted reasonably in shooting Tyre King.

The Sixth Circuit "has held that the right to be free from excessive force is a clearly established Fourth Amendment right." *Neague v. Cynkar*, 258 F.3d 504, 507 (6th Cir. 2001). The Circuit, and its associated lower courts, employ "an objective-reasonableness test to determine whether an officer has used excessive force in violation of the Fourth Amendment, asking 'whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Thornton v. City of Columbus*, 727 F. App'x 829, 836 (6th Cir. 2018) (quoting *Graham v. Connor*, 490 U.S. 386, 397, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)). The "trial court must perform a 'careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Id*. (quoting *Graham v. Connor*, 490 U.S. 386, at 396.)  The balancing test requires courts to pay "careful

attention to the facts and circumstances of each particular case, including [(1)] the severity of the crime at issue, [(2)] whether the suspect poses an immediate threat to the safety of the officers or others, and [(3)] whether he is actively resisting arrest or attempting to evade arrest by fight." *Graham v. Connor*, 490 U.S., at 396 (parentheses added).

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. In other words, courts "consider the officer's reasonableness under the circumstances he faced at the time he decided to use force." *Thomas v. City of Columbus*, 854 F.3d 361, 365 (6th Cir. 2017) (citing *Livermore v. Lubelan*, 476 F.3d 397, 406 (6th Cir. 2007). Courts apply this approach because "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97. The Sixth Circuit cautions that "[i]n making this judgment, we must be careful not to substitute 'our personal notions of proper police procedure for the instantaneous decision of the officer at the scene.'" *Mullins v. Cyranek*, 805 F.3d 760, 766 (6th Cir. 2015) (quoting *Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992). "Instead, this court must adopt a 'built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case.'" *Thornton v. City of Columbus*, 727 F. App'x at 836 (quoting *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002)).

The Sixth Circuit has made clear that this test is fact specific. Relevant to this case, the Circuit "has recently rejected a 'categorical rule that force can only be reasonable if a suspect raises his gun.'" *Thornton v. City of Columbus*, 727 F. App'x 829, 838 (6th Cir. 2018) (quoting *Thomas v. City of Columbus*, 854 F.3d 361 (6th Cir. 2017)).

6

Given this prior precedent, and the facts presented at trial, the Court must concur with Defendant. Despite Plaintiff's assertions, the jury heard sufficient evidence to conclude that Officer Mason's shooting was unreasonable. While the jury did not hear that Tyre King pointed a gun at Officer Mason, such an action is not always required before an officer can respond with deadly force. Further, the jury did hear that King was in the process of drawing his weapon.[1] Officer Mason testified that King "had pulled the firearm out of his waistband. It had cleared his waistband, but he did not point it at me." (January 18 Trial Transcript, ECF No. 241, at 205.)

The surrounding events, when examined in the light most favorable to Defendant, also support the conclusion that Officer Mason's acted reasonably. First, Officer Mason was responding to an armed robbery, during which the suspect pointed a gun at the victim. (*Id*., at 223.) While Officer Mason was not at the scene of the crime, the jury heard testimony that dispatch informed him that the suspect was "wearing all black, including a black hoodie… baggy pants." (*Id*., at 186.) The jury also heard that Demetrius Braxton, who was with Tyre during his confrontation with Officer Mason, matched the dispatcher's description. (*Id.*, at 185–86.) Given these facts, the jury could conclude that Officer Mason was responding to an extremely severe crime, and that he knew Braxton and King were suspects.

The jury could have also reasonably concluded that King was actively resisting arrest and that he posed an immediate threat to Officer Mason. Officer Mason testified that he ordered King and Braxton to "get down," but that King didn't comply. (January 18 Trial Transcript, ECF No. 241, at 184.) Instead of complying, Officer Mason observed King grabbing "the

---

[1] This weapon was a BB gun. However, Officer Mason did not, and had no reasons to, know this at the time of the shooting. As courts must perform their analysis "from the perspective of a reasonable officer on the scene" the Court will treat the weapon as if it were real. *Graham*, 490 U.S. at 396

7

firearm that was in his waistband and [begin] tugging on the firearm multiple times." (*Id*., at 199.) He did so up to five times before Officer Mason fired his first shot. (*Id*.). Given these facts and considering the mere seconds in which this interaction took place, the *Graham* balancing test supports the conclusion that deadly force was used reasonably. As such, the Jury's verdict cannot be overturned.

Additionally, the Court already addressed this question in our order on Defendant's motion for summary judgment. There, we found that:

> According to Mason, King went for the gun in his waistband but had trouble pulling it out, tugging on it at least three times. According to Mason, it was only when King raised the gun that Mason fired. If that is indeed what happened, then Mason's decision to use deadly force was not unreasonable. Regrettable, tragic, but not unreasonable…

(ECF No. 150, at 9.)

Plaintiff's Motion for Judgment as a Matter of Law Pursuant to Rule 50(b) is **DENIED**.

### b. New Trial Pursuant to Rule 59(a)

Plaintiff argues that she is entitled to a new trial because of several more than harmless errors. (ECF No. 236, at 7.) Plaintiff points to numerous mistakes which, she contends, caused the jury to return an unjust verdict. The Court addresses Plaintiff's points in turn below. They are not well taken.

#### i. Manifest Weight of the Evidence

Plaintiff maintains that she is entitled to a new trial because the "verdict was against the manifest weight of the evidence." (ECF No. 236, at 8.) She states that "[c]omparing the proofs and weighing the evidence, it is clear that the manifest weight of the evidence supports that Tyre King was fleeing when Defendant Mason shot him three times." (*Id*.) "This is a critical fact,

8

because if Tyre was fleeing, then the use of force was objectively unreasonable." (*Id*.) Defendant disagrees, arguing that the clear weight of the evidence does not support the contention that Tyre King was fleeing when he was shot. (ECF No. 237, at 9.) The Court concurs with Defendant.

As support for her claim, Plaintiff first states that "the undisputed evidence demonstrated that Defendant Mason's first shot was the head shot that entered Tyre King's temple." (ECF No. 236, at 8.) Given the location of the bullet wound, Plaintiff argues "this requires the Court to find that Tyre King was not facing Mason at the time he pulled the trigger, and instead to find that Tyre was facing away from Mason at the time that Mason began shooting." (*Id*., at 9.) However, the facts elicited at trial do not indisputably establish the order of the shots.

The only witness who testified to as to the order of shots was Plaintiff's expert Dr. Jeremy Bauer. When asked on direct examination "what you believe may be more likely as far as what the first shot may have been," Dr. Bauer responded "[l]ikely the shot to his head." (January 18 Trial Transcript, ECF No. 241, at 260.) However, on cross examination, Dr. Bauer admitted that, during deposition, he opined that he "couldn't tell the order of" the first two shots fired at King. (*Id*., at 306.) Meaning that, at least at the time of his deposition, Dr. Bauer did not know if the first shot hit King's head. Dr. Bauer also admitted that he repeated this conclusion in his expert report. (*Id*.) Given these inconsistencies, a reasonable jury could disregard, or place less weight upon Dr. Bauer's testimony. Further, even if the first shot was to the side of King's head, it does not necessarily follow that King must have been fleeing at the time. It does not follow that King was actively "running away." (ECF No. 236, at 8.) While his head may not have been facing Officer Mason, his body may have been. This is especially true given the short

9

duration and chaotic events of the incident. The jury could reasonably conclude that King merely turned his head at the time of the shooting.

Plaintiff also relies on the testimony of Sister Anna Skora, Demetrius Braxton, and William Scott for support. (ECF No. 236, at 10.) She states that "Sister Anna Skora testified that Tyre King tried to run away and never tried to shoot anyone," that "Demetrius Braxton testified that Tyre was running away when Mason shot him," and "William Scott testified that it looked like at least two of the shots went into this back, further demonstrating Tyre's body position facing away from Mason." (*Id.*) Plaintiff goes on to assert that "[e]ven Mason agrees that he assumed that Tyre was trying to get away from law enforcement by stutter stepping and was trying to figure out what to do." (*Id.*) Given all of this witness testimony, Plaintiff argues "[t]he manifest weight of the evidence demonstrates that Tyre had then decided to continue fleeing. Regardless of what motions he was making with his arm, it is undisputed that Tyre King did not pose such a threat that it would have been justified to shoot him as he fled." (*Id.*, at 10–11.)

The Court cannot concur. First, Plaintiff misconstrues Sister Skora's testimony. During trial, she was asked "[a]nd was he still doing that, running left and right like that, at the time that the police officer shot him?" (Deposition of Sister Skora, ECF No. 126, Exhibit 1, at 55.) She answered "No, he was straight. He stood up. He stood up straight." (*Id.*)

Second, Plaintiff ignores the credibility issues with Braxton's testimony. Braxton admitted on direct examination that the statement he gave to police the night of the shooting was false. (January 19 Trial Transcript, ECF No. 242, at 444–45.) He also admitted to taking cocaine and marijuana that day and that he changed numerous aspects of his testimony between his deposition and trial. (*Id.*, at 446, 454–55.) Further, Braxton answered affirmatively on cross

10

examination that he "could not see whether or not Mr. King pulled out the gun because [he] could not see that far." (*Id*., at 476.) Finally, Akilah Bulger, Braxton's girlfriend at the time, impeached his testimony. When asked whether "Demetrius Braxton told you that Ty pointed the gun at the officer," and she answered yes. (January 20 Trial Transcript, ECF No. 243, at 729.)

Third, Plaintiff's reliance on William Scott's testimony is misplaced because it is contradicted by the physical evidence. As Plaintiff asserts, Scott did testify that King was shot in the back. (January 19 Trial Transcript, ECF No. 242, at 343.) However, his testimony is disproven by the physical evidence, including Plaintiff's expert witness. (January 18 Trial Transcript, ECF No. 241, at 259–263, 278–79.) Additionally, Defendant played an audio call at trial, captured when Scott called 911, in which Scott stated, "I'm no witness to nothing." (January 19 Trial Transcript, ECF No. 242, at 355–56.)

Fourth, Plaintiff ignores part of Officer Mason's testimony. Officer Mason testified that King "[h]ad the grip" of his gun "and was tugging up to pull the firearm" when Officer Mason shot him. (January 18 Trial Transcript, ECF No. 241, at 214.)

Finally, even if King had decided to flee at the time of the shooting, that decision would not change the Court's analysis, as the jury could still conclude that he was pulling his weapon. As the Court mentioned above and, in its summary judgment order, such an action, when put in context with the prior robbery, failure to obey commands, and physical location, could make King an imminent threat in a reasonable officer's eyes and justify the use of deadly force. ("According to Mason, it was only when King raised the gun that Mason fired. If that is indeed what happened, then Mason's decision to use deadly force was not unreasonable. Regrettable, tragic, but not unreasonable…") (Summary Judgment Order, ECF No. 150, at 9.) The Court

11

rejects Plaintiff's argument that the motions King made with his arms are irrelevant to Officer Mason's decision to shoot.

The Court rejects Plaintiff's argument that the verdict in this case was against the manifest weight of the evidence.

### ii. Jury Instructions

Plaintiff contends that she is entitled to a new trial because one jury instruction "does not accurately state the law and caused prejudice to Plaintiff." (ECF No. 236, at 11.) The challenged instruction is as follows: "[i]f you decide Officer Mason's actions were objectively reasonable, then you must find that he did not act recklessly." (*Id.*)

Plaintiff's challenge fails. The Sixth Circuit has directly addressed this issue a number of times. The Sixth Circuit has held that if "the officers were objectively reasonable in shooting [King], it logically follows that they could not have been reckless in shooting [King]." *Pollard v. City of Columbus*, 780 F.3d 395, at 404 (6th Cir. 2015); *see also Ewolski v. City of Brunswick*, 287 F.3d 492, 517 (6th Cir. 2002).

The Circuit reiterated its position in the recent case of *Cooper v. City of Columbus*. There, it analyzed this issue, finding that an officer's actions cannot be both objectively reasonable and reckless at the same time. The Circuit reasoned as follows:

> Ohio law immunizes police officers from suit unless their "acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." Ohio Rev. Code § 2744.03(A)(6)(b). Plaintiff contends that the officers acted in a reckless manner by "escalating" the situation—looking for criminal activity and then opening the car door and grabbing Bell-McGrew's hand—and that statutory immunity cannot lie given his contention that an officer's conduct can be both objectively reasonable under the Fourth Amendment and reckless for purposes of Ohio's statutory immunity provision. We disagree. Plaintiff is correct that "[s]tatutory immunity under Ohio law, which applies to state law claims, is distinct

> from federal qualified immunity." *Stewart v. City of Euclid*, 970 F.3d 667, 676 (6th Cir. 2020). That notwithstanding, we have said many times over that "[w]hen federal qualified immunity and Ohio state-law immunity under § 2744.03(A)(6) rest on the same questions of material fact, we may review the state-law immunity defense through the lens of the federal qualified immunity analysis." *Downard for Est. of Downard v. Martin*, 968 F.3d 594, 602 (6th Cir. 2020) (internal citation omitted). And in the context of a police officer's use of deadly force, the analysis coincides: "[I]f an officer has probable cause to believe that a person poses an immediate threat of serious injury, the officer's use of deadly force against that person is not reckless." *Sabo v. City of Mentor*, 657 F.3d 332, 337 (6th Cir. 2011). Here, because both officers reasonably perceived a serious threat of injury, they are entitled to statutory immunity under Ohio law. *Hicks*, 958 F.3d at 441 (holding that because an officer's use of deadly force was reasonable, he was entitled to statutory immunity under Ohio law); *Mullins*, 805 F.3d at 769 ("Because we find that [the officer]'s use of deadly force was not objectively unreasonable under the circumstances, it follows that he did not act with 'malicious purpose, in bad faith, or in a wanton or reckless manner as required to avoid statutory immunity under Ohio law."). Nor does it matter that they "escalated" the situation—no rational juror could conclude their actions displayed "conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Downard*, 968 F.3d at 602 (quoting *Argabrite v. Neer*, 149 Ohio St. 3d 349, 2016- Ohio 8374, 75 N.E.3d 161, 164 (Ohio 2016)).

*Cooper*, 2023 U.S. App. LEXIS 2629, *25-27 (6th Cir.)

Ohio's courts agree with the federal on this point of law. The Second Appellate District case of *Jordan v. Howard* illustrates this concord. There, the court reasoned that a finding of objective reasonableness in federal court barred plaintiff's wrongful death claim in state court. The Court explained as follows:

> The trial court concluded that collateral estoppel applied because the same evidence would sustain both the state issue and the issue litigated in federal court. We agree. The underlying facts are the same if the issue were phrased as whether the officers acted recklessly or if it were phrased as whether the officers acted reasonably for purposes of qualified immunity. Notably, "collateral estoppel prohibits relitigation of "a fact or a point that was actually and directly at issue in a previous action." *Fort Frye Teachers Assn*., 81 Ohio St.3d at 395, 692 N.E.2d 140. Here, the federal district court granted summary judgment to the police officers on the basis of qualified immunity, finding that "their conduct was objectively reasonable and did not violate clearly established law." *Jordan I*, 440 F.Supp.3d at 857. The court also stressed that "[t]he use of deadly force by a police officer is justified 'when the factual situation revealed a perceived serious threat of physical harm to the officer

13

> or others in the area from the perspective of a reasonable officer.'" *Id.,* quoting *Sample v. Bailey*, 409 F.3d 689, 697 (6th Cir. 2005). As indicated previously, the federal case was resolved on summary judgment, and the parties had a full opportunity to litigate.
>
> In view of the findings in the federal district and appellate courts that the officers' use of deadly force (resulting in McShann's death) was reasonable, and that they did not violate established law, it would be factually and logically inconsistent to conclude in this action that the officers were reckless in causing McShann's death and, therefore, were not entitled to immunity under R.C. 2744.03(A)(6). Accordingly, the trial court did not err in applying collateral estoppel to the wrongful death claim brought by Jordan. As a result, the first assignment of error is without merit and is overruled.
>
> *Jordan v. Howard*, 2d Dist. Montgomery No. 29190, at ¶ 71-75 2021-Ohio-4025

In light of the plethora of Sixth Circuit cases, as well as the state court support, on this issue, the Court finds that the challenged instruction is not erroneous. Plaintiff's argument fails.

### iii. Admission of Evidence

Plaintiff maintains that the Court erroneously prevented the admission of relevant evidence and allowed the admission of irrelevant evidence, materially affecting the jury's ultimate verdict. (ECF No. 236, at 15.) Plaintiff points to five erroneous rulings. The Court will take each of them in turn.

### 1. Cover and Communication Theory

Plaintiff contends that this Court erroneously excluded the opinions of Plaintiff's expert, Melvin Tucker, on the issue of his cover and communicate theory. (ECF No. 236, at 16.) To Plaintiff, this "failure to admit relevant evidence amounted to more than harmless error." (*Id.*) The Court already addressed and rejected Plaintiff's argument in two different orders. (ECF No. 223, at 7.); (ECF No. 222, at 6.) No new evidence was elicited at trial regarding this point. It fares no better now.

14

### 2. Defendant Mason's Prior Uses of Force

Plaintiff argues the Court's decision to exclude evidence of Officer Mason's prior uses of force was "erroneous and prejudicial because evidence regarding Mason's state of mind was relevant to the state law claim and to the availability of punitive damages." (ECF No. 236, at 19.) The Court already addressed this issue in two opinions. (ECF No. 222, at 7.) (ECF No. 223, at 13–15.) There, the opinions rejected Plaintiff's assertion that such evidence was admissible under Fed. R. Evid. 403(b). Plaintiff did not elicit new evidence at trial sufficient to convince this Court of the admissibility of Mason's prior uses of force. The Court rejects Plaintiff's argument.

### 3. Defendant Mason's Post-incident Reassignment

Plaintiff maintains that the Court "erred in excluding evidence regarding the basis for Defendant Mason's post-incident reassignment." (ECF No. 236, at 22.) The Court already addressed this issue in a previous opinion. (ECF No. 223, at 15–16.) There, the opinion concluded that the "'issue before the jury is whether, at the moment that Mason shot King, his use of deadly force was objectively reasonable," not his supervisor's opinion of Mason's suitability for a patrol assignment. (*Id.*, at 15.) (quoting ECF No. 193, at 4). Plaintiff did not present any new evidence at trial regarding Officer Mason's reassignment. We therefore rejected Plaintiff's argument. Plaintiff's contention that the Court erred in excluding evidence regarding the basis for Officer Mason's reassignment is rejected.

### 4. Lack of DNA Testing

Plaintiff maintains that this Court committed reversible error when it prevented Plaintiff from questioning Officer Mason regarding "whether or not he had submitted a DNA sample for

15

comparison to the DNA samples found on the BB gun." (ECF No. 236, at 23.) She argues that this evidence is "relevant to the question of how the BB gun traveled from Tyre's position to the location it was found in, and significantly undercuts Defendant Mason's credibility." (*Id.*) In essence, the questioning would imply that Defendant Mason deliberately moved the gun to a different position to support his claim that the force used was reasonable. No testimony supported this claim.

> The Court addressed this point in trial by stating:
>
> [A] jury is allowed to do one thing and not another. They are allowed to use their common sense and draw inferences. If one fact exists, from that they can infer another fact exists.
>
> At the same time, though, these instructions -- that's why we always tell them you take the whole packet, not one page at a time. There's an assumption that the law was followed unless there's proof otherwise.
>
> And if you were asking -- if the theory here were that -- if there were one witness who said he threw the gun and this is where the gun lands, you can make that argument. But there's no witness that says that.
>
> I would have to assume, not just a different set of facts, but a different set of facts and basically something akin to a criminal conspiracy, to put the gun in a place where it wasn't at a crime scene.
>
> So, respectfully, I get the argument. It just isn't developed with enough facts. Otherwise, it ends up in the realm of speculation.

(January 23 Trial Transcript, ECF No. 246, at 963.)

The Court stands by its ruling. As Defendant points out, the presentation of Plaintiff's theory at trial would have "invite[d] the jurors to draw inference upon inference upon inference in the hopes that they would speculate that Mason might have pulled the gun out of King's waistband and threw it under the car's tire." (ECF No. 237, at 23.) As the probative value of Plaintiff's theory is significantly outweighed by the unfair prejudice it would cast upon

16

Defendant, it is excludable under Rule 403 of the Federal Rules of Evidence. Plaintiff's renewed argument is rejected.

### 5. Evidence of Facts Not Known to Defendant Mason

Finally, Plaintiff argues that "the Court erroneously admitted the testimony of Michael Ames." (ECF No. 236, at 25.) She explains that "Ames' testimony was exclusively evidence of facts not known to Defendant Mason at the time, and thus irrelevant to the analysis of whether his use of deadly force was reasonable." (*Id*.) Ames was the robbery victim. Mason was responding to the same armed robbery when he encountered King. The Court found that his testimony was part of the story in this case. The Court has already addressed and rejected this argument in a previous order. (ECF No. 223, at 26–27.) No new evidence was elicited at trial regarding the point. Plaintiff's argument fares no better now. Plaintiff's Motion for a new trial under Fed. R. Civ. P. 59 is **DENIED**.

### IV. Conclusion

For the reasons stated herein, Plaintiff's Motion for Judgment NOV or in the Alternative, Motion for a New Trial is **DENIED**. (ECF No. 236.) Plaintiff's Motion for Extension of Time is **DENIED** as **MOOT**. (ECF No. 238.)

**IT IS SO ORDERED.**

**9/19/2023**　　　　　　　　　　　　　　　　　　　**s/Edmund A. Sargus, Jr.**
**DATE**　　　　　　　　　　　　　　　　　　　　　**EDMUND A. SARGUS, JR.**
　　　　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**